## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| H.B., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| v. | : | **1:22-cv-01181-JPB** |
| | : | |
| RED ROOF INNS, INC.; | : | |
| FMW RRI I, LLC; and RRI | : | |
| WEST MANAGEMENT, LLC, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## <u>FIRST AMENDED COMPLAINT FOR DAMAGES</u>

COMES NOW, Plaintiff in the above-styled action and pursuant to the

Court's Order dated March 6, 2023, files her First Amended Complaint adding

Defendant RRI West Management, LLC as follows:

1.

This case involves the minor sex trafficking of H.B., who was trafficked for

sex in and around January 2012 as a 16-year-old child at a corporately owned and

operated Red Roof Inn located at 5171 Brook Hollow Parkway, Norcross, Georgia,

30071 (hereafter, the "Norcross Red Roof"). Given the nature of the case, Plaintiff

is identified in this Complaint only by her initials to prevent public disclosure of

her name. H.B.'s counsel has either previously disclosed H.B.'s full name to

defense counsel or will as soon as an appropriate protective order is in place.[1]

2.

Plaintiff was a minor victim of sex trafficking at Defendant's hotel at all

times relevant to this Complaint.

3.

The Norcross Red Roof was not a franchised hotel.  Defendants owned,

controlled, operated, and directly employed the staff at the hotel.

4.

Defendants knew of the rampant sex trafficking and prostitution at the

Norcross Red Roof for years, before, during, and after Plaintiff's trafficking.

Defendants knew because:

  a. the facts of this specific Plaintiff while she was trafficked for sex

     as a minor child at the hotel;

  b. its employees were complicit in assisting Plaintiff's sex traffickers

     in the sex trafficking of Plaintiff;

---

[1] Contemporaneously with this Complaint, Plaintiff has filed a Motion for
Protective Order and Leave to Proceed Anonymously based on the nature of the
allegations in the Complaint, which include the sex trafficking of H.B., a minor
child, are intimate and personal in nature, as well as for her own personal safety.

c.    its employees knew of and permitted sex trafficking and prostitution to occur at the hotel;

d.    the facts of other sex trafficking victims at the hotel before, during, and after Plaintiff;

e.    the frequent and ongoing similar crime occurring at the hotel;

f.    the reports of hotel guests to Defendants regarding sex trafficking and prostitution-related activities;

g.    Defendants' knowledge of sex trafficking generally, in the Atlanta area, and at the Norcross Red Roof specifically.

5.

Defendants' liability to Plaintiff is straightforward:

a)  Defendants knew or should have known that their operation of the Norcross Red Roof violated the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591, et seq., (the "TVPRA") through its association with Plaintiff's sex traffickers, and from which it benefitted financially. As such, Defendants are liable to Plaintiff for her damages under § 1595(a) of the TVPRA.

b)  Keeping a place of prostitution and sex trafficking are illegal in Georgia. Defendants exerted control over the Norcross Red Roof and

3

knowingly permitted it to be used for the purpose of prostitution. Plaintiff was injured by Defendants' keeping a place of prostitution because she was not a prostitute, but a child victim of minor sex trafficking, i.e., an aggrieved person. Defendants also participated in, and benefitted from, Plaintiff's sex trafficking.  As such, Defendants are liable to Plaintiff for her damages under the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-14-1 *et seq.* ("Georgia RICO").

6.

Whenever reference is made in this complaint to any act, deed, or conduct of Defendants, the allegation is that Defendants engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

## A.    Parties, Jurisdiction, and Venue

7.

H.B. is a citizen of the United States of America, is a resident of the State of Georgia, and consents to the jurisdiction of this Court.  H.B. was born in May 1995 and was a minor at the time of her sex trafficking alleged herein.

4

8.

At all times relevant to this complaint, Defendants Red Roof Inns, Inc.

("Red Roof"), FMW RRI I LLC ("FMW RRI"), and RRI West Management, LLC

("RRI West"), (collectively, "Defendants") jointly owned, managed, supervised,

operated, oversaw, controlled the operation of, and/or were inextricably connected

to the renting of rooms at the Norcross Red Roof, from which they benefited

financially.

9.

FMW RRI is a limited liability company with its principal place of business

at 251 Little Falls Drive, Wilmington, Delaware 19808. FMW RRI may be served

with process by serving its registered agent Corporation Service Company at 40

Technology Parkway South, Suite 300, Norcross, Georgia, 30092.

10.

Jurisdiction and venue are proper as to FMW RRI and FMW RRI was

properly served with process in this action.

11.

Red Roof is a Delaware corporation with its principal place of business in

New Albany, Ohio. It regularly conducts business in the State of Georgia, derives

substantial revenue from services rendered in Georgia, and has committed tortious

acts or omissions both within and outside Georgia, resulting in injuries in Georgia. Red Roof may be served with process by serving its registered agent Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia, 30092.

12.

Jurisdiction and venue are proper as to Red Roof and Red Roof was properly served with process in this action.

12(a).

RRI West is a Delaware limited liability company with its principal place of business in Houston, Texas.  It regularly conducts business in the State of Georgia, derives substantial revenue from services rendered in Georgia, and has committed tortious acts or omissions both within Georgia and outside of Georgia resulting in injuries in Georgia.  RRI West may be served with process by serving its registered agent Capitol Services, Inc., at 1675 S State Street, Suite B, Dover, Delaware 19901.

12(b).

Jurisdiction and venue are proper as to RRI West, and RRI West was properly served with process in this action.

6

12(c).

Defendant RRI West was recently identified as a necessary party that acted as the manager for the subject premises.

13.

This court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because H.B. asserts claims arising under 18 U.S.C. 1595(a), and pursuant to 28 U.S.C. § 1367 because H.B.'s state law claims form part of the same case of controversy as her federal law claims.

14.

Venue is proper in this district pursuant to 28 U.S.C. § 1391 as the incidents forming the basis of this complaint occurred in Gwinnett County, Georgia, within the Northern District of Georgia, Atlanta Division.

**B.     The Defendants' Roles**

15.

At all times relevant hereto, Defendants owned, operated, maintained, controlled, and managed the Norcross Red Roof as a joint venture, sharing valuable information, data, responsibilities, and financial benefits from the hotel's operation, and each having rights of mutual control over the hotel and each other.

15(a).

RRI West was the manager of the Norcross Red Roof during all times relevant herein.

16.

Though FMW RRI held title to the Norcross Red Roof and was purportedly a franchisee of Red Roof, Red Roof directly operated and employed all employees of the Norcross Red Roof from 2011–2013, giving Red Roof specific and direct knowledge of prior and ongoing crime, including prostitution and sex trafficking, at the hotel during that time period.

**C.    Plaintiff's minor sex trafficking at the Norcross Red Roof**

17.

Plaintiff, a minor at the time, was trafficked for sex over the course of several days at the Norcross Red Roof, where Plaintiff was an invitee, in January 2012.

18.

Plaintiff's traffickers trafficked multiple other women for sex at the Norcross Red Roof.

19.

While Plaintiff was trafficked at the Norcross Red Roof, she witnessed one of her traffickers pay employees of the Norcross Red Roof cash in exchange for the hotel's facilitation of Plaintiff's sex trafficking by permitting the trafficking to occur at the hotel and by acting as lookouts for her traffickers.

20.

When Plaintiff was trafficked at the Norcross Red Roof, she witnessed multiple other sex traffickers operating openly and brazenly at the hotel.

21.

During Plaintiff's minor sex trafficking at the Norcross Red Roof, she witnessed as many as 10 other women and children being sold for sex at the hotel. These women and children wore lingerie or skimpy clothing throughout the hotel and parking lot and there was a constant stream of traffic throughout the day of men with no luggage visiting the hotel rooms of these women and children for short periods of time before leaving and being followed by another anonymous man. Defendants knew or should have known that the number of daily, older male visitors to the room was obviously indicative of not only prostitution, but of sex trafficking, including minor sex trafficking.

22.

Plaintiff and other young sex trafficking victims frequently appeared throughout the hotel and on the hotel premises and approaches wearing very little clothing.

23.

While Plaintiff was trafficked for sex at the Norcross Red Roof, she exhibited numerous well-known and visible signs of a minor sex trafficking victim, of which Defendants knew or should have known, including her age and inappropriate appearance, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, no control of or possession of money, loitering, soliciting male patrons, and monitoring and control of Plaintiff by her traffickers, two older men.

24.

While trafficked at the Norcross Red Roof, Plaintiff's rooms evidenced numerous well-known and visible signs of sex trafficking of which Defendants knew or should have known. Frequently, the trash cans in the rooms in which Plaintiff was trafficked contained an extraordinary number of used condoms, the rooms contained multiple cell phones, and Plaintiff or her traffickers frequently requested an excessive number of towels from housekeeping.

25.

In January 2012, the Gwinnett County Police Department conducted a sting operation at the Norcross Red Roof. Hotel employees called Plaintiff's sex traffickers to alert them to the police presence at the hotel but were too late in relaying their message.  Plaintiff was rescued from the hotel in the sting.

**D.     Prostitution, sex trafficking, and other crimes were not only foreseeable but permitted at the Norcross Red Roof.**

26.

The Norcross Red Roof and its approaches were well known for crime, prostitution, and sex trafficking.

27.

In the years prior to Plaintiff's sex trafficking at the Norcross Red Roof, there were often more than a dozen women and children being sold for sex at the hotel at a time.

28.

Employees, security guards, and other victims have stated that prior to Plaintiff's minor sex trafficking, prostitution and minor sex trafficking were rampant and frequent occurrences, obvious to employees and guests at the hotel.

29.

Prior to Plaintiff's sex trafficking at the Norcross Red Roof, employees at the Norcross Red Roof knowingly rented rooms directly to minor sex trafficking victims who lacked identification and paid for their rooms in cash.

30.

At the time of, and prior to, Plaintiff's minor sex trafficking at the Norcross Red Roof, hotel employees knew crime and prostitution was open and obvious at the Norcross Red Roof.

31.

Defendants knew of, condoned, and permitted the widespread prostitution and sex trafficking at the Norcross Red Roof, including Plaintiff's minor sex trafficking.

32.

Defendants provided a market and beds for sex traffickers to sell women, boys, and girls—including minors—to buyers of commercial sex.  That is why Plaintiff's sex traffickers brought Plaintiff to the Norcross Red Roof to be sold for sex.

33.

In addition to providing a market for illegal sex and sex trafficking as part of the hotel's operations, Norcross Red Roof employees served as lookouts for sex traffickers, including Plaintiff's traffickers, alerting them to the presence of law enforcement at the hotel in order to protect and facilitate the illegal commercial sex operations that filled the hotel's rooms.

34.

Before, during, and after Plaintiff's trafficking, employees of the Norcross Red Roof called sex traffickers, including Plaintiff's traffickers, to warn them when law enforcement was present at or coming to the hotel or warning them to slow down or stop buyer traffic to a particular room in order to assist the traffickers in evading detection from other guests and the police.

35.

At times, the Norcross Red Roof had a security guard at the hotel on Friday and Saturday nights. Security guards at the hotel were aware that crime, including drugs and prostitution, were rampant at the hotel. When the security guards reported the obvious prostitution and drug activity to hotel employees, the security guards were told by the hotel employees to not do anything about it.

36.

Prior to Plaintiff's minor sex trafficking at the Norcross Red Roof, security guards frequently saw women who were being sold for sex at the hotel loitering outside, soliciting men for sex, and observed the heavy foot traffic to the rooms where sex and drugs were being sold at the hotel.

37.

The hotel employed only a single night shift employee at the time of, and prior to, Plaintiff's minor sex trafficking at the hotel. Prior to and during Plaintiff's minor sex trafficking at the Norcross Red Roof, employees at the hotel locked themselves in the front office at night because it was too dangerous for them to be outside at the hotel.

38.

At times, the hotel security guard also locked himself in the front office with the night employee, refusing to patrol the grounds of the hotel because it was such a dangerous place.

39.

Prior to and during Plaintiff's minor sex trafficking, employees were not permitted to refuse to rent rooms or remove guests for criminal activity. Guests could only be removed if they did not pay for the room.

14

40.

Prior to Plaintiff's sex trafficking at the Norcross Red Roof, hotel employees informed Jay Moyer, Red Roof's Director of Operations, and Vince Vittatoe, Red Roof's Director of Safety and Security, about the crime and prostitution that was constant at the Norcross Red Roof.

41.

Due to the dangerous nature of the hotel, employees of the Norcross Red Roof requested additional security measures from Mr. Moyer but were told additional security measures were not in the hotel's budget and that the hotel did not make enough money for Red Roof to provide additional security.

42.

Prior to, during, and after Plaintiff's minor sex trafficking at the hotel, hotel employees have stated that more than half the guests in the hotel were engaged in criminal activity of some kind, including drugs and prostitution. Employees typically rented rooms that would be used for prostitution and crime on the back side of the hotel.

43.

Prior to and during Plaintiff's minor sex trafficking, employees of the Norcross Red Roof were not able to monitor hotel security cameras because the

15

cameras were locked in the manager's office and the employees did not have access to that office.  Many of the cameras were also not operational.

44.

Crime and prostitution were so bad at the Norcross Red Roof that the criminal residents were very open about their activities with hotel employees. If an employee did report that a guest was engaged in criminal activity to management or the police, those guests would frequently call the front desk anonymously and threaten the employee by saying things like, "you're a fucking snitch," before hanging up.

45.

Defendants knew or should have known of other sex crimes at the hotel before, during, and after Plaintiff's minor sex trafficking. Specifically, and based on publicly available information and police reports, Defendants knew or should have known of the following sex crimes, among others, occurring on their premises and approaches:

    a.  On or about August 2011, a woman was arrested at the Norcross Red Roof for prostitution and **keeping a place of prostitution** at the Norcross Red Roof.

b. On or about October 2011, a female in room 213 at the Norcross Red Roof reported that her stepfather **raped** her daughter.

c. On or about August 2012, **another minor victim was rescued from sex trafficking at the hotel** and another woman was arrested for prostitution.

d. On or about December 2012, a Norcross Red Roof housekeeper reported that a male guest assaulted her and **attempted to rape** her while she was cleaning room 129 at the hotel.

e. On or about November 2013, police conducted a prostitution sting and found two women suspected of prostitution in room 114 of the Norcross Red Roof. Police suspected a man who came to the room to be their **pimp and that man was arrested after cocaine** was found in his shoe.

f. On or about July 2013**, two people were shot** at the Norcross Red Roof, killing one and putting the other in critical condition. [2]

---

[2] *Norcross motel shooting leaves 1 dead.* WSB-TV, July 5, 2013, https://www.wsbtv.com/news/local/norcross-motel-shooting-leaves-1-dead_nyfgm/242168645/ (last visited Nov. 5, 2020).

g.  On or about June 2013, a woman reported being **raped and assaulted** at the Norcross Red Roof.

h.  On or about October 2013, a woman **reported being raped** and assaulted at the Norcross Red Roof.

46.

Red Roof and RRI West required all its corporate locations, including the Norcross Red Roof, to send all safety and security reports, including crime and incident reports such as the above, directly to Red Roof and RRI West corporate employees. Red Roof knew or should have known of sex trafficking, prostitution, and other criminal activity existing at the Norcross Red Roof prior to Plaintiff's sex trafficking at the Norcross Red Roof.

47.

Defendants had actual and constructive knowledge of prostitution, sex trafficking, and other criminal activity existing on the property and in the surrounding area prior to Plaintiff's sex trafficking. Defendants knew or should have known of these and other violent crimes occurring on their premises and approaches.

18

48.

Defendants permitted the Norcross Red Roof to be used as a place of prostitution.

49.

Defendants had actual or constructive knowledge of publicly available online reviews of the Norcross Red Roof reporting widespread prostitution and crime occurring at the hotel.

50.

Defendants knew or should have known of other reviews and complaints about the hotel reported directly to the company and through its online reputation management system.

51.

As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

**E.     Defendants had knowledge of sex trafficking generally, and at their other hotels.**

52.

Defendants knew or should have known of the existence of sex trafficking

and its illegality more than 20 years ago, since the passage of the Trafficking

Victims Protection Act in 2000, and the United Nations' adoption of the Palermo

Protocol, to prevent, suppress, and punish trafficking in persons.

53.

Defendants knew or should have known, at least by 2012, that Atlanta was a

hub of sex trafficking and that the crime was prevalent in the city, including at Red

Roof's hotels.  According to a well-publicized study commissioned by the U.S.

Department of Justice, Atlanta had one of, if not the, largest illegal sex trafficking

economies in the country.  In 2007, Atlanta's sex trafficking economy was widely

reported to be worth $290 million annually, and traffickers reported average

*weekly* earnings of roughly $33,000.

54.

Hotels and motels are "a particularly attractive site for criminal activity

ranging from drug dealing and prostitution to human trafficking.  Offering privacy

and anonymity on the cheap, they have been employed as . . . rendezvous sites

where child sex workers meet their clients on threat of violence from their

procurers[.]" *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J.,

dissenting, joined by Chief Justice Roberts and Justice Thomas).

55.

Without a market—a conveniently located and anonymous place to confine

humans, exchange money, and have sex—sex trafficking would cease to exist. In

Plaintiff's case, Defendants, for a fee, provided this market for 16-year-old

Plaintiff to be confined and sold.

56.

Defendants knew or should have known that its hotels were well known

around the country as havens for sex trafficking. Sex trafficking at Red Roof Inns

nationwide have been widely reported for years.[3]

---

[3] *See, e.g.*, Joe Marusak, *Feds Oversee Sale of Former Charlotte Red Roof Inn that Harbored Teen Sex Trafficking*, The Charlotte Observer, (Aug. 2, 2016), https://www.charlotteobserver.com/news/local/crime/article93210577.html (last visited Nov. 5, 2020); Maria Salazar, *Houston Attorney Sues Hotels in Sex Trafficking Case Involving 15-year-old Girl*, Fox 26, (May 15, 2019), http://www.fox26houston.com/good-day/morning-news/houston-attorney-sues-hotels-in-a-sex-trafficking-case-involving-a-15-year-old (last visited Nov.. 5, 2020); Erick Payne, *Two People Face Charges for Involvement in Trafficking Ring*, WCIA, (July 25, 2018), https://www.wcia.com/news/local-news/two-people-face-charges-for-involvement-in-trafficking-ring/ (last visited Nov. 5, 2020); Carl Hamilton & Josh Shannon, *Indictment: Alleged Sex Traffickers Held Abducted Teen at Newark Motel*, Newark Post, (Feb. 26, 2018), https://www.newarkpostonline.com/news/indictment-alleged-sex-traffickers-held-

abducted-teen-at-newark-motel/article_484c66f0-bab7-5cf9-a175-2d989728b25f.html (last visited Nov. 5, 2020); Joe Currier, *Man Charged with Sex Trafficking at Red Roof Inn in St. Louis*, St. Louis Post-Dispatch, (June 30, 2017), https://www.stltoday.com/news/local/crime-and-courts/man-charged-with-sex-trafficking-at-red-roof-inn-in/article_4c70ac45-ac34-5d28-bd3c-92efde095381.html (last visited Nov. 5, 2020); Alana Broe, *Sex, Drugs, and Res Gestae: The Eighth Circuit Says Evidence is "Inextricably Related" to Sex Trafficking*, Matters, (2018), https://www.traffickingmatters.com/sex-drugs-and-res-gestae-the-eighth-circuit-says-evidence-is-inextricably-related-to-sex-trafficking/ (last visited Nov. 5, 2020); Allison Dunn, *Victim: 'Father Figure' Haynes Manipulated her in Sex-Trafficking Case*, Toledo Blade, (March 26, 2019), https://www.toledoblade.com/local/courts/2019/03/26/victim-testifies-in-pastor-anthony-haynes-sex-trafficking-case/stories/20190326115 (last visited Nov. 5, 2020); Roberto Acosta, *Mother Accused of Sex Trafficking 6-year-old Daughter Appears in Court*, MLive, (July 15, 2019), https://www.mlive.com/news/flint/2019/07/mother-accused-of-sex-trafficking-6-year-old-daughter-appears-in-court.html (last visited Nov. 5, 2020); *Cincinnati Man Pleads Guilty to Sex Trafficking by Force, Fraud, and Coercion*, Department of Justice, (Nov. 14, 2014) https://www.justice.gov/opa/pr/cincinnati-man-pleads-guilty-sex-trafficking-force-fraud-and-coercion (last visited Nov. 5, 2020); Press Release, *Two From Minneapolis Sentenced for Sex Trafficking*, Department of Justice, (June 9, 2015), https://www.justice.gov/usao-sd/pr/two-minneapolis-sentenced-sex-trafficking (last visited Nov. 5, 2020); Kevin Lewis, *Teenage Prostitution Ring Busted, Pimp Claims to Also Work as School Bus Driver*, CBS Austin, (March 4, 2016), https://cbsaustin.com/news/offbeat/teenage-prostitution-ring-busted-pimp-claims-to-also-work-as-school-bus-driver-03-04-2016-154655883 (last visited Nov. 5, 2020); Joseph Kohut, *Scranton Sex Trafficking Cases Move Forward*, Pocono Record, (Dec. 4, 2016), https://www.poconorecord.com/news/20161204/scranton-sex-trafficking-cases-move-forward (last visited Nov. 5, 2020); *2 Charged with Human Trafficking at Jessup Red Roof Inn*, CBS Baltimore, (July 23, 2019), https://baltimore.cbslocal.com/2019/07/23/2-charged-with-human-trafficking-at-jessup-red-roof-inn/ (last visited Nov. 5, 2020); Matt Chandler, *Alleged Underage Sex Trafficking in Amherst*, Buffalo Business First, (Dec. 17, 2012), https://www.bizjournals.com/buffalo/news/2012/12/17/alleged-underage-sex-

trafficking-in.html (last visited Nov. 5, 2020); Katie Kather, *13 Men Charged in Woodbury Sex-with-Minors Sting*, Twin Cities Pioneer Press, (Sept. 21, 2015) https://www.twincities.com/2015/09/21/13-men-charged-in-woodbury-sex-with-minors-sting/ (last visited Nov. 5 2020); Felix Sarver, *Joliet Hotel Among Meeting Places in Rappers' Sex Trafficking Ring*, The Herald-News, (Jan. 18, 2016) https://www.theherald-news.com/2016/01/18/joliet-hotel-among-meeting-places-in-rappers-sex-trafficking-ring/alh59bo/ (last visited Nov. 5, 2020); *23-Year-Old Nashville Man Faces 18 Charges after Prostitution Sting at Donelson Hotel*, End Slavery Tennessee, (June 24, 2014), https://www.endslaverytn.org/news/23yearoldnashvillemanfaces18chargesafterpro stitutionstingatdonelsonhotelnewsarticle (last visited Nov. 5, 2020); *5 Arrested in Online Prostitution Sting Operations*, KCBD 11, (Aug. 1, 2013), https://www.kcbd.com/story/23023825/5-arrested-in-online-prostiution-sting-operations/(last visited Nov. 5, 2020); Jonathan Lin, *Man Charged with Promoting Prostitution at Red Roof Inn in Secaucus*, NJ.com, (Feb. 5, 2014), https://www.nj.com/jjournal-news/2014/02/man_charged_with_promoting_pro.html (last visited Nov. 5, 2020); Jason Green, *Berkely Man Gets Life Sentence for Prostituting Teen*, The Mercury News, (July 21, 2017), https://www.mercurynews.com/2017/07/21/berkeley-man-gets-life-sentence-for-prostituting-teen/ (last visited Nov. 5, 2020); Patrick Dunn, *A Road Back from Walking the Streets*, Ann Arbor Observer, (April, 2014), https://annarborobserver.com/articles/a_road_back_from_walking_the_streets.html#.XUg6Tm9KjZk (last visited Nov. 5, 2020); David Owens, *Hartford Man Sentenced to Prison for Sex Trafficking of 15-year-old Girl*, The Morning Call, (Nov. 14, 2016), https://www.mcall.com/hc-sex-trafficking-teenager-prison-1115-20161114-story.html (last visited Nov. 5, 2020); Tim Logue, *Chester Man Gets Life in Jail for Sex Trafficking*, Daily Times, (Dec. 19, 2014), https://www.delcotimes.com/news/chester-man-gets-life-in-jail-for-sex-trafficking/article_03bf3c6e-62cc-5fa6-b531-0ac7ab630e85.html (last visited Nov.. 5, 2020); Joseph Paul, *Men Accused of Promoting Prostitution in Lafayette*, Journal & Courier, (Dec. 27, 2016), https://www.jconline.com/story/news/crime/2016/12/27/men-accused-promoting-prostitution-lafayette/95870334/ (last visited Nov. 5, 2020); *Man, Woman Charged with Pimping Women out of Pooler Hotel*, WTOC, (Dec. 29, 2014), https://www.wtoc.com/story/27724967/man-woman-charged-with-pimping-

57.

These events, occurring after the trafficking of Plaintiff at the Norcross Red Roof, are relevant and admissible evidence of additional predicate acts committed by Defendants. *InterAgency, Inc. v. Danco Fin. Corp.*, 203 Ga. App. 418, 423–24 (1992) ("the Georgia RICO statute allows for the introduction of after conduct as predicate acts[.]").

58.

Employees at other Red Roof hotels in Atlanta have also spoken and testified about the rampant sex trafficking occurring in the metro area hotels owned and operated by Red Roof before, during and after Plaintiff's sex trafficking.

## COUNT I
## STATUTORY LIABILITY

women-out-of-pooler-hotel/ (last visited Nov. 5, 2020); *Farragut Man Faces Federal Sex Trafficking Charges*, WBIR 10, (April 7, 2015) https://www.wbir.com/article/news/farragut-man-faces-federal-sex-trafficking-charges/93434205 (last visited Nov. 5, 2020); Katie Eubanks, *Sex Trafficking Victim Shares Story*, Clarion Ledger, (April 16, 2015) https://www.clarionledger.com/story/news/2015/04/16/sex-trafficking-victim-shares-story/25919625/ (last visited Nov. 5, 2020); Eric T. Berkman, *Alleged Sex Trafficker Can't be Compelled to Unlock Phone*, LegalNews.com, (Aug. 18, 2017), http://www.legalnews.com/detroit/1446866/ (last visited Nov. 5, 2020); Sam Wood, *Pimp 'Gucci Prada' Gets Life for Forcing Child into Prostitution*, The Philadelphia Inquirer, (Dec. 18, 2014), https://www.inquirer.com/philly/news/new_jersey/Pimp_Gucci_Prada_gets_life_for_forcing_child_into_prostitution.html (last visited Nov. 5, 2020).

## 18 U.S.C. § 1595

59.

Plaintiff incorporates Paragraphs 1 through 58 as if fully restated herein verbatim.

60.

In violation of the TVPRA, Defendants knowingly benefitted from participation in a venture that Defendants knew or should have known violated the TVPRA.

61.

Defendants knowingly benefitted from Plaintiff's sex trafficking by receiving a percentage of the revenue generated by the operation of the Norcross Defendants, including a percentage of the revenue generated for the rate charged on the rooms in which Plaintiff was trafficked.

62.

Defendants participated in a venture by associating with Plaintiff's sex traffickers, facilitating Plaintiff's minor sex trafficking, and providing to Plaintiff's traffickers the necessary venue for Plaintiff's minor sex trafficking.  In the course of this venture, numerous buyers paid to have sex with Plaintiff, a 16-year-old child, at the Norcross Red Roof.

63.

The venture in which Defendants participated was in or affecting interstate commerce.

64.

Defendants knew or should have known the venture violated the TVPRA because Defendants, their agents and representatives, had the opportunity to observe Plaintiff, a minor, at the hotel, with and without her traffickers, the signs of minor sex trafficking exhibited by Plaintiff, her traffickers, and the rooms in which she was trafficked, and the frequent traffic of adult male buyers to the minor Plaintiff's rooms.

65.

Defendants also knew or should have known the venture violated the TVPRA because Defendants, their agents and representatives, were paid by and acted as lookouts for Plaintiff's sex traffickers in order to serve their shared business objectives.

66.

Defendants are directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of its agents and representatives.

26

67.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' participation in this venture.

68.

Defendants are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

69.

Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## VIOLATIONS OF THE GEORGIA RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("Georgia RICO")

70.

Plaintiff incorporates Paragraphs 1 through 69 as if fully set forth herein.

71.

Defendants acquired or maintained, directly or indirectly, an interest in money through a pattern of racketeering activity.

27

72.

The conduct in violation of Georgia RICO in which Defendants participated by committing an act of racketeering activity or an overt act continued within five years of the filing of this action.

73.

Upon information and belief, and as evidenced by Defendants' conduct at other hotels referenced after Plaintiff's trafficking, the conduct of Defendants in violation of O.C.G.A. § 16-14-4 has not terminated.

**A.    Acts of Racketeering Activity**

**i.    Sex Trafficking in Violation of Federal and State Law**

74.

As alleged above, Plaintiff was trafficked for sexual servitude at the Norcross Red Roof.

75.

Committing, attempting to commit, and soliciting, coercing, or intimidating another person to commit the crime of trafficking a person for sexual servitude in violation of federal and Georgia law is racketeering activity. O.C.G.A. § 16-14-3(5)(A)(vi); O.C.G.A. § 16-5-46; 18 U.S.C. § 1591.

28

76.

A person commits the offense of trafficking an individual for sexual servitude when that person knowingly:

a) subjects an individual to or maintains an individual in sexual servitude;

b) recruits, entices, harbors, transports, provides, solicits, patronizes, or obtains by any means an individual for the purpose of sexual servitude; or

c) benefits financially or by receiving anything of value from the sexual servitude of another.

O.C.G.A. §§ 16-5-46(c); 16-14-3(5)(C); 18 U.S.C. § 1961(B).

77.

"Sexual Servitude" means any sexually explicit conduct or performance involving sexually explicit conduct that is induced or obtained from an individual who is under the age of 18 years. O.C.G.A. § 16-5-46(a)(8)(B).

78.

Under the TVPRA, minor sex trafficking includes recruiting, enticing, harboring, transporting, obtaining, maintaining, patronizing, or soliciting a person for a commercial sex act who is under the age of 18. 18 U.S.C. § 1591(a) *et seq.*

79.

A corporation may be prosecuted for trafficking a person for sexual servitude if an agent of the corporation performs the conduct which is an element of the crime while acting within the scope of their employment and on behalf of the corporation and the conduct constituted a pattern of illegal activity that an agent of the company knew or should have known was occurring. O.C.G.A. § 16-5-46(j).

80.

As alleged above, Plaintiff and other victims were subjected to and maintained in sexual servitude by Defendants, individually, as parties to the crime, and as co-conspirators, in violation of the TVPRA and O.C.G.A. § 16-5-46(c)(1), when she performed sexually explicit conduct while under the age of 18 for which something of value, directly or indirectly, was given, promised to, or received by someone.

81.

Defendants also violated the TVPRA and O.C.G.A. § 16-5-46(c)(2) individually, as parties to the crime, and as co-conspirators, by harboring, recruiting, enticing, transporting, providing, or soliciting Plaintiff and other victims for the purpose of sexual servitude.

30

82.

Defendants also violated the TVPRA and O.C.G.A. § 16-5-46(c)(3) by benefitting financially from the sexual servitude of Plaintiff by receiving a percentage of the money from renting the room in which Plaintiff was trafficked.

83.

Defendants' agents participated in violations of O.C.G.A. § 16-5-46, alleged above, while acting within the scope of their office or employment and on behalf of Defendants and with their authorization. The conduct of Defendants' agents constituted a pattern of illegal activity that Defendants or their agents knew or should have known was occurring.

ii.     **Keeping a Place of Prostitution**

84.

While Plaintiff was trafficked for sex at the Norcross Red Roof, she was prostituted by being forced to perform sexual acts in exchange for money or other items of value.

85.

Defendants kept a place of prostitution by, acting individually, as parties to the crime, and as co-conspirators, while having and exercising control over the use of the Norcross Red Roof, which offered seclusion and shelter for the practice of

prostitution, knowingly granting and permitting the use of that location for the purpose of prostitution, in violation of O.C.G.A. § 16-6-10. This constitutes racketeering activity. O.C.G.A. § 16-14-3(5)(A)(vii).

86.

While Defendants had control over the use of the Norcross Red Roof, a place which offered seclusion or shelter for the practice of prostitution, they knowingly granted and permitted its use for the purpose of prostitution.

**B.    The Acts of Racketeering Activity Formed a Pattern**

87.

Defendants engaged in more than two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions.

88.

The acts of racketeering activity were interrelated by distinguishing characteristics and were not isolated incidents.

89.

Defendants' acts of racketeering had the same or similar intents, including but not limited to obtaining money, directly or indirectly, through a pattern of racketeering activity.

90.

Defendants' acts of racketeering had the same or similar results, in that they obtained money or facilitated the obtaining of money, directly or indirectly, through a pattern of racketeering activity.

91.

Defendants' acts of racketeering had the same or similar accomplices, including but not limited to sex traffickers, hotels, hotel management, and hotel chain management.

92.

Defendants' acts of racketeering had the same or similar victims, including, but not limited to, Plaintiff and other victims who were forced to engage in sexual acts in exchange for money at the Norcross Red Roof and were the victim of other acts of racketeering activity committed at the Norcross Red Roof.

93.

Defendants' acts of racketeering had the same or similar methods of commission, including but not limited to harboring, holding, confining, and detaining persons who were forced to engage in sexual acts in exchange for money at the Norcross Red Roof and allowing and assisting traffickers to force persons to perform sex acts in exchange for money on a repeated and ongoing basis.

33

## COUNT II
## VIOLATIONS OF O.C.G.A. § 16-14-4(a)

94.

Plaintiff incorporates paragraphs 1–93 as if fully set forth herein.

95.

As set forth above, Defendants violated O.C.G.A. § 16-14-4(a) by acquiring or maintaining, directly or indirectly, an interest in money through a pattern of racketeering activity.

96.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' violations of Georgia RICO.

97.

Defendants are liable to Plaintiff for three times her damages in an amount to be proven at trial, her attorneys' fees, and her costs of investigation and litigation.

98.

Defendants' wrongful actions constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the

presumption of conscious indifference to consequences, rendering them liable to

Plaintiff for punitive damages pursuant to O.C.G.A. § 51-12-5.1.

99.

Because Defendants acted with the specific intent to cause harm, there is no

limitation regarding the amount that may be awarded as punitive damages.

## COUNT III
## VIOLATIONS OF O.C.G.A. § 16-14-4(c)

100.

Plaintiff incorporates paragraphs 1–99 above, as if fully set forth herein.

101.

Defendants violated O.C.G.A. § 16-14-4(c) by conspiring to acquire money

through a pattern of racketeering activity in violation of O.C.G.A. § 16-14-4(a).

102.

Defendants knowingly and willfully joined a conspiracy which contained a

common plan or purpose to commit two or more acts of racketeering activity,

through which an interest in and control of money would be acquired and

maintained, either directly or indirectly (the "Red Roof Prostitution and Sex

Trafficking Conspiracy").

103.

Defendants also individually violated O.C.G.A. § 16-14-4(c) by endeavoring

to violate O.C.G.A. § 16-14-4(a) by acquiring or maintaining, directly or

indirectly, an interest in and control of money through a pattern of racketeering

activity.

104.

Defendants committed numerous acts of racketeering activity and overt acts

in furtherance of its individual endeavors and the Red Roof Prostitution and Sex

Trafficking Conspiracy, including those alleged above.

105.

Plaintiff has suffered substantial physical, emotional, and psychological

harm and other damages as a direct and proximate result of the violations of

Georgia RICO committed by Defendants.

106.

Defendants are liable to Plaintiff for three times her damages in an amount

to be proven at trial, her attorneys' fees, and her costs of investigation and

litigation.

107.

Defendants' wrongful actions constitute willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, rendering them liable to Plaintiff for punitive damages pursuant to O.C.G.A. § 51-12-5.1

108.

Because Defendants acted with the specific intent to cause harm, there is no limitation regarding the amount that may be awarded as punitive damages.

## **DAMAGES**

109.

Plaintiff incorporates Paragraphs 1–108 as if fully set forth herein.

110.

As a proximate and foreseeable result of Defendants' violations of the TVPRA and Georgia RICO, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special,

actual, general and punitive damages permissible under Georgia law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia law, including, but not limited to:

    a)    Personal injuries;

    b)    Past, present and future conscious pain and suffering;

    c)    Loss of enjoyment of life;

    d)    Medical expenses;

    e)    Mental anguish and emotional distress;

    f)    Loss of past, present, and future wages;

    g)    Incidental expenses;

    h)    All special, compensatory, economic, punitive, and other damages permissible under Georgia law; and

    i)    Consequential damages to be proven at trial.

111.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendants and their employees were willful and wanton and showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

112.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendants for the following:

a)   Process issue as provided by law;

b)   Plaintiff be awarded actual damages in amounts to be shown at trial from Defendants;

c)   Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

d)   Plaintiff be awarded a trial by jury; and

e)   Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

This 6th day of March, 2023.

                              **ANDERSEN, TATE, and CARR, P.C.**

                              ***/s/ Jonathan S. Tonge***
                              Patrick J. McDonough
                              Georgia Bar No. 489855
                              pmcdonough@atclawfirm.com
                              Jonathan S. Tonge
                              Georgia Bar No. 303999
                              jtonge@atclawfirm.com
                              *Attorneys for Plaintiff*

**ANDERSEN, TATE & CARR, P.C.**
One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
Phone: (770) 822-0900
Facsimile: (770) 822-9680

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing First Amended Complaint for Damages has been prepared with one of the following font and point selections approved by the Court in LR 5.1., NDGA.  Specifically, the above-mentioned was prepared using the Times New Roman font of 14 point size.

Respectfully submitted this 6th day of March, 2023.

**ANDERSEN, TATE, and CARR, P.C.**

**/s/ Jonathan S. Tonge**
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the

foregoing First Amended Complaint for Damages with the Clerk of the Court

using the CM/ECF system which will automatically send an email notification of

such filing to:

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
Charles K. Reed, Esq.
Chuck.reed@lewisbrisbois.com
Adi Allushi, Esq.
adi.allushi@lewisbrisbois.com
Tameika L. Briscoe, Esq.
Tameika.briscoe@lewisbrisbois.com
600 Peachtree Street, N.E., Suite 4700
Atlanta, Georgia 30308
*Attorneys for Defendants*

Respectfully submitted this 6th day of March, 2023.

**ANDERSEN, TATE, & CARR, P.C.**

*/s/ Jonathan S. Tonge*
Patrick J. McDonough
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
Jonathan S. Tonge
Georgia Bar No. 303999
jtonge@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone; (770) 822-9680 | Facsimile