IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| H.B., | : | |
| | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | 1:22-cv-01181-JPB |
| | : | |
| RED ROOF INNS, INC. et al., | : | |
| | : | |
|     Defendants. | : | |

**<u>PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE PORTIONS OF THE REPORTS AND TESTIMONY OF DEFENDANTS' EXPERTS REFERRING TO PLAINTIFF'S ATTORNEYS AS AMBULANCE-CHASING SHYSTERS AND OTHER IRRELEVANT OPINIONS</u>**

Plaintiff has the unfortunate but necessary task of requesting this Court exclude personal attacks on Plaintiff's lawyers by Defendants' expert witness, Dr. Kimberly Mehlman-Orozco. Beyond the offensive and unprofessional, Defendants' expert's opinions on the manner in which Plaintiff's attorneys provide representation to survivors of sex trafficking are irrelevant to the case itself. Additionally, Defendants' expert Michael Seid also seeks to introduce a heightened, improper, and irrelevant legal standard into this case. Thus, Plaintiff respectfully asks the Court to exclude portions of the expert report and testimony of Dr. Mehlman-Orozco and Mr. Seid, pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

1

(1993) and its progeny, Federal Rule of Civil Procedure 26(a)(2), and Federal Rules of Evidence 702 and 403.

## **INTRODUCTION**

This case involves claims brought by Plaintiff H.B. regarding her minor sex trafficking at Defendants' Red Roof Inn located in Norcross, Georgia. Plaintiff brought claims against Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, and Georgia RICO, O.C.G.A. § 16-4-1, *et seq.* Defendants have identified Dr. Mehlman-Orozco as a "human trafficking expert" and Mr. Seid as a "franchise expert" in this case.

More than four years ago, and nearly three years before this case was filed, Plaintiff's attorneys reached out to Dr. Mehlman-Orozco as a potential expert witness in other cases. Dr. Mehlman-Orozco devotes 5 pages—nearly 10% of her expert report—to her version of these exchanges and her ▇▇▇▇▇▇ ▇▇▇▇▇▇ (Mehlman-Orozco Report, pages 55–59).[1] Plaintiff's attorneys strongly dispute Dr. Mehlman-Orozco's version of these conversations and have contemporaneous notes that refute her account. However, engaging in that debate is precisely the point of Dr. Mehlman-Orozco's attack on Plaintiff's attorneys. Defendants seek to litigate anything other than the facts relevant to liability and

---

[1] Dr. Mehlman-Orozco's report is attached hereto as Exhibit 1.

2

damages in this case, and so have hired an expert to defame Plaintiff's attorneys as ▮▮▮▮▮ (Mehlman-Orozco Report at 58). Further, Dr. Mehlman-Orozco has visited Plaintiff's attorneys' website and with no basis at all, implies that Plaintiff's attorneys do not provide the trauma-informed services to our clients that we advertise. (We do.)

The point, supposedly, is that Dr. Mehlman-Orozco believes that Plaintiff's attorneys are secondarily exploiting Plaintiff by representing her in a case involving traumatic facts for which Defendants face liability. Such a circular argument would apply to any plaintiff's case and is simply a backhanded way to make personal attacks on the attorneys of any plaintiff who has experienced trauma and sought legal representation to vindicate her rights or redress her harm. These kinds of defamatory statements against Plaintiff's attorneys have no place in this lawsuit and are frankly beneath the Court, the Parties, and the seriousness of this action.

Additionally, Mr. Seid introduces the concept of ▮▮▮▮▮ ▮▮▮▮▮ (Seid Report at 11–13).[2] This standard is contrary to the law and has nothing whatsoever to do with the current case and should therefore be excluded.

---

[2] Mr. Seid's report is attached hereto as Exhibit 2.

## ARGUMENT AND CITATION OF AUTHORITY

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny. Under Rule 702, scientific, technical, and other specialized knowledge are admissible only if the testimony will assist the trier of fact, the witness is qualified as an expert, and if the Court finds that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Daubert* established the standards under which proffered expert testimony must be analyzed to ensure that it is both "reliable" and "relevant." *Daubert* at 589. As part of this assessment, trial judges perform a gate-keeping role in regulating the admission of expert testimony and decide if the expert has followed a reliable method and properly applied the methodology to the facts of the case. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 156–57 (1999).

When analyzing expert testimony, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task

4

at hand." *Daubert*, 509 U.S. at 597. Evidence is only relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The personal attacks on Plaintiff's attorneys are not relevant to the facts in this case. Expert testimony must be based on sufficient facts of data, not simply an expert's subjective belief under *Daubert*. 509 U.S. at 590.

Reliable testimony must be based on sufficient facts or data and not simply subjective belief. *Daubert*, 509 U.S. at 590. *Daubert* provides guidance to determine the "reliability" of the evidence proffered: 1) whether the expert's methodology has been tested or is capable of being tested; 2) whether the technique has been subject to peer review or publication; 3) the known or potential rate of error; and 4) whether the technique has been accepted in the proper scientific community. *Daubert* at 593–94. Put simply, the trial court cannot just take the expert's word that the methodology is reliable, nor can it rely upon opinion evidence that is "supported" by the *ipse dixit* of the expert, or the expert's conclusion that something is, just because they say so. *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Crucial to this issue is that an "expert's failure to explain the basis for an important inference *mandates exclusion of his or her opinion*." *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003) (emphasis added).

## I. Section XI of Dr. Mehlman-Orozco's expert report should be excluded because it is harassing and not relevant to any issue.

Section XI of Dr. Mehlman-Orozco's report and opinions set forth therein are irrelevant because they are unrelated to any issue in the case and fail to "logically advance" any "material aspect" of the case, *Allison v. McGhan Medical Corp.*, 184 F. 3d 1300, 1312 (1999), and are not "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. 579, 591(1993). As such, Section XI of Mehlman-Orozco's report must be excluded.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, disparaging personal attacks on Plaintiff's attorneys are not of consequence in determining the actual legal issues in this case, i.e., whether Defendants knew or should have known about sex trafficking at their hotel and whether Defendants illegally permitted prostitution and sex trafficking in violation of Georgia RICO.  None of the references to secondary exploitation or Plaintiff's attorneys have any tendency to make any fact more or less probable, because Plaintiff's attorneys have nothing to do with the liability or damages facts in the case, which occurred years before Plaintiff's attorneys met the Plaintiff.

Defendants' expert questions the trauma-informed legal services provided to clients of the undersigned, the years that Plaintiff's attorneys spent studying, preparing, and training for this type of representation, by stating "███████ ████████████████████████████████████████████ (Mehlman-Orozco Report at 58). This statement solely serves to question the undersigned attorneys' integrity and professional services, rather than provide substantive expert testimony and information related to any issue in the case. Using the "someone on the internet said something" approach, Defendants' expert refers to Plaintiff's attorneys as ████████████████████████ *Id.* Rather than opine on topics related to sex-trafficking to logically advance any material aspect of the underlying case, this section of Defendants' expert's report (taken in light of the entire report) makes the argument that it is Plaintiff's *attorneys* who are exploiting her, not the hotel whose employees were paid by Plaintiff's sex traffickers to allow the 16-year-old to be raped and sold for sex.

Secondary exploitation in this context is a theory concocted by Dr. Mehlman-Orozco in order to litigate sex trafficking victims' counsel instead of the actual sex trafficking condoned by the defendants who pay her. Defendants' expert's report defines the term ████████████████████ █████████████████████████████████████████████████████

██████████ (Mehlman-Orozco Report at 14, 54–59). The citation of authority Dr. Mehlman-Orozco uses for this theory is conveniently a book she authored herself. Under the guise of Dr. Mehlman-Orozco's "██████" about risks of secondary exploitation in this case as it relates to the undersigned's motivation for representation, Defendants' expert uses this self-defined theory as the title of Section XI of her expert report citing to her own published talking points. Indeed, a simple Google search for "████████████████████████" returns as the first result an op-ed authored by Dr. Mehlman-Orozco.[4]

Similarly, the fact that Plaintiff's attorneys interviewed Dr. Mehlman-Orozco relating to four other cases more than 4 years ago, has no relevance to the current case and should also be excluded. In the course of that discussion, Defendants' expert asserts that the undersigned may have ████████████████████████████ ████████ and that the undersigned may have previously filed ████████ i.e., false,

---

[3] ████████████████████████████████████████████████████████████████

[4] *See* search for "████████████████████████" located at: https://www.google.com/search?q=secondary+exploitation+definition&oq=secondary+exploitation+definition&aqs=edge..69i57j0i22i30j0i390i650l4j69i64.5823j0j1&sourceid=chrome&ie=UTF-8.

allegations.[5] Again, such personal attacks on the attorneys by way of Defendants' hired expert are irrelevant, harassing and unprofessional.

As further support for this improper attack on Plaintiff's counsel, Defendants' expert points to questioning of Plaintiff's expert as follows:

[redacted]

(Mehlman-Orozco Report at 59).

Despite her assertion that the undersigned are exploiting Plaintiff, Defendants' expert failed to note the very next question in Dr. Abigail Judge's deposition:

[redacted]

---

[5] The cases referred to by Mehlman-Orozco as featuring the [redacted] allegations of [redacted] have survived four years of litigation, an appeal to the Eleventh Circuit, settlements with other parties, multiple motions for summary judgment, and are currently set for trial on November 27, 2023. *See Does 1-4 v. Red Roof Inns, Inc.*, Case No. 1:21-CV-04278-WMR, 2023 WL 5444261 (N.D. Ga. Aug. 10, 2023) (denying summary judgment on TVPRA, Georgia RICO, and negligence counts) and Doc. No. 300, setting trial. With more than sufficient evidence to proceed to trial on all counts, the allegations in those cases are not "spurious" by definition.

Dr. Abigail M. Judge Deposition, *J.A. v. Red Roof Inns,* Case No. 1:21-cv-03655-TWT, at 311:5–11.

Notwithstanding the irrelevant and unprofessional attacks against Plaintiff's attorneys, Defendants' expert's report also includes a summary of her opinions on page 15 and on pages 60–61. Curiously enough, neither summary nor conclusion includes any reference to the secondary exploitation section defaming Plaintiff's counsel. This deliberate absence only further shows that Section XI of Dr. Mehlman-Orozco's report is included for the purpose of harassment and distraction and has nothing to do with any material issue in this case. Therefore, it should be excluded.

**II.     Section 1 of Mr. Seid's expert report should be excluded because it is not relevant to any issue and contrary to the applicable legal standards in this case.**

Mr. Seid opines ███████████████████████████████ ███████ (Seid Report at 11–13). There is no "████████████████" standard that applies in this case. The actual law provides a much lower standard than this manufactured one and providing opinions on this subject can only be intended to confuse the jury as to what type of relationship Plaintiff and Defendants must be in for liability to attach. In short, there is no relationship requirement for liability to attach on either of Plaintiff's claims in this case, and thus this testimony should be excluded.

Plaintiff brings two claims, one under the TVPRA and one under Georgia RICO for keeping a place of prostitution and knowingly benefitting from sex trafficking in violation of Georgia law. The concept of "███████████████" has only come up once in a TVPRA sex trafficking case, and then, only in a separate, declaratory judgment action filed by an insurance company seeking to disclaim coverage. *See Starr Indem. & Liab. Co. v. Choice Hotels Int'l, Inc.*, 20-CV-3172 (PKC), 2021 WL 2457107, at *6 (S.D.N.Y. June 16, 2021). And the only reason that was an issue was because Starr's insurance policy had an exclusion for assault and battery of anyone under the "███████████" of an insured. *Id.*

Defendants' insurance company has filed a declaratory judgment action that includes the claims made by Plaintiff. *See Liberty Mutual Fire Insurance Co. v. Red Roof Inns, Inc., et al.*, 1:23-cv-02047-LMM (N.D. Ga.). In that case, the issue of "███████████" has not thus far been raised. However, to the extent that Defendants are introducing such evidence in this case to make a point about insurance coverage in that case, such evidence is inappropriate here and completely irrelevant to the issues of liability and damages.

The elements of a TVPRA claim have been properly set forth by this Court a number of times. Namely, the elements Plaintiff must prove are that Defendants:

11

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

*D.H. v. Tucker Inn, Inc.,* Case No. 1:22-cv-3419-JPB at *6 (Sept. 9, 2023) (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 726 (11th Cir. 2021)).

Simply put, there is no element of her TVPRA claim that requires Plaintiff to prove any type of status or particular relationship with Defendants, much less that of being in any Defendant's " ███████████████ ." Therefore, the standard is irrelevant to Plaintiff's TVPRA claim.

Likewise, a search of reported Georgia RICO decisions under O.C.G.A. §§ 16-4-1, 16-14-4, and 16-14-3 finds a total of two references to "care, custody, or control." One is a reference to a contractual obligation between parents and a medical and educational provider. *Reaugh v. Inner Harbour Hosp., Ltd.*, 214 Ga. App. 259, 261 (1994). The other is a reference to the crime of theft by programs receiving federal funds, where 18 U.S.C. § 666(a)(1)(ii) makes it a crime to steal property that "is under the care, custody, or control of" a government organization or agency. *United States v. Stevens*, 1:18-CR-160-SCJ-JKL, 2018 WL 6596457, at *7 (N.D. Ga. Aug. 28, 2018), *report and recommendation adopted,* 1:18-CR-160-SCJ, 2018 WL 6190676 (N.D. Ga. Nov. 28, 2018). None of these issues apply to

this case, and the standard of "care, custody, or control" is irrelevant to Plaintiff's Georgia RICO claims.

That is because, to prevail on her Georgia RICO claim, Plaintiff must show the following elements, recently outlined by Judge William Ray in a summary judgment opinion against some of the same defendants—and including the same predicate acts—as here.

> To establish their Georgia RICO claims, Plaintiffs must show that: (1) the Red Roof Defendants acquired or maintained an interest in or control of money; (2) through a pattern of racketeering activity; and (3) the racketeering activity harmed Plaintiffs. O.C.G.A. §§ 16-14-4(a), 16-14-3(4)(A). The Red Roof Defendants do not challenge the first element, but they argue that Plaintiffs failed to present evidence as to the second and third elements. The Court disagrees.
>
> "Racketeering activity" means to "commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit" certain enumerated crimes known as predicate acts. O.C.G.A. § 16-14-3(5)(A). Among the predicate acts relevant here are keeping a place of prostitution, prostitution, pimping, and sex trafficking. *See* O.C.G.A § 16-14-3(5)(A)(vi)-(vii). A pattern of racketeering activity requires just two related predicate acts. O.C.G.A. § 16-14-3(4)(A); *Dorsey v. State*, 279 Ga. 534, 540, 615 S.E.2d 512 (2005).
>
> Here, the record would permit a jury to find that the Red Roof Defendants committed or aided in the commission of the predicate act of "keeping a place of prostitution" at the Buckhead and Smyrna Red Roof hotels. A person or legal entity keeps a place of prostitution when they "hav[e] or exercise[e] control over the use of any place or conveyance which would offer seclusion or shelter for the practice of prostitution" and they "knowingly grant[ ] or permit[ ] the use of such place for the purpose of prostitution." O.C.G.A. § 16-6-10. Plaintiffs testified to being repeatedly sold for sex, and hotel employees

13

> admitted to not just observing but, in some cases, knowingly renting rooms to the prostitutes or their pimps.
>
> The record would also permit a jury to find that the Red Roof Defendants were parties to the commission of the predicate acts of sex trafficking, prostitution, and pimping. Although the Red Roof Defendants argue that they were not "directly involved" in the commission of these predicate acts, Plaintiffs' claims do not require that the Red Roof Defendants' employees directly sold Plaintiffs for sex. Under Georgia law, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime," including anyone who "intentionally aids and abets" or "intentionally advises, encourages, hires, counsels or procures another to commit the crime." O.C.G.A. § 16-2-20(a), (b)(3)-(4); *Coggins v. State*, 275 Ga. 479, 480, 569 S.E.2d 505 (2002). This same principle applies to the commission of predicate acts for civil liability under Georgia RICO. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1398 (11th Cir. 1994) (one who aids and abets two predicate acts can be civilly liable under RICO). Here, there is evidence to show that the Red Roof Defendants not only knew of and allowed the prostitution at the hotels, including the prostitution of young or underage girls, but also that they actively assisted in the commission of those crimes by directing suspected prostitutes or their pimps to rooms in the back of the hotels where they would not be observed and, through their employees, alerting them of any police presence.

*Does 1-4 v. Red Roof Inns, Inc.*, 1:21-CV-04278-WMR, 2023 WL 5444261, at *4 (N.D. Ga. Aug. 10, 2023) (denying summary judgment). The issue of "care, custody, or control" is simply not relevant to Plaintiff's Georgia RICO claims. The only "control" that Plaintiff must show is that Defendants controlled the Norcross Red Roof and offered it for the practice of prostitution. *Id.*

14

At no point is the issue of whether Plaintiff was under anyone's "care, custody, or control" appropriate to put before the jury in this case. To do so would only encourage confusion and propose an improper legal standard to the jury.

If an expert's conclusions are based on the wrong legal standard, those conclusions are obviously irrelevant and should not be admitted. *See, e.g.*, *Szeinbach v. Ohio State Univ.*, No. 2:08-CV-822, 2012 WL 5903114, at *2 (S.D. Ohio Nov. 26, 2012). The relevant issue in *Szeinbach*, for example, was whether the plaintiff engaged in "misconduct" as defined under a university policy. *Id.* at *6–8. The plaintiff's expert, however, based his opinion on his own "definition of what constitutes misconduct." The expert "provided no testimony with respect to any overlap between his definition and the Interim Policy." *Id.* at *8. Because the expert's opinion was not based on the meaning of the term in the governing policy, the court excluded his testimony as "simply not relevant." *Id.*; *see also Fed.- Mogul Corp. v. Ins. Co. of Pa.*, No. 12-12005, 2016 WL 4486996, at *6 (E.D. Mich. Aug. 26, 2016) (excluding expert testimony that applied the wrong legal standard); *Pac. Coast Marine Windshields Ltd. v. Malibu Boats*, LLC, No. 6:12-CV-33-ORL-28DAB, 2013 WL 12156465, at *12 (M.D. Fla. Jan. 4, 2013) (same); *In re Novatel Wireless Sec. Litig.*, 846 F. Supp. 2d 1104, 1108 (S.D. Cal. 2012) (same).

Because Mr. Seid's opinion regarding "████████████████" is irrelevant to the issues in this lawsuit, that part of his opinion should be excluded.

## CONCLUSION

Both *Daubert* and the Federal Rules of Evidence require that expert testimony be relevant and permit the court to exclude expert testimony if it is not. Because the information included in Section XI of Dr. Mehlman-Orozco's report is irrelevant and harassing, and thus fails to meet the *Daubert* standard, Plaintiff seeks to exclude Section XI of Dr. Mehlman-Orozco's expert report and preclude her from testifying at trial regarding Plaintiff's attorneys or "████████████████" Similarly, because Mr. Seid's opinion regarding "████████████████" is irrelevant to the issues in this lawsuit, section 1 of his opinion should be excluded and Mr. Seid should be prevented from testifying at trial regarding whether Plaintiff was in anyone's "████████████████"

Respectfully submitted this 18th day of September, 2023.

                          **ANDERSEN, TATE, AND CARR, P.C.**

                          */s/ Jonathan S. Tonge*
                          Patrick J. McDonough
                          Georgia Bar No. 489855
                          pmcdonough@atclawfirm.com
                          Jonathan S. Tonge
                          Georgia Bar No. 303999
                          jtonge@atclawfirm.com
                          *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## RULE 7.1(D) CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that the foregoing submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Respectfully submitted this 18th day of September, 2023.

                                                **ANDERSEN, TATE, AND CARR, P.C.**

                                                ***/s/ Jonathan S. Tonge***
                                                Patrick J. McDonough
                                                Georgia Bar No. 489855
                                                pmcdonough@atclawfirm.com
                                                Jonathan S. Tonge
                                                Georgia Bar No. 303999
                                                jtonge@atclawfirm.com
                                                *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| H.B., | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION FILE NO. |
| v. | : | 1:22-cv-01181-JPB |
| | : | |
| RED ROOF INNS, INC. et al., | : | |
| | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF system, which will send notice to counsel of record

Respectfully submitted this 18th day of September, 2023.

                **ANDERSEN, TATE, AND CARR, P.C.**

                */s/ Jonathan S. Tonge*
                Patrick J. McDonough
                Georgia Bar No. 489855
                pmcdonough@atclawfirm.com
                Jonathan S. Tonge
                Georgia Bar No. 303999
                jtonge@atclawfirm.com
                *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000

Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile