IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.B.,<br><br>   Plaintiff,<br><br>v.<br><br>RED ROOF INNS, INC., et al.,<br><br>   Defendants. | ) CIVIL ACTION FILE<br>) NO. 1:22-CV-01181-JPB<br>)<br>)<br>) **DEFENDANT RED ROOF INNS,**<br>) **INC.'S MEMORANDUM IN**<br>) **SUPPORT OF ITS MOTION FOR**<br>) **SUMMARY JUDGMENT** |

Defendant Red Roof Inns, Inc. (RRI Inc.), files this memorandum in support of its motion for summary judgment.

## I. INTRODUCTION

This Court should grant Red Roof Inns Inc., (RRI Inc.)'s motion for summary judgment on Plaintiff's claims because there is no evidence that RRI Inc. violated the Trafficking Victims Protection Reauthorization Act (TVPRA) or Georgia's civil RICO statute. This is because there is no evidence that :

- RRI Inc. knowingly received a financial benefit from Plaintiff's alleged trafficking as it did not directly receive gross revenues from Norcross.

- RRI Inc. actively participated in a venture with Plaintiff's traffickers, Lucky, Pizza, Skii, nor is there evidence that RRI Inc. knew or should have known they allegedly violated Section 1591(a) as to Plaintiff.

- In addition, there is no evidence that RRI Inc. directly engaged in racketeering activity that targeted Plaintiff or intentionally directed any person to do the same.

Moreover, Plaintiff's Civil RICO claim is time barred by the 5-year statute of limitations. O.C.G.A. 16-14-8. Thus, for these reasons, and the reasons explained below, this Court should grant RRI Inc.'s motion for summary judgment.

## II.   STATEMENT OF FACTS

### A.   Lucky, Pizza, and Skii allegedly sex trafficked Plaintiff.

At age 16, Plaintiff was allegedly trafficked by three pimps named Lucky, Pizza, and Skii at Red Roof Inn Norcross (Norcross) for 10-15 days between December 26, 2011, and January 19, 2012. Deposition of Pl. H.B. 37:13-21, 39:12-16, 153:20-157:7, 227:2-228:11, 233:10-20, 262:22-263:12, 284:14-286:6 (Nov. 3, 2022), Exhibit A. It began when Plaintiff met Lucky on an over-18 dating website called Tagged. Ex. A 170:3-172:25; Tagged Consent Form, Exhibit B. After talking, Plaintiff met Lucky in person. Ex. A 181:5-15. Lucky picked Plaintiff up, took her to meet a local hip hop group, and then ran errands with her. Ex. A 182:17-183:20, 190:7-16, 193:3-198:22. After running errands, Plaintiff asked to go home, but Lucky refused. Ex. A 166:16-169:23. Instead, he kept her overnight and eventually checked in with her at Norcross. Ex. A 168:22-169:23, 217:4-218:11. She stayed at Norcross with Lucky for four days. Ex. A 229:2-25. On the third day, Plaintiff

testified that Lucky forced her to have sex with him for money. Ex. A 169:2-23, 219:24-221:14; 229:2-29. Lucky did not pay her. *Id.*

The next day, Plaintiff left Norcross with Lucky. Ex. A  38:2-41:23, 263:10-264:24. During this time Lucky bought Plaintiff food and took her to get her hair done. Ex. A 252:6-254:10. They returned to Norcross a day or two later. Ex. A 233:21-234:6. Once back, Lucky told Plaintiff she owed him money and she could earn the money by engaging in sex for money. Ex. A 252:3-254:21. Lucky then recruited Pizza and Skii to help him facilitate Plaintiff's alleged trafficking. Ex. A 254:22-256:3, 259:5-260:24.

At Norcross, Plaintiff never spoke to any employee. Ex. A 162:2-163:10, 240:25-241:6, 245:11-13. At most, she sometimes accompanied Lucky to the front desk. Ex. A 226:10-12, 241:14-25. Yet, Plaintiff alleges Lucky paid two Norcross employees, an unnamed front desk worker and an unnamed housekeeper, to keep a "lookout" for him. Ex. A 242:25-247:25. She believes Lucky paid them off because he told her that is why he paid them. Ex. A 242:25-245:13, 292:4-13.

On January 19, 2012, Plaintiff was arrested by the Gwinnett County police for prostitution. Ex. A 276:9-278:13; Police Rep., Exhibit C. Plaintiff was not charged. Instead, the police called her parents, who picked her up and took her home. Ex. A 281:1-284:21. There is no evidence that any RRI Inc. employee knew what happened to her. Ex. A 293:2-24.

**B.      RRI Inc. did not own, manage, operate, or control Norcross between December 2011 and January 2012.**

Norcross is a Red Roof Inn franchised location. Franchise Agreement, Exhibit D. As a franchisee, Norcross was authorized to use the Red Roof Inn brand, name, and logo under a Franchisee Agreement. *See generally*, Ex. D at 1. RRI Inc. was not the franchisor. Rather, RRI Inc. licenses its name, logo, and brand to independent third-party owners and operators of hotels through a separate entity, Red Roof Inn Franchising, LLC (RRF). *Id.*; Deposition of Glenn Galbraith, 22:12-24, Exhibit E. Along with independently owned franchisees, RRI Inc. also licenses its brand to franchisees that are affiliate managed. Ex. E 44:10-24. Between 2011 and 2012, Norcross was an affiliate-managed franchisee. Ex. E 22:12-26:24, 44:10-24.

**1.      FMW RRI I (FMW) owned Norcross and leased it to FMW RRI Opco (Opco).**

Between December 2011 and January 2012, FMW owned Norcross. Ex. E 27:4-14. FMW leased the Norcross property to Opco. Ex. E 27:4-14, 28:3-15; Lease Agreement, Exhibit G. In 2013, Norcross was sold to an independent franchisee. Declaration of Glenn Galbraith at ¶¶ 4-5 (citing Franchisee Agreements), Exhibit F.

**2.      Opco franchised Norcross through RRF, not RRI Inc.**

Opco then entered into a Franchisee Agreement with RRF. Ex. D. Under the Franchise Agreement, among other things, Opco agreed to ensure Norcross was operated in accordance with RRF's Franchisor Standards. Ex. D at 7, 5.6.2. The

4

Agreement makes clear that Opco's employees and agents are "independent contractors" and that nothing in the Franchise Agreement "shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent or joint venture between Franchisor (or its Affiliates) and Franchisee." Ex. D 15, 30, 5.10.1, 15.1.

### 3.    Opco engaged RRI West to manage Norcross.

Opco then entered into a Management Agreement with RRI West to manage the Norcross property. Management Agreement, Exhibit H. Under the Management Agreement, RRI West determined operating policies, set standards of operations, handled customer relations, and decided hours, employee schedules, and wages. Ex. H at 31-32, § 4.1(b)-(c); Ex. E 24:18-26:1, 35:13-22. Despite this, the Management Agreement made it clear that RRI West was an independent contractor who did not have an agency relationship with FMW. Ex. H at 33, Section 4.6. This included an express agreement that RRI West will not hold itself out as an agent or give the impression that it can act on behalf of any entity beyond itself. *Id.*

From 2011 to late 2012, Norcross's General Manager (GM) was Kimberly Rachal, who oversaw Norcross's operations. Ex. E 55:12-16. Operations included: housekeeping, the front desk, maintenance, and policy implementation. Ex. E 57:22-58:5. RRI Inc., paid Norcross's hourly employees' wages. Ex. E 47:21-48:2.

### 4.    RRI Inc. did not directly receive Norcross's Gross Revenues.

RRF, FMW, and Opco received a portion of Norcross's Gross Revenues,[1] but RRI Inc. did not directly receive a portion of the Gross Revenues under any agreement. Ex. E 50:8-52:14; John Park Dep. 83:23-84:5, Exhibit I.

### C. Norcross had security in place and trained its employees to report criminal activity, including prostitution.

RRI Inc. requires all on-site managers to undergo security training, which includes identifying and reporting incidences of criminal activity to local law enforcement, including prostitution. Ex. E 62:10-63:8, 146:2-15, 148:12-24; Safety & Security Training, Exhibit J; V. Vittatoe Dep. 72:8-19, 74:20-75:3, 93:6-19, 94:9-15, Exhibit K. After being trained, GMs train each employee. Ex. J; Ex. E 144:18-145:23. And RRI West is responsible for ensuring the GMs follow through with company training. Ex. E 65:13-19. Starting in 2013 and 2014, RRI Inc. provided training on human trafficking. Ex. E 106:7-12, 126:13-127:10, 131:12-133:17. Prior to that sex trafficking was not a term generally known in the industry. Report of Greg Bristol, Exhibit L; Ex. K 97:4-98:7.

Norcross had security cameras on the property and contracted with an independent security company, G4S Secure Solutions, to patrol the property from 10PM to 5AM Friday through Sunday. Security Agreement and Security Addendum, Exhibit M; Randall Stump Dep. 16:4-17, 39:17-25, Exhibit N. The security company

---

[1] Ex. D 4.2, 4; Ex. G 11, 13, Art. 2, 3; Ex. H at 39, § 6.1; Ex. E 48:3-19.

was supposed to report criminal activity, including prostitution, to the GM. Ex. N 19:2-20:8.

In addition, Jay Moyer, the Vice President of Operations for RRI West, oversaw Norcross during Plaintiff's alleged trafficking. Jay Moyer Dep. 22:3–23:1, Exhibit O. During his visits, Moyer talked to the GM, hotel staff, his supervisor, and the Safety and Security department. Ex. O 22:3–23:1; Jay Moyer Dep. 16:24-19:14, Exhibit P. He stayed at the property, walked the property, and talked to the clientele. Ex. P 17:22-25. He never witnessed or observed prostitution at Norcross, let alone sex trafficking. Ex. P 25:1-26:4, 40:14-41:1. Despite these efforts and training, there is some evidence that prostitution may have occurred at Norcross. Affidavit of Erin Richardson & Harkleroad, Exhibit R & S; Heather Gilmore Dep. 21:14-19, Exhibit Q. However, no Norcross employee, or security guard, suspected sex trafficking. Ex. Q 83:19-25; Ex. N 113:10-19.

## III.  ARGUMENT AND CITATIONS TO AUTHORITIES.

### A.  Summary Judgment Standard

Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). Once met, the burden shifts to the

nonmovant who must designate specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

### B.    There is no evidence that RRI Inc. directly violated the TVPRA.

The TVPRA provides victims of criminal trafficking with a civil cause of action against (1) the perpetrator, or (2) parties that knowingly benefitted from participation in a venture that they knew or should have known was engaged in criminal trafficking. It is undisputed that Pizza, Skii, and Lucky were Plaintiff's traffickers. They are the perpetrators. Thus, Plaintiff must show that RRI Inc. is liable as a "beneficiary" under the TVPRA.

In *Doe #1 v. Red Roof Inns, Inc.*, the Eleventh Circuit found that a defendant is liable as a "beneficiary" only if it: (1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA; and (4) the beneficiary knew or should have known that the venture violated the TVPRA as to the plaintiff. 21 F.4th 714, 726 (11th Cir. 2021). This is a conjunctive test and Plaintiff must prove each element. Here, there is no evidence of any element against RRI Inc.

### 1.    There is no evidence that RRI Inc. knowingly benefitted from Plaintiff's alleged trafficking.

There is no evidence that RRI Inc. knowingly benefited from participating in a sex trafficking venture. The TVPRA is clear. To be liable, a defendant must "***knowingly*** benefit[], . . . financially or by receiving anything of value ***from***

*participation* in a venture. . . ." 18 U.S.C. 1595(a) (emphasis added). The benefit must derive from a defendant's "participation." *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Put simply, the "benefit" prong has a causation element, and the benefit must come from the venture. *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022). There is no evidence RRI Inc. "knowingly benefited" from participating in a volitional venture.

It is undisputed that RRI Inc. did not directly receive any portion of the Gross Revenues from Norcross, let alone a portion of any money from Plaintiff's traffickers. Ex. D 4.2, at 4; Ex. E 48:3-52:14; Ex. G 11, 13, Art. 2, 3; Ex. H __; Ex. I 83:23-84:5. Second, even if it did, there is no evidence that RRI Inc. had actual knowledge that any revenue came from Plaintiff's alleged trafficking. In fact, there is no evidence that RRI Inc. knew Plaintiff, her traffickers, or of any incidences of sex trafficking. This element fails.

### 2. There is no evidence that RRI Inc. participated in a venture with Plaintiff's traffickers: Lucky, Skii, and Pizza.

A TVPRA claim requires Plaintiff to prove RRI Inc. participated in a venture that engaged in a violation of Section 1591. 18 U.S.C. 1595(a). Plaintiff plainly testified that Lucky, Pizza, and Skii allegedly trafficked her. Ex. A 284:14-286:6. Thus, Plaintiff must show that RRI Inc. participated in a venture with Pizza, Skii, and Lucky. She cannot meet this burden.

> **a.** **There is no evidence of a venture between RRI Inc. and Lucky, Skii, and Pizza.**

For Plaintiff's claim to succeed, she must show that a venture existed between RRI Inc. and Lucky, Pizza, and Skii. There is no evidence of this. A "venture" is "an undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724. RRI Inc. licenses its name, logo, and brand to third-party hotel owners and operators through RRF. SUF ¶ 25. RRI Inc. did not handle day-to-day management at Norcross. The relationship is simple: RRF entered into a franchise agreement with Opco. Ex. D. Then, Opco leased the Norcross property from FMW. Ex. G. After that, Opco entered into a management agreement with RRI West. Ex. H. RRI West operated Norcross. Ex. H.

Lucky periodically rented a room at Norcross between December 2011 and January 2012. Ex. A 166:16-169:23, 217:4-218:11. RRI Inc. had no connection to Lucky, Pizza, or Skii, let alone any connection showing RRI Inc. entered an enterprise with them "involving risk and potential profit." *Doe #1*, 21 F.4th at 724. There is no evidence of a venture.

> **b.** **RRI Inc. did not participate in a venture with Plaintiff's traffickers: Lucky, Skii, and Pizza.**

Even if there were evidence of a venture between RRI Inc. and Plaintiff's traffickers (there is not), there is no evidence of RRI Inc.'s participation. Participation requires "tak[ing] part in or shar[ing] with others in common or in an

association" *Doe #1*, 21 F.4th at 725, or "a desire to promote the wrongful venture's success[.]" *G.G. v. Salesforce.com, Inc.*, No. 22-2621, 2023 WL 4944015, at *11 (7th Cir. Aug. 3, 2023) (citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)). Put another way, participation in a venture requires Plaintiff to "connect the dots" between RRI Inc. and the person that allegedly violated Section 1591. *See J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1317 (N.D. Ga. 2022) (collecting cases). Plaintiff cannot meet this burden.

First, engaging in routine business activities, such as renting rooms, does not qualify as participation. The Eleventh Circuit reached this exact conclusion under nearly identical factual circumstances. *See Doe #1*, 21 F.4th at 727 (renting a room to a customer, does "nothing to show that the [hotels] participated in . . . the alleged sex trafficking ventures.").[2] Renting rooms is not participation.

Second, neither ignoring signs of prostitution nor failing to prevent Plaintiff from being trafficked qualifies as participation. In fact, *Doe #1* forecloses this theory by expressly holding that a failure to act is *not* participation under the TVPRA. *Doe #1*, 21 F.4th at 727. In doing so, it explained that "observing something is not the same as participating in it." *Id.* Thus, "observ[ation]" of signs is not "participation"

---

[2] Courts in the Eleventh Circuit agree. *See, e.g.*, *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *A.D. v. Holistic Health Healing Inc.*, No. 2:22-CV-641-JES-NPM, 2023 WL 2242507, at *3 (M.D. Fla. Feb. 27, 2023) (same).

as a matter of law. *See*, *e.g.*, *L.H. v. Marriot Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) ("failing to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing . . . profit . . . is not enough to trigger TVPRA liability. . . .") (collecting cases).

Moreover, even if this were participation (it's not), there is no evidence that any Norcross employee, let alone RRI Inc., observed signs of sex trafficking, let alone observed signs relating to Plaintiff. Ex. Q 83:19-25. Rather, there were no reported incidents of sex trafficking at Norcross before January 2012.

In sum, there is no evidence that RRI Inc. actively participated in a venture with Lucky, Skii, and Pizza . Plaintiff cannot establish participation.

### 3. There is no evidence that RRI Inc. knew or should have known it participated in a volitional venture under the TVPRA.

A TVPRA claim also requires Plaintiff to prove a causal link between her sex trafficking and the defendant. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 707 (E.D. Mich. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153-54 (E.D.N.Y. 2020). In other words, RRI Inc. cannot be liable under Section 1595(a) unless ***RRI Inc.*** itself "knew or should have known" that Lucky, Skii, and Pizza trafficked Plaintiff. *Doe #1*, 21 F.4th at 726; *see also S.J.*, 473 F. Supp. 3d at 154 ("The real issue is not, then, actual-versus-constructive knowledge but whether

a defendant satisfies the knowledge element as to a *particular* sex trafficking venture."). Plaintiff cannot meet this burden.

First, there is no evidence RRI Inc. had actual knowledge. In fact, Plaintiff never spoke to any Norcross employee, let alone an RRI Inc. employee, nor did she try to communicate that Lucky, Pizza, and Skii were keeping her against her wishes. Ex. A 62:2-163:10, 240:25-241:6, 245:11-13. Thus, no one from RRI Inc. had an opportunity to gain actual knowledge. Nor is there any evidence that anyone from RRI Inc. knew Lucky, Pizza, and Skii, or that they allegedly trafficked Plaintiff.

At most, Plaintiff claims that two unnamed and unidentified Norcross employees kept "lookout" for Lucky. Ex. A 242:25-247:25. This does not create an issue of fact on actual knowledge. First, Plaintiff's belief that these unknown individuals were keeping "lookout" is based on what Plaintiff claims Lucky and Skii "told" Plaintiff. Ex. A 242:25-245:13, 292:4-13. Put simply, Plaintiff's claims are entirely based on hearsay that is not subject to any exception. Fed.Evid.R. 801-803. Hearsay statements are inadmissible and cannot be used to create a genuine issue of fact. *Pye v. Principi*, No. 1:04-CV-0492-JFK, 2005 WL 8154347, at *2 (N.D. Ga. June 20, 2005) (collecting cases). Second, even if it were admissible, it does not show knowledge of Plaintiff's trafficking. At most, it might show that these

unnamed employees may have known about prostitution. And prostitution does not violate Section 1591.[3] Thus, there is no evidence of actual knowledge.

Second, there is no evidence that RRI Inc. "should have known" that Lucky, Skii, and Pizza were allegedly trafficking Plaintiff. Plaintiff disagrees, likely arguing, constructive knowledge exists because (1) there is some evidence of prostitution occurring at Norcross, and (2) the hotel industry was aware of human trafficking and RRI Inc. failed to provide training and institute policies necessary to identify and prevent it. Neither assertion has merit.

Only for purposes of this motion, RRI Inc. does not dispute that there is some evidence that prostitution occurred at Norcross.[4] Prior instances of prostitution, however, do not establish that RRI Inc. "should have known" Pizza, Lucky, and Skii, engaged in prostitution, let alone trafficked Plaintiff. This is because:

- Prior incidences of prostitution are not tied to Plaintiff or her alleged traffickers, rather they are separate acts involving separate individuals under separate circumstances that occurred at separate times. Exs. R & S; and

- Prostitution does not violate the TVPRA.[5]

---

[3] Section 1591 criminalizes forcing an individual to engage in commercial sex or engaging a minor in commercial sex.

[4] RRI Inc. does not concede prostitution occurred and does not waive any arguments about the same.

[5] *See J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020) (allegations must be sufficient to "allow courts to infer that motel or hotel employees should have known that human trafficking was

In other words, nothing about prior incidences of prostitution has any connection to RRI Inc.'s knowledge regarding Plaintiff or her traffickers, Lucky, Skii, and Pizza. This failure is fatal.

Plaintiff cannot staunch this fatality by citing to general industry knowledge or failure to implement policies to stop prostitution and sex trafficking. The reason is simple: Neither a general industry awareness, nor RRI Inc.'s alleged failure to prevent trafficking on all branded properties, equates to actual or constructive knowledge that **Plaintiff** was trafficked through the criminal conduct of **Lucky, Skii, and Pizza**, as required under the TVPRA.

But even if it were, it still fails. Rather, the evidence shows that RRI Inc. was unaware of sex trafficking until 2013 or 2014, one year after Plaintiff's alleged trafficking. Ex. L; Ex. K 97:4-98:7. And once aware of the issue, RRI Inc. began providing training to its franchisees, managers, and hotel employees. Ex. E 106:7-12, 126:13-10, 131:12-133:17. There is no admissible evidence that RRI Inc. should have known about sex trafficking in 2011.

Nor is there any evidence that providing training on sex trafficking in this context would have alerted RRI Inc. to Plaintiff's trafficking. Quite the opposite.

---

occurring, as opposed to other criminal conduct, such as prostitution"); *A.B.*, 484 F. Supp. 3d at 941 (notice that a plaintiff engaged in commercial sex was not enough to show a violation of Section 1591).

Plaintiff, who was 16 then, was only on the property for 10-15 days total throughout a 3-week period. Ex. A 39:12-16, 262:22-263:12. During that time, other than supposedly accompanying Lucky sometimes to the front desk, she stayed in her room and did not speak to anyone. Ex. A 62:2-163:10, 240:25-241:6, 245:11-13. At most, there were allegedly multiple "johns" in her room. But again, there is no evidence that this was visible to any person, let alone that RRI Inc. saw it and should have known sex trafficking was taking place.

In sum, there is no evidence that RRI Inc. had actual or constructive knowledge that Lucky, Pizza, and Skii trafficked Plaintiff between December 26, 2011, and January 19, 2012. Thus, there is no evidence of knowledge.

### C.      There is no evidence that RRI Inc. indirectly violated the TVPRA.

#### 1.      Vicarious liability is not viable under the TVPRA.

The TVPRA creates liability for the immediate "perpetrators" of human trafficking and those beneficiaries who directly and knowingly "participate" in it. 18 U.S.C. 1595(a). The statute, however, does not mention, or even hint, at extending liability to other, more tangentially involved parties. This targeted liability follows Section 1595's ostensible goal of providing a civil remedy for what is otherwise criminal involvement in human trafficking. As is often the case in the criminal context, liability under Section 1595 presumes some form of intentional, or at least reckless, action. Couple that intent standard with the "participation"

element and you get a statute that applies only to the most direct actors in the trafficking venture. In sum, Section 1595 limits liability to "participants" in a human trafficking operation who held the requisite (and significant) level of intent to participate. Allowing indirect liability overwrites these statutory precautions.

Nor, as some courts have suggested, does the "federal common-law" doctrine of vicarious liability fill the void. *See, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020). Federal common law cannot operate here because the language in Section 1595 is a "clear and explicit" choice to forgo common law indirect liability principles. *Id.* Specifically, its use of language requiring "knowing participation," which the Eleventh Circuit has interpreted to mean that the actor must "take part in" or "share in," shows an intent to limit liability to parties who effected the trafficking operations. *Doe #1*, 21 F.4th at 725. Federal courts, including the Eleventh Circuit, have not hesitated to restrict, or even obviate, vicarious liability when the existence of liability under a federal statute hinges on a participant's own personal conduct. *See, e.g.*, *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (holding that vicarious liability does not exist under 42 U.S.C. 1983). Thus, vicarious liability is unavailable under the TVPRA.

### 2.   RRI Inc. is not vicariously liable.

Even if vicarious liability were available, the claim still fails. To establish vicarious liability a plaintiff prove that "(1) defendants were in an agency

relationship, and (2) the hotels or hotel staff are plausibly liable under [Section] 1595(a)." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021) (citing *A.B.*, 484 F. Supp. 3d at 939). There is no evidence of either requirement.

The reason is simple: no agency relationship existed between RRI Inc., any other entity associated with Norcross. In fact, the Franchise Agreement, Lease, and Management Agreement all make clear that none of the entities were agents or employees of one another and that the agreements could not be construed as creating a principal/agency relationship. Ex. H. Thus, RRI Inc. is not vicariously liable for the conduct or actions of any other entity.

Even if this Court considers the allegations that an unknown front desk and housekeeping employee allegedly were paid to keep a "lookout" for Lucky, this cannot defeat summary judgment. First, as discussed, the only evidence for these claims is inadmissible hearsay. *Supra Part* III.B.3. Second, even if true, RRI Inc. is not liable because the employees were not acting within the course and scope of their employment. Restatement (Third) of Agency § 7.07 (2006). "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id.* Getting paid on the side, essentially receiving a bribe, is a crime and does not serve any RRI Inc.'s purpose. To be sure, RRI Inc. explicitly stated that it does not condone

prostitution, and trained its employees to report it. Ex. E 148:12-149:8. Taking bribes is outside the scope of employment. RRI Inc. cannot be vicariously liable for it.

### D. Plaintiff's Georgia RICO claims fail as a matter of law.

#### 1. Plaintiff's RICO claim is barred by the statute of limitations.

O.C.G.A. 16-14-8 provides a five-year statute of limitation to bring a claim for Civil RICO violations. Because Plaintiff was a minor in 2011, any statute of limitation was tolled until she reached 18 in 2013. O.C.G.A. 9-3-90 (b). Plaintiff was 18 in 2013. Ex. A 42:2-4. Plaintiff's alleged trafficking took place between December 2011 and January 2012. Ex. A 227:2-228:11. Norcross was sold in 2013. Ex. E. Any claim under O.C.G.A. 16-14-4 had to be filed by 2018. Plaintiff filed on March 24, 2022. Pl. Compl., ECF No. 1. This claim is barred.

#### 2. No evidence supports a Civil RICO claim.

Under Georgia civil RICO, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. 16-14-4(a). A "pattern" consists of at least two incidents of racketeering activity "in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." O.C.G.A. 16-14-3(4)(A).

"Racketeering activity" means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another person to commit any crime which is chargeable by indictment under [Georgia law]." O.C.G.A. 16-14-3(5)(A). O.C.G.A. 16-14-3(5)(A) defines the laws involving "racketeering activity." A person commits a crime either *directly* or by *intentionally* aiding, abetting, advising, encouraging, hiring, counseling, or procuring another to commit the crime. *See* O.C.G.A. 16-2-20(b) (emphasis added).

Plaintiff alleges RRI Inc. received financial benefits from the commission of two predicate acts: (1) trafficking an individual for sexual servitude under O.C.G.A. 16-5-46, and (2) keeping a place of prostitution under O.C.G.A. 16-6-10. Am. Compl. ¶¶ 70-108, ECF No. 51. There, however, is no evidence that RRI Inc. committed either act or intentionally encouraged another to commit the same.

> ### a.   RRI Inc. did not directly engage in racketeering activity or intentionally cause another to do the same.

Georgia courts have held that where "there is evidence that [a corporation's] agents or employees committed predicate offenses . . . and there are material issues of fact with respect to whether [the corporation] was a party to or involved in the commission of these offenses[,] . . . the RICO enterprise may consist of a corporation and its agents or employees." *Reaugh v. Inner Harbour Hosp.*, 447 S.E.2d 617, 622 (Ga. Ct. App. 1994); *Duvall v. Cronic*, 820 S.E.2d 780, 790 (Ga. Ct. App. 2018).

Thus, only where a corporation is a party to or involved in the commission of the employee-perpetrator's predicate crimes can it be liable under civil RICO. *Duvall,* 820 S.E.2d at 790-91. Indeed, there must be evidence that the defendant violated, or attempted to violate, the criminal statutes. *Cox v. Mayan Lagoon Estates Ltd.*, 734 S.E.2d 883, 891 (Ga. Ct. App. 2012). But where the corporation is merely "the victim, prize, or passive instrumentality of racketeering[,]" the corporation is not liable under civil RICO. *Reaugh,* 447 S.E.2d at 621. There is no evidence that RRI Inc. was involved in or the direct beneficiary of a predicate act.

### i.   RRI Inc. was not involved in trafficking for sexual servitude under O.C.G.A. 16-5-46.

Under O.C.G.A. 16-5-46 "[a] person commits the offense of trafficking an individual for sexual servitude when that person knowingly . . . [b]enefits financially or by receiving anything of value from the sexual servitude of another." "Sexual Servitude" means any sexually explicit conduct or performance that is induced or obtained from a person who is under the age of 18 years. O.C.G.A. 16-5-46(a)(8)(B). Under Georgia law, however, a corporation can be prosecuted only if:

> [A]n agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his or her office or employment and on behalf of the corporation and the commission of the crime was either authorized, requested, commanded, performed, or within the scope of his or her employment on behalf of the corporation or constituted a pattern of illegal activity that an agent of the company knew or should have known was occurring.

O.C.G.A. 16-5-46 (j). In other words, to meet her burden, Plaintiff must establish

(1) an RRI Inc. agent benefitted from Plaintiff's sexual servitude, (2) the agent did

so in the course and scope of his employment and on behalf of RRI Inc., and (3) the

commission of Plaintiff's trafficking for sexual servitude was authorized, requested,

commanded, performed on behalf of RRI Inc. or constituted a pattern of illegal

activity that an agent of the company knew or should have known was occurring.

There is no evidence of any of these things.

First, there is no evidence that any RRI Inc. employee financially benefitted

from Plaintiff's sexual servitude while in the course and scope of their employment.

*See supra* Part III.C.2. Second, there is no evidence that the crimes were requested,

commanded, or performed on behalf of RRI Inc. Quite the opposite. RRI Inc. never

condoned prostitution or sex trafficking. Ex. E 148:12-149:8 . In fact, it had policies

and procedures in place that trained against prostitution. Ex. E 62:10-63:8, 146:2-

15, 148:12-24; Ex. K 72:8-19, 74:20-75:3, 93:6-19, 94:9-15. RRI Inc. never asked

or gave its employees permission to engage in criminal conduct on its behalf. And it

certainly did not intentionally cause an employee to commit a crime. O.C.G.A. 16-

2-20(b). There is no evidence RRI Inc. violated O.C.G.A. 16-5-46.

> ii.   **There is no evidence that RRI Inc. directly kept
> a place of prostitution.**

There is no evidence that RRI Inc. kept a place of prostitution under O.C.G.A. 16-6-10. To keep a place of prostitution, one must have actual knowledge of prostitution. *See Ahn v. State*, 631 S.E.2d 711, 712-13 (Ga.App. 2006). Prostitution occurs when a person 18 or older "performs or offers or consents to perform a sexual act, . . . for money or other items of value." O.C.G.A. 16-6-9. Knowledge of a "place's general reputation for housing prostitution" is not enough. *J.C.*, 624 F. Supp. 3d at 1321 (citing *Birdwell v. State*, 146 S.E.2d 374, 376 (Ga.App. 1965)).

There is no evidence that RRI Inc. knowingly kept a place of prostitution. Plaintiff will likely disagree arguing that general awareness that prostitution may have occurred at Norcross is enough. This fails. The reason is straightforward: knowledge of prostitution does not prove RRI Inc. was directly ***involved***. As stated, RRI Inc. must be so involved in the alleged racketeering activity that it would be considered a perpetrator of the activity. RRI Inc., however, was, at most, a passive instrument, its only tangential "involvement" being Plaintiff's occasional stay at its hotels. This is not criminal involvement.

And Plaintiff cannot make up this gap by relying yet again on her inadmissible testimony that two unnamed employees acted as a "lookout" for Lucky. Rather, for RRI Inc. to be liable, Plaintiff must prove it was involved with or intentionally caused these unknown employees to do the same. Thus, there is no evidence RRI Inc. was directly involved in keeping a place of prostitution.

In sum, there is no evidence that RRI Inc. engaged in racketeering activity, and thus Plaintiff's civil RICO claim fails as a matter of law. *C.C. v. H.K. Grp. of Co.*, No. 1:21-CV-1345-TCB, 2022 WL 467813 (N.D. Ga. Feb. 9, 2022) (dismissing the plaintiff's civil RICO claim because she failed to plead a plausibly predicate act).

### b.    Plaintiff was not the target of any predicate act.

Further, "[a]s a mandatory condition to asserting [a] RICO claim[ ], [a plaintiff] must show a direct nexus between at least one of the predicate acts [alleged] and the injury she purportedly sustained." *Nicholson v. Windham et al.*, 571 S.E.2d 466, 468 (Ga. Ct. App. 2002). "The question is whether the injury was directly caused by any RICO violation, not whether the injury was [the] reasonably foreseeable" result of the RICO violation. Thus, "a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured . . . she must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim." *Wylie v. Denton*, 746 S.E.2d 689, 694 (Ga. Ct. App. 2015). Plaintiff cannot meet this test.

There is no evidence that Plaintiff was the intended victim of any conduct on the part of RRI Inc., or that RRI Inc. had any intent to harm Plaintiff.

### 3.    Plaintiff's conspiracy to commit Civil RICO likewise fails.

Plaintiff's RICO conspiracy claims similarly fail as a matter of law. O.C.G.A. 16-14-4(c) provides that "[i]t shall be unlawful for any person to conspire or

endeavor to violate any of the provisions of subsection (a) or (b) of this Code section." Under Georgia law, a person may be found liable for RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Wylie*, 746 S.E.2d at 693 (citations omitted). "To violate Section 16-14-4(c), one must either commit an overt act to 'effect the object of' the endeavor or conspiracy or a conspirator must commit such an overt act." *Doe #1,* 21 F.4th at 728 (citing O.C.G.A. 16-14-4(c)).

There is no evidence of any agreement between RRI Inc. and Plaintiff's traffickers: Lucky, Skii, and Pizza. RRI Inc. is entitled to summary judgment.

## IV.   CONCLUSION

This Court should grant RRI Inc.'s motion for summary judgment.

Dated: September 18, 2023        Respectfully submitted,

*/s/ Marcella C. Ducca*
Marcella C. Ducca (Ga Bar No. 115079)
Brandon D. Cox (Ga Bar No. 832025)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  678.553.2100
duccam@gtlaw.com
coxb@gtlaw.com

Sandra J. Wunderlich (*pro hac vice*)
Chelsea Mikula (*pro hac vice*)
C. Ashley Saferight (*pro hac vice*)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113-7213
Telephone:  216.592-5000
Facsimile:   216.592-5009
sandra.wunderlich@tuckerellis.com
chelsea.mikula@tuckerellis.com
ashley.saferight@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW
RRI I, LLC, and RRI West Management, LLC*

## RULE 7.1D CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: September 18, 2023              */s/ Sandra J. Wunderlich*
                                       Sandra J. Wunderlich
                                       *One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made pursuant to Fed. R. Civ. P. 5(b)(2)(E) through this Court's electronic filing system. Parties may access the filing through the Court's system.

Dated: September 18, 2023          */s/ Sandra J. Wunderlich*
                                   Sandra J. Wunderlich
                                   *One of the Attorneys for Defendants Red*
                                   *Roof Inns, Inc., FMW RRI I, LLC, and*
                                   *RRI West Management, LLC*