IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| H.B., | ) | CIVIL ACTION FILE |
| | ) | |
| Plaintiff, | ) | NO. 1:22-CV-01181-JPB |
| | ) | |
| v. | ) | |
| | ) | |
| RED ROOF INNS, INC., et al., | ) | **DEFENDANT FMW RRI I'S** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| Defendants. | ) | **ITS MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |

Defendant FMW RRI I, LLC (FMW), files this memorandum in support of its motion for summary judgment.

## I.   INTRODUCTION

This Court should grant FMW's motion for summary judgment on Plaintiff's claims because there is no evidence that FMW violated the Trafficking Victims Protection Reauthorization Act (TVPRA) or Georgia's civil RICO statute. FMW's only involvement was that it owned—but leased— Norcross until 2013. It never had any employees. Rather, during this time, Norcross was leased to and operated by separate entities. Given this, summary judgment is warranted because there is no evidence that:

- FMW knowingly received a financial benefit from Plaintiff's alleged trafficking.

- FMW actively participated in a venture with Plaintiff's traffickers, Lucky, Pizza, Skii—in fact FMW had no employees and took no action toward any Norcross patron.

- FMW knew or should have known Plaintiff's traffickers, Lucky, Pizza, Skii allegedly violated Section 1591(a) as to Plaintiff.

- FMW engaged in racketeering activity that targeted Plaintiff or intentionally directed any person to do the same.

Moreover, Plaintiff's Civil RICO claim is time barred by the 5-year statute of limitations. O.C.G.A. 16-14-8. Thus, for these reasons, and the reasons explained below, this Court should grant FMW's motion for summary judgment.

## II.     STATEMENT OF FACTS

### A.     Lucky, Pizza, and Skii allegedly sex trafficked Plaintiff.

At age 16, Plaintiff was allegedly trafficked by three pimps named Lucky, Pizza, and Skii at Red Roof Inn Norcross (Norcross) for 10-15 days between December 26, 2011, and January 19, 2012. Deposition of Pl. H.B. 37:13-21, 39:12-16, 153:20-157:7, 227:2-228:11, 233:10-20, 262:22-263:12, 284:14-286:6 (Nov. 3, 2022), Exhibit A. It began when Plaintiff met Lucky on an over-18 dating website called Tagged. Ex. A 170:3-172:25; Tagged Consent Form, Exhibit B. After talking, Plaintiff met Lucky in person. Ex. A 181:5-15. Lucky picked Plaintiff up, took her to meet a local hip hop group, and then ran errands with her. Ex. A 182:17-183:20,

190:7-16, 193:3-198:22. After running errands, Plaintiff asked to go home, but Lucky refused. Ex. A 166:16-169:23. Instead, he kept her overnight and eventually checked in with her at Norcross. Ex. A 168:22-169:23, 217:4-218:11. She stayed at Norcross with Lucky for four days. Ex. A 229:2-25. On the third day, Plaintiff testified that Lucky forced her to have sex with him for money. Ex. A 169:2-23, 219:24-221:14; 229:2-29. Lucky did not pay her. *Id.*

The next day, Plaintiff left Norcross with Lucky. Ex. A  38:2-41:23, 263:10-264:24. During this time Lucky bought Plaintiff food and took her to get her hair done. Ex. A 252:6-254:10. They returned to Norcross a day or two later. Ex. A 233:21-234:6. Once back, Lucky told Plaintiff she owed him money, which she could earn by engaging in sex. Ex. A 252:3-254:21. Lucky then recruited Pizza and Skii to help him facilitate Plaintiff's alleged trafficking. Ex. A 254:22-256:3, 259:5-260:24.

At Norcross, Plaintiff never spoke to any employee. Ex. A 162:2-163:10, 240:25-241:6, 245:11-13. At most, she sometimes accompanied Lucky to the front desk. Ex. A 226:10-12, 241:14-25. Yet, Plaintiff alleges Lucky paid two Norcross employees, an unnamed front desk worker and an unnamed housekeeper, to keep a "lookout" for him. Ex. A 242:25-247:25. She believes Lucky paid them off because he told her that is why he paid them. Ex. A 242:25-245:13, 292:4-13.

On January 19, 2012, Plaintiff was arrested by the Gwinnett County police for prostitution. Ex. A 276:9-278:13; Police Rep., Exhibit C. Plaintiff was not charged. Instead, the police called her parents, who picked her up and took her home. Ex. A 281:1-284:21. There is no evidence that any FMW employee knew what happened to her. Ex. A 293:2-24.

**B.   FMW owned Norcross between December 2011 and January 2012.**

Norcross is a Red Roof Inn franchised location. Franchise Agreement, Exhibit D. As a franchisee, Norcross was authorized to use the Red Roof Inn brand, name, and logo under a Franchise Agreement. *See generally*, Ex. D at 1. RRI Inc. licenses its name, logo, and brand to independent third-party owners and operators of hotels through a separate entity, Red Roof Inn Franchising, LLC (RRF). *Id.*; Deposition of Glenn Galbraith, 22:12-24, Exhibit E. Along with independently owned franchisees, RRI Inc. also licenses its brand to franchisees that are affiliate managed. Ex. E 44:10-24. Between 2011 and 2012, Norcross was an affiliate-managed franchisee. Ex. E 22:12-26:24, 44:10-24.

**1.   FMW owned Norcross and leased it to FMW RRI Opco (Opco).**

Between December 2011 and January 2012, FMW owned Norcross. Ex. E 27:4-14. FMW leased the Norcross property to Opco. Ex. E 27:4-14, 28:3-15; Lease Agreement, Exhibit G. In 2013, Norcross was sold to an independent franchisee.

Declaration of Glenn Galbraith at ¶¶ 4-5 (citing Franchisee Agreements), Exhibit F. FMW's involvement with Norcross ended once it was sold.

### 2. Opco franchised Norcross through RRF.

Opco then entered into a Franchise Agreement with RRF. Ex. D. Under the Franchise Agreement, among other things, Norcross was operated in accordance with RRF's Franchisor Standards. Ex. D at 7, 5.6.2. The Agreement makes clear that Opco's employees and agents are "independent contractors" and that nothing in the Franchise Agreement "shall at any time be construed to create the relationship of employer and employee, partnership, principal and agent or joint venture between Franchisor (or its Affiliates) and Franchisee." Ex. D 15, 30, 5.10.1, 15.1.

### 3. Opco engaged RRI West to manage Norcross.

Opco then entered into a Management Agreement with RRI West to manage the Norcross property. Management Agreement, Exhibit H. Under the Management Agreement, RRI West determined operating policies, set standards of operations, handled customer relations, and decided hours, employee schedules, and wages. Ex. H at 31-32, § 4.1(b)-(c); Ex. E 24:18-26:1, 35:13-22. Despite this, the Management Agreement made it clear that RRI West was an independent contractor who did not have an agency relationship with FMW. Ex. H at 33, Section 4.6. This included an express agreement that RRI West will not hold itself out as an agent or give the impression that it can act on behalf of any entity beyond itself. *Id.*

From 2011 to late 2012, Norcross's General Manager (GM) was Kimberly Rachal, who oversaw Norcross's operations. Ex. E 55:12-16. Operations included: housekeeping, the front desk, maintenance, and policy implementation. Ex. E 57:22-58:5. RRI Inc., paid Norcross's hourly employees' wages. Ex. E 47:21-48:2.

### C.     Norcross had security in place and trained its employees to report criminal activity, including prostitution.

Red Roof requires all on-site managers to undergo security training, which includes identifying and reporting incidences of criminal activity to local law enforcement, including prostitution. Ex. E 62:10-63:8, 146:2-15, 148:12-24; Safety & Security Training, Exhibit J; V. Vittatoe Dep. 72:8-19, 74:20-75:3, 93:6-19, 94:9-15, Exhibit K. After being trained, GMs train each employee. Ex. J; Ex. E 144:18-145:23. And RRI West is responsible for ensuring the GMs follow through with company programs. Ex. E 65:13-19. Starting in 2013 and 2014, training on human trafficking was available. Ex. E 106:7-12, 126:13-127:10, 131:12-133:17. Prior to that sex trafficking was not a term generally known in the industry. Report of Greg Bristol, Exhibit L; Ex. K 97:4-98:7.

Norcross had security cameras on the property and contracted with an independent security company, G4S Secure Solutions to patrol the property from 10PM to 5AM Friday and Saturday. Security Agreement and Security Addendum, Exhibit M; Randall Stump Dep. 16:4-17, 39:17-25, Exhibit N. The security company

was supposed to report criminal activity, including prostitution, to the GM. Ex. N 19:2-20:8.

In addition, Jay Moyer, the Vice President of Operations for RRI West, oversaw Norcross during Plaintiff's alleged trafficking. Jay Moyer Dep. 22:3–23:1, Exhibit O. During his visits, Moyer talked to the GM, hotel staff, his supervisor, and the Safety and Security department. Ex. O 22:3–23:1; Jay Moyer Dep. 16:24-19:14, Exhibit P. He stayed at the property, walked the property, and talked to the clientele. Ex. P 17:22-25. He never witnessed or observed prostitution at Norcross, let alone sex trafficking. Ex. P 25:1-26:4, 40:14-41:1. Despite these efforts and training, there is some evidence that prostitution may have occurred at Norcross. Affidavit of Erin Richardson & Harkleroad, Exhibit R & S; Heather Gilmore Dep. 21:14-19, Exhibit Q. However, no Norcross employee, or security guard, suspected sex trafficking. Ex. Q 83:19-25; Ex. N 113:10-19.

## III.    ARGUMENT AND CITATIONS TO AUTHORITIES.

### A.    Summary Judgment Standard

Summary judgment is appropriate when the record evidence shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). Once met, the burden shifts to the

nonmovant who must designate specific facts showing a genuine issue for trial. *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).

### B.    There is no evidence that FMW directly violated the TVPRA.

The TVPRA provides victims of criminal trafficking with a civil cause of action against (1) the perpetrator, or (2) parties that knowingly benefitted from participation in a venture that they knew or should have known was engaged in criminal trafficking. It is undisputed that Pizza, Skii, and Lucky were Plaintiff's traffickers. They are the perpetrators. Thus, Plaintiff must show that FMW is liable as a "beneficiary" under the TVPRA.

In *Doe #1 v. Red Roof Inns, Inc.*, the Eleventh Circuit found that a defendant is liable as a "beneficiary" only if it: (1) knowingly benefited (2) from participating in a venture; (3) that venture violated the TVPRA; and (4) the beneficiary knew or should have known that the venture violated the TVPRA as to the plaintiff. 21 F.4th 714, 726 (11th Cir. 2021). This is a conjunctive test and Plaintiff must prove each element. Here, there is no evidence of any element against FMW.

### 1.    There is no evidence that FMW knowingly benefitted from Plaintiff's alleged trafficking.

There is no evidence that FMW knowingly benefited from participating in a sex trafficking venture. The TVPRA is clear. To be liable, a defendant must "***knowingly*** benefit[], . . . financially or by receiving anything of value ***from***

*participation* in a venture. . . ." 18 U.S.C. 1595(a) (emphasis added). The benefit must derive from a defendant's "participation." *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). Put simply, the "benefit" prong has a causation element, and must come from the venture. *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022).

FMW did not knowingly benefit from participating in a volitional venture. Although FMW received a portion of the Gross Revenues under the Lease Agreement there is no evidence that FMW had actual knowledge that any revenue came from Plaintiff's alleged trafficking. Ex. G at 11, 13, Art. 2, 3. In fact, there is no evidence that FMW knew about Plaintiff, her traffickers, or of any other incidences of sex trafficking. Let alone knew any benefit was derived from the same. This element fails.

## 2. There is no evidence that FMW participated in a venture with Plaintiff's traffickers: Lucky, Skii, and Pizza.

A TVPRA claim requires Plaintiff to prove FMW participated in a venture that engaged in a violation of Section 1591. 18 U.S.C. 1595(a). Plaintiff testified that Lucky, Pizza, and Skii allegedly trafficked her. Ex. A 284:14-286:6. Thus, Plaintiff must show that FMW participated in a venture with Pizza, Skii, and Lucky. She cannot meet this burden.

### a. There is no evidence of a venture between FMW and Lucky, Skii, and Pizza.

For Plaintiff's claim to succeed, she must show that a venture existed between FMW and Lucky, Pizza, and Skii. There is no evidence of this. A "venture" is "an undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724. The relationship is simple: RRF entered into a franchise agreement with Opco. Ex. D. Then, Opco leased Norcross from FMW. Ex. G. After that, Opco entered into a management agreement with RRI West. Ex. H. RRI West operated Norcross. Ex. H.

Lucky periodically rented a room at Norcross between December 2011 and January 2012. Ex. A 166:16-169:23, 217:4-218:11. FMW had no connection to Lucky, Pizza, or Skii, let alone any connection showing FMW entered an enterprise with them "involving risk and potential profit." *Doe #1*, 21 F.4th at 724. There is no evidence of a venture.

### b. FMW did not participate in a venture with Plaintiff's traffickers: Lucky, Skii, and Pizza.

Even if there were evidence of a venture between FMW and Plaintiff's traffickers (there is not), there is no evidence of participation. Participation requires "tak[ing] part in or shar[ing] with others in common or in an association" *Doe #1*, at 725, or "a desire to promote the wrongful venture's success[.]" *G.G. v. Salesforce.com, Inc.*, No. 22-2621, 2023 WL 4944015, at *11 (7th Cir. Aug. 3, 2023)

(citing *Doe v. GTE Corp.*, 347 F.3d 655, 659 (7th Cir. 2003)). Put another way, participation in a venture requires Plaintiff to "connect the dots" between FMW and the person that allegedly violated Section 1591. *See J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1317 (N.D. Ga. 2022) (collecting cases). Plaintiff cannot meet this burden.

FMW owned Norcross until 2013. Ex. E 27:4-14. Other than owning the property, it took no action toward any patron, let alone Plaintiff and her traffickers Pizza, Lucky, and Skii. Owning a property that is leased and managed by separate entities is not participation. In fact, the Eleventh Circuit makes clear that not even "observing" or renting rooms is participation. *See Doe #1*, 21 F.4th at 727 (finding that even renting a room to a customer, does "nothing to show that the [hotels] participated in . . . the alleged sex trafficking ventures.").[1] , *e.g.*, *L.H. v. Marriot Int'l, Inc.*, 604 F. Supp. 3d 1346, 1361 (S.D. Fla. 2022) ("failing to combat sex trafficking through ineffective policies, procedures, and training for the purpose of maximizing . . . profit . . . is not enough to trigger TVPRA liability. . . .") (collecting cases). Given this, FMW's ownership, on its own, does not come close to meeting the definition of participation.

---

[1] Courts across the Eleventh Circuit agree. *See, e.g.*, *C.C. v. H.K. Grp. of Co., Inc.*, No. 1:21-CV-1345-TCB, 2022 WL 467813, at *4 (N.D. Ga. Feb. 9, 2022); *A.D. v. Holistic Health Healing Inc.*, No. 2:22-CV-641-JES-NPM, 2023 WL 2242507, at *3 (M.D. Fla. Feb. 27, 2023) (same).

### 3.      There is no evidence that FMW knew or should have known it participated in a volitional venture under the TVPRA.

A TVPRA claim also requires Plaintiff to prove a causal link between her sex trafficking and the defendant. *See H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 707 (E.D. Mich. 2020); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153-54 (E.D.N.Y. 2020). In other words, FMW cannot be liable under Section 1595(a) unless ***FMW*** itself "knew or should have known" that Lucky, Skii, and Pizza trafficked Plaintiff. *Doe #1*, 21 F.4th at 726; *see also S.J.*, 473 F. Supp. 3d at 154 ("The real issue is not, then, actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture."). Plaintiff cannot meet this burden.

The reason is straightforward: there is no evidence FMW knew or should have known Lucky, Skii, and Pizza allegedly trafficked Plaintiff. In fact, Plaintiff was clear: she never spoke to any Norcross employee, nor did she try to communicate that Lucky, Pizza, and Skii were keeping her against her wishes. Ex. A  162:2-163:10, 240:25-241:6, 245:11-13. This coupled with the fact that FMW did not have any employees, makes clear that it did not have actual or constructive knowledge of Lucky, Pizza, and Skii, let alone that they were trafficking Plaintiff. These facts are dispositive.

**C.      There is no evidence that FMW indirectly violated the TVPRA.**

**1.      Vicarious liability is not a viable theory under the TVPRA.**

The TVPRA creates liability for the immediate "perpetrators" of human trafficking and those beneficiaries who directly and knowingly "participate" in it. 18 U.S.C. 1595(a). The statute, however, does not mention, or even hint, at extending liability to other, more tangentially involved parties. This targeted liability follows Section 1595's ostensible goal of providing a civil remedy for what is otherwise criminal involvement in human trafficking. As is often the case in the criminal context, liability under Section 1595 presumes some form of intentional, or at least reckless, action. Couple that intent standard with the "participation" element and you get a statute that applies only to the most direct actors in the trafficking venture. In sum, Section 1595 limits liability to "participants" in a human trafficking operation who held the requisite (and significant) level of intent to participate. Allowing indirect liability overwrites these statutory precautions.

Nor, as some courts have suggested, does the "federal common-law" doctrine of vicarious liability fill the void. *See, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 939 (D. Or. 2020). Federal common law cannot operate here because the language in Section 1595 is a "clear and explicit" choice to forgo common law indirect liability principles. *Id.* Specifically, its use of language requiring "knowing participation," which the Eleventh Circuit has interpreted to

mean that the actor must "take part in" or "share in," shows an intent to limit liability to parties who effected the trafficking operations. *Doe #1*, 21 F.4th at 725. Federal courts, including the Eleventh Circuit, have not hesitated to restrict, or even obviate, vicarious liability when the existence of liability under a federal statute hinges on a participant's own personal conduct. *See, e.g.*, *Wade v. McDade*, 67 F.4th 1363, 1374 (11th Cir. 2023) (holding that vicarious liability does not exist under 42 U.S.C. 1983). Thus, vicarious liability is unavailable under the TVPRA.

### 2.   FMW is not vicariously liable.

Even if vicarious liability were available, the claim still fails. To establish vicarious liability a plaintiff prove that "(1) defendants were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under [Section] 1595(a)." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021) (citing *A.B.*, 484 F. Supp. 3d at 939).

There is no evidence of either requirement. First, FMW's Lease Agreement makes it clear that it has no agency relationship with any other entity. *See* Ex. G at 40-41, § 19.1-19.2. Second, FMW did not have employees, let alone have an employee that violated Section 1595 of the TVPRA. Ex. E 33:14-34:2. Any vicarious liability claim fails.

**D.      Plaintiff's Georgia RICO claims fail as a matter of law.**

**1.      Plaintiff's civil RICO claim is barred by the statute of limitations.**

O.C.G.A. 16-14-8 provides a five-year statute of limitation to bring a claim for Civil RICO violations. Because Plaintiff was a minor in 2011, any statute of limitation was tolled until she reached 18 in 2013. O.C.G.A. 9-3-90 (b); Ex. A 42:2-4. Norcross was sold in 2013. Ex. F. Plaintiff's alleged trafficking took place between December 2011 and January 2012. Ex. A 227:2-228:11. Any claim under O.C.G.A. 16-14-4 had to be filed by 2018. Plaintiff filed on March 24, 2022. Pl. Compl., ECF No. 1. This claim is barred.

**2.      No evidence supports a Civil RICO claim.**

Under Civil RICO, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. 16-14-4(a). A "pattern" consists of at least two incidents of racketeering activity "in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics." O.C.G.A. 16-14-3(4)(A). "Racketeering activity" means "to commit, to attempt to commit, or to solicit, coerce, or intimidate another

person to commit any crime which is chargeable by indictment under [Georgia law]." O.C.G.A. 16-14-3(5)(A). O.C.G.A. 16-14-3(5)(A) defines the laws involving "racketeering activity." A person commits a crime either ***directly*** or by ***intentionally*** aiding, abetting, advising, encouraging, hiring, counseling, or procuring another to commit the crime. *See* O.C.G.A. 16-2-20(b) (emphasis added).

Plaintiff alleges FMW received financial benefits from the commission of two predicate acts: (1) trafficking an individual for sexual servitude under O.C.G.A. 16-5-46, and (2) keeping a place of prostitution under O.C.G.A. 16-6-10. Am. Compl. ¶¶ 70-108, ECF No. 51. There, however, is no evidence that FMW directly committed either act or intentionally encouraged another to commit the same.

### a. FMW did not directly engage in racketeering activity or intentionally cause another to do the same.

Georgia courts have held that where "there is evidence that [a corporation's] agents or employees committed predicate offenses . . . and there are material issues of fact with respect to whether [the corporation] was a party to or involved in the commission of these offenses[,] . . . the RICO enterprise may consist of a corporation and its agents or employees." *Reaugh v. Inner Harbour Hosp.*, 447 S.E.2d 617, 622 (Ga. Ct. App. 1994); *Duvall v. Cronic*, 820 S.E.2d 780, 790 (Ga. Ct. App. 2018).

Thus, only where a corporation is a party to or involved in the commission of the employee-perpetrator's predicate crimes can it be liable under civil RICO.

*Duvall,* 820 S.E.2d at 790-91. Indeed, there must be evidence that the defendant violated, or attempted to violate, the criminal statute[s]. *Cox v. Mayan Lagoon Estates Ltd.*, 734 S.E.2d 883, 891 (Ga. Ct. App. 2012). But where the corporation is merely "the victim, prize, or passive instrumentality of racketeering[,]" the corporation is not liable under Civil RICO. *Reaugh,* 447 S.E.2d at 621. There is no evidence that FMW was involved in or the direct beneficiary of any predicate act.

### i.     FMW was not involved in trafficking for sexual servitude under O.C.G.A. 16-5-46.

Under O.C.G.A. 16-5-46 "[a] person commits the offense of trafficking an individual for sexual servitude when that person knowingly . . . [b]enefits financially or by receiving anything of value from the sexual servitude of another." "Sexual Servitude" means any sexually explicit conduct or performance that is induced or obtained from a person who is under the age of 18 years. O.C.G.A. 16-5-46(a)(8)(B). Under Georgia law, however, a corporation can be prosecuted only if:

> [A]n agent of the corporation performs the conduct which is an element of the crime while acting within the scope of his or her office or employment and on behalf of the corporation and the commission of the crime was either authorized, requested, commanded, performed, or within the scope of his or her employment on behalf of the corporation or constituted a pattern of illegal activity that an agent of the company knew or should have known was occurring.

O.C.G.A. 16-5-46 (j).

There is no evidence of any element. The reason is simple: FMW did not have employees or agents and its Lease Agreement makes clear that it is not the principal or responsible for the conduct of any other entity. Ex. G at 33, § 4.1; Ex. E 33:14-34:2. FMW did not commit trafficking for sexual servitude under O.C.G.A. 16-5-46.

### ii.    There is no evidence that FMW kept a place of prostitution.

There is no evidence that FMW kept a place of prostitution under O.C.G.A. 16-6-10. To keep a place of prostitution, one must have actual knowledge of prostitution. *See Ahn v. State*, 631 S.E.2d 711, 712-13 (Ga.App. 2006). Prostitution occurs when a person 18 or older "performs or offers or consents to perform a sexual act, . . . for money or other items of value." O.C.G.A. 16-6-9. Knowledge of a "place's general reputation for housing prostitution" is not enough. *J.C.*, 624 F. Supp. 3d at 1321 (citing *Birdwell v. State*, 146 S.E.2d 374, 376 (Ga. Ct. App. 1965)).

There is no evidence that FMW knowingly kept a place of prostitution. Plaintiff will likely disagree arguing that general awareness that prostitution may have occurred at Norcross is enough. This fails. The reason is straightforward: knowledge of prostitution does not prove FMW was directly ***involved***. As stated, FMW must be so involved in the alleged racketeering activity that it would be considered a perpetrator of the activity. FMW took no action. At most, it owned

Norcross and then leased it to Opco. Ex. E 27:4-14. That is it. Other than this transaction, there is no evidence that FMW was anything more than a passive instrument for Plaintiff's allegations. This is not criminal involvement.

In sum, FMW did not engage in racketeering activity, and thus Plaintiff's civil RICO claim fails as a matter of law. *C.C. v. H.K. Grp. of Co.*, No. 1:21-CV-1345-TCB, 2022 WL 467813, at *4-5 (N.D. Ga. Feb. 9, 2022) (dismissing the plaintiff's civil RICO claim because she failed to plead a plausible predicate act).

### b.   Plaintiff was not the target of any predicate act.

Further, "[a]s a mandatory condition to asserting [a] RICO claim[ ], [a plaintiff] must show a direct nexus between at least one of the predicate acts [alleged] and the injury she purportedly sustained." *Nicholson v. Windham et al.*, 571 S.E.2d 466, 468 (Ga. Ct. App. 2002). "The question is whether the injury was directly caused by any RICO violation, not whether the injury was [the] reasonably foreseeable" result of the RICO violation. Thus, "a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that she was injured . . . she must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim." *Wylie v. Denton*, 746 S.E.2d 689, 694 (Ga. Ct. App. 2015). Plaintiff cannot meet this test.

There is no evidence that Plaintiff was the intended victim of any conduct on the part of FMW, or that FMW had any intent to harm Plaintiff.

### 3. Plaintiff's conspiracy to commit Civil RICO likewise fails.

Plaintiff's RICO conspiracy claims similarly fail as a matter of law. O.C.G.A. 16-14-4(c) provides that "[i]t shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section." Under Georgia law, a person may be found liable for RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts." *Wylie*, 746 S.E.2d at 693 (citations omitted). "To violate Section 16-14-4(c), one must either commit an overt act to 'effect the object of' the endeavor or conspiracy or a conspirator must commit such an overt act." *Doe #1,* 21 F.4th at 728 (citing O.C.G.A. 16-14-4(c)).

There is no evidence of any agreement between FMW and Plaintiff's traffickers: Lucky, Skii, and Pizza. FMW is entitled to summary judgment.

## IV. CONCLUSION

This Court should grant FMW's motion for summary judgment.

Dated: September 18, 2023     Respectfully submitted,

*/s/ Marcella C. Ducca*
Marcella C. Ducca (Ga Bar No. 115079)
Brandon D. Cox (Ga Bar No. 832025)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  678.553.2100
duccam@gtlaw.com
coxb@gtlaw.com

Sandra J. Wunderlich (*pro hac vice*)
Chelsea Mikula (*pro hac vice*)
C. Ashley Saferight (*pro hac vice*)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113-7213
Telephone:  216.592-5000
Facsimile:   216.592-5009
sandra.wunderlich@tuckerellis.com
chelsea.mikula@tuckerellis.com
ashley.saferight@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW*
*RRI I, LLC, and RRI West Management, LLC*

## <u>RULE 7.1D CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that this submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: September 18, 2023

*/s/ Marcella C. Ducca*
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 18, 2023, a copy of the foregoing was filed electronically. Service of this filing will be made pursuant to Fed. R. Civ. P. 5(b)(2)(E) through this Court's electronic filing system. Parties may access the filing through the Court's system.

Dated: September 18, 2023

/s/ Marcella C. Ducca
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*