UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.B., <br><br> Plaintiff, <br><br> v. <br><br> RED ROOF INNS, INC. et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:22-cv-1181-JPB |

**MOTION IN LIMINE TO DECIDE WHETHER DEFENDANTS'
LIABILITY UNDER THE TVPRA IS JOINT AND SEVERAL**

Congress enacted the TVPRA[1] "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and

---

[1] The original Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106-386, 114 Stat. 1464, did not create a civil cause of action. Congress created a civil cause of action for victims of sex trafficking (as well as victims of forced labor and human trafficking) in 2003. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)). Since then, sex-trafficking victims have had the right to sue their perpetrators in federal court to "recover damages and reasonable attorneys fees." *Id.* In 2008, Congress amended § 1595 to allow sex-trafficking victims to sue those who knowingly benefit from their sex trafficking. Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, § 4(a), § 1595, 117 Stat. 2875, 2878 (codified at 18 U.S.C. § 1595(a)).

But Congress made other changes in 2008 that drastically expanded the civil cause of action. For example, Congress enlarged the category of "perpetrators"—changing it from violators of only §§ 1589, 1590, or 1591 to violators of any provision in Chapter 77 of Title 18. *Id.* That's significant because Congress also added a provision criminalizing "conspiracy" to commit sex trafficking, *id.* § 222(c), 122 Stat. 5070 (codified at 18 U.S.C. § 1594(c)); added "maintains" to the list of acts ("recruits, entices, harbors, transports, provides, or obtains") that can constitute criminal

children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. 106-386, § 102(a), 114 Stat. 1464, 1466. Twenty-four years later, there is still much work to be done to eliminate the scourge of sex trafficking.

Red Roof[2] has long provided a place for the sellers and buyers of commercial sex to do so, including at the Norcross Red Roof where H.B. was sold for sex as a minor. Here, H.B. brought a TVPRA civil action both to recover from Red Roof for its role in her sex trafficking (seeking damages and attorney's fees) and to punish and deter Red Roof for benefiting whiling turn a blind eye (or worse) to her sex trafficking at the Norcross Red Roof (punitive damages).

The TVPRA civil-liability statute, 18 U.S.C. § 1595(a), empowers H.B. to pursue these dual goals of compensation and punishment. And the TVPRA civil-liability statute ensures that H.B. can, if she prevails, achieve these goals by making liability for TVPRA civil damages joint and several and permitting sex-trafficking victims to pursue and receive punitive damages. But because the TVPRA civil-

---

sex trafficking, *id.* § 222(5), 122 Stat. 5069 (codified at 18 U.S.C. § 1591(a)(1)); and added "reckless disregard" as a culpable state of mind for criminal sex trafficking, *id.* (codified at § 1591(a)). Congress also added a ten-year statute of limitations for civil claims. *Id.* § 221, 122 Stat. 5067 (codified at § 1595(c)).

In the years since 2008, Congress has made changes to the TVPRA civil-action statute. At every turn, those changes enlarged the rights of sex-trafficking victims. Congress has also made changes to the criminal TVPRA provisions since 2008; all have been to criminalize more misconduct.

[2] Red Roof Inns, Inc.; RRI West Management, LLC; and FMW RRI I, LLC.

liability statute says nothing about joint-and-several liability, H.B. files this motion in limine so that the Court can decide this issue now.

Congress intended for TVPRA civil liability to be joint and several. That point is clear when the whole act is considered. The Supreme Court's decisional law bolsters this conclusion. Whether Red Roof's TVPRA liability for H.B.'s damages for being sex trafficked is joint and several is answered by the general common law of torts. *E.g.*, *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). Under the general common law of torts, Red Roof is jointly and severally liable. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003). That was the conclusion of the *only* court to consider this issue. *See W.K. v. Red Roof Inns, Inc.*, 1:20-cv-5263, 2024 WL 2892322, at *1 (N.D. Ga. June 10, 2024) (Calvert, J.) ("Damages under the TVPRA are joint and several." (bold omitted)).

Red Roof disagrees. Red Roof contends that Georgia's apportionment statute, O.C.G.A. § 51-12-33, (somehow) applies to H.B.'s federal claim. *See* Doc. 161 at 9–10 (saying that the jury must decide "[w]hether and what percentage of fault should be apportioned to various non-parties identified in Defendants' Notice of Intent to Seek Apportionment of Fault Against Non-Parties" and citing Georgia's apportionment statute). Red Roof is wrong for the reasons Judge Calvert articulated.[3]

---

[3] Congress likewise intended for TVPRA civil liability to include punitive damages. Applying the general common law of torts, every circuit to consider this issue has reached this conclusion. *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011);

3

H.B. asks that this Court reach the same conclusion as Judge Calvert and hold that TVPRA liability is joint and several.

## ARGUMENT AND CITATION OF AUTHORITY

**I. Red Roof is jointly and severally liable under the TVPRA.**

Under the TVPRA, Red Roof is jointly and severally liable for H.B.'s damages. That conclusion follows directly from the TVPRA's statutory text and structure and reflects the general common law of torts.

**A. The TVPRA's statutory text and structure shows that Congress intended Red Roof's civil liability to be joint and several.**

In 2008, Congress drastically expanded § 1595 to allow sex-trafficking victims to sue those who knowingly benefited from their being sex trafficked. *See supra* n.1. "Participation in a venture," an essential part of a TVPRA beneficiary claim, means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021). So Congress knew that a beneficiary claim necessarily required others' involvement to trigger liability. *See K.M. v. Reva Props., LLC d/b/a Super 8*, No. 1:22-cv-3991-TWT, 2024 WL 1217420, at *2 (N.D. Ga. Mar. 21, 2024) (Thrash, J.). Yet Congress said nothing about apportionment in § 1595. Nor has any court ever allowed

---

*Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013). Indeed, Red Roof appears to concede that punitive damages are available under the TVPRA civil-liability statute. *See* Doc. 161 at 11 (saying that one issue to be tried is "[w]hether Plaintiff is entitled to an award of punitive damages").

apportionment for a TVPRA beneficiary claim. Given all that, Judge Thrash recently concluded that "[i]t would be surprising if civil beneficiary defendants have always been permitted to apportion their damages to nonparties but have never attempted to do so." *Id.*

To Judge Thrash, Congress's failure to mention apportionment in § 1595 when adding beneficiary claims—even though "it was foreseeable that others would be involved in these claims"—was especially telling since the TVPRA's restitution statute "plainly does allow for apportionment." *Id.*[4] Indeed, as Judge Thrash emphasized, "[i]t would also be surprising that Congress intended to permit apportionment without saying so"—especially "since allowing civil beneficiary defendants to apportion fault to traffickers, individuals who sexually assault victims, and other beneficiaries would drastically undermine the effect of the civil beneficiary provision." *Id.*

Judge Calvert agreed with Judge Thrash in the only order directly ruling on whether the TVPRA civil-liability statute makes liability joint and several. Rejecting Red Roof's argument in that case, Judge Calvert "note[d] that apportionment would

---

[4] The restitution statute requires judges to order restitution to be "issued and enforced in accordance with section 3664." 18 U.S.C. § 1593(b)(2). And 18 U.S.C. § 3664(h) permits courts to "make each defendant liable for payment of the full amount of restitution" or "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."

5

frustrate the purpose of the TVPRA's civil beneficiary provision." *W.K.*, 2024 WL 2892322, at *2.[5]

Congress allows apportionment for TVPRA restitution orders. But despite amending § 1595 four times since 2003, Congress has never added anything about apportionment. That omission is presumed to be intentional and purposeful. For "it is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co., 534* U.S. 438, 452

---

[5] Judge Land in the Middle District of Georgia reached a similar conclusion when addressing the applicability of the Georgia apportionment statute to federal civil-rights claims under 42 U.S.C. § 1983. Then–Chief Judge Land held that the Georgia statute did not apply. *Wright v. Watson*, No. 4:15-cv-34, 2017 WL 4126981, at *1 (M.D. Ga. Sept. 18, 2017) (Land, C.J.).

He gave two reasons. *First*, the Eleventh Circuit and the former Fifth Circuit have held that liability for § 1983 damages is joint and several. *Id.* at *2 (collecting cases). *Second*, the Georgia apportionment statute's mandate that the jury consider the fault of the persons or entities who contributed to the plaintiff's injuries and damages— "regardless of whether the person or entity was, or could have been, named as a party to the suit," *id.* at *3 (quoting O.C.G.A. § 51-12-33(c))—contravened two important policies underlying § 1983 action: (1) "compensation of persons injured by deprivation of federal rights," *id.* at *2 (quoting *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011)); and (2) "prevention of abuses of power by those acting under color of state law," *id.* at *2 (quoting *Estate of Gilliam*, 639 F.3d at 1046–47).

As Judges Thrash and Calvert have noted, that same anomalous result would happen if the Georgia apportionment statute were applied to TVPRA civil claims. *See K.M.*, 2024 WL 1217420, at *2; *W.K.*, 2024 WL 2892322, at *2.

6

(2002) (cleaned up) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). And the intent and purpose of that omission is for civil liability under the TVPRA to be joint and several.

      **B.**    **Red Roof's civil liability under the TVPRA is joint and several under the general common law of torts.**

Federal legislation does not occur in a vacuum. When Congress creates a new tort action, it does so against the general common law of torts. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that "ordinary tort-related vicarious liability rules" apply to discrimination claim under Fair Housing Act that was "in effect, a tort action"). When necessary, the general common law of torts will be "modifi[ed] or adapt[ed] . . . to carry out the purpose and policy of the statute." *Smith v. Wade*, 461 U.S. 30, 34 (1983). But for Congress "to abrogate a common-law principle, the statute must 'speak directly' to the question addressed by the common law." *United States v. Texas*, 507 U.S. 529, 534 (1993) (quoting *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978)).[6]

---

[6] *See also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles. Thus, where a common-law principle is well established, . . . the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." (cleaned up)).

For torts, the traditional damages rule is joint-and-several liability. *See Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 163 (2003) ("The conclusion that the FELA [Federal Employers' Liability Act] does not mandate apportionment is also in harmony with this Court's repeated statements that joint and several liability is the traditional rule."). "A creature of tort law, joint and several liability 'applies when there has been a judgment against multiple defendants.'" *Honeycutt v. United States*, 581 U.S. 443, 447 (2017) (quoting *McDermott, Inc. v. AmClyde,* 511 U.S. 202, 220–21(1994)).[7] "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount." *Id.* at 447–48 (citing Restatement (Second) of Torts § 875 (1977)[8]).

### C. Federal courts apply joint-and-several liability to federal causes of action.

Federal courts often apply the default rule of joint-and-several liability under the general common law of torts to federal causes of action.

---

[7] To be clear, joint-and-several liability also applies where judgment is entered against one defendant for damages arising from a single, indivisible injury caused by the defendant and one or more nonparties. *See The Atlas*, 93 U.S. 302, 306 (1876) ("An innocent party, injured by the co-operative negligence of several persons, can sue them jointly or severally, and recover from either compensation for the injury done by all.").

[8] "Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm." Restatement (Second) of Torts § 875 (1977).

### i.   Civil-rights actions under 42 U.S.C. § 1983.

The Supreme Court has long found that § 1983 comprises "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305–06 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 453 (1978)). When constitutional-rights violations occur, "the level of damages is ordinarily determined according to principles derived from the common law of torts." *Id.* Under that general common law, § 1983 liability is joint and several. *See Finch v. City of Vernon*, 877 F.2d 1497, 1503 (11th Cir. 1989) (holding that the "federal rule of damages"—joint-and-several liability—was the right rule in a § 1983 action for wrongful discharge); *Goudy v. Cummings*, 922 F.3d 834, 843 (7th Cir. 2019) ("Section 1983 liability must be understood against the background of the ordinary principles of tort law, where joint and several liability is the norm.").[9]

### ii.   Discrimination claims under the Fair Housing Act.

Courts have often held that "federal law" governs "the availability of joint and several liability" under the Fair Housing Act. *Whyte v. Alston Mgmt., Inc.*, No. 10-cv-81041, 2012 WL 11789773, at *1 (S.D. Fla. Apr. 11, 2012) (collecting cases).

---

[9] Where the defendant's liability is joint and several, a district court commits error by "distract[ing] the juror's attention by requiring it to allocate the degree of fault between the defendant and a non-party." *Ebanks v. Great Lakes Dredge & Dock Co.*, 688 F.2d 716, 722 (11th Cir. 1982).

### iii. Federal Trade Commission Act and Telemarketing and Consumer Fraud and Abuse Prevention Act.

In an action by the Federal Trade Commission related to a fraudulent telemarketing scheme, the Eleventh Circuit held that "joint and several liability was available." *Fed. Trade Comm'n v. WV Universal Mgmt., LLC*, 877 F.3d 1234, 1236 (11th Cir. 2017). The court found that joint-and-several liability can arise either from the defendant's participation in a "common enterprise" or by providing "substantial assistance" to another person violating the telemarketing regulations. *Id.* at 1239–40. In holding that "substantial assistance" justified joint-and-several liability, the court emphasized that wrong's "resemblance to a well-established torts concept": "aiding and abetting," which "can result in joint and several liability." *Id.* at 1240. "In tort, the aider-abettor is liable to the injured party 'for the entire harm.'" *Id.* at 1241 (quoting Restatement (Second) of Torts § 875 & cmt. a (1979)). "The Restatement's pedigree on this topic," the court emphasized, "is well established." *Id.* at 1240 n.2.

### D. Courts routinely apply the general common law of torts to establish the rule of decision under the TVPRA.

Four months ago, Judge Calvert held that "[d]amages under the TVPRA are joint and several." *W.K.*, *W.K.*, 2024 WL 2892322, at *1 (bold omitted). While this is the only case to squarely address the issue of joint-and-several liability under the TVPRA, courts across the country—including this Court—routinely address other questions on which the TVPRA is silent. Two reoccurring questions are (1) the

10

availability of punitive damages and (2) the availability of vicarious liability. These courts—as this Court did here in denying Red Roof's motion for summary judgment—answer these questions by applying the general common law of torts.

### i. Punitive damages.

Victims of TVPRA violations can recover "damages and reasonable attorneys fees" in a civil action. § 1595(a). Does "damages" include "punitive damages"? The answer—based on the general common law of torts—is yes.

The Ninth Circuit was first to consider this question. The court found that the meaning of "damages" is "ambiguous: it could refer to compensatory damages, punitive damages, nominal damages, or some combination of the three." *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011). On the question of available remedies, the Supreme Court has held that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Franklin v. Gwinnett Cnty. Public Schs.*, 503 U.S. 60, 70–71 (1992), *quoted in Ditullio*, 662 F.3d at 1096.

To resolve the ambiguity and interpret "damages" in § 1595(a), the Ninth Circuit used "common law principles."[10] *Id.* at 1098. The common law was the right place to look for guidance because "[t]he Supreme Court has looked to the common

---

[10] The Ninth Circuit interpreted the 2003 version of the TVPRA.

11

law to determine the remedies available under federal statutes creating causes of action sounding in tort." *Id.* at 1097. Relying on the Restatement (Second) of Torts § 908 (1979) to understand the "common law of torts," the court noted that punitive damages in tort actions are "awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future." *Id.* at 1096–97.[11] Based on the background "common law principles" of torts and the "general rule" of *Franklin* authorizing the court to award "any appropriate relief" for a federal claim, the Ninth Circuit held that "punitive damages are available under 18 U.S.C. § 1595." *Id.* at 1098.

Since *Ditullio*, the only other circuit to address the availability of punitive damages under § 1595(a) agreed with the Ninth Circuit—and did so without reservation. *See Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013) ("We thus agree with the only other circuit to address the matter and hold punitive damages to be available under § 1595."). Since *Ditullio* and *Francisco*, other circuits have

---

[11] For over forty years, the Supreme Court has looked to this same section of the Restatement (Second) of Torts to define when punitive damages are available. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive *or his reckless indifference to the rights of others*." *Smith v. Wade*, 461 U.S. 30, 46–47 (1983) (quoting Restatement (Second) of Torts § 908(2); and citing *id.* cmt. b). Section 908(2) further provides that [i]In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant."

affirmed punitive-damages judgments imposed in TVPRA civil actions without having to address the availability of such damages. *See Warfaa v. Ali*, 1 F.4th 289, 293, 296 (4th Cir. 2021) (affirming punitive damages of $100,000 without discussion about availability under § 1595); *Roe v. Howard*, 917 F.3d 229, 238, (4th Cir. 2019) (affirming punitive damages of $2 million without discussion about availability under § 1595); *accord Adhikari v. Kellogg Brown & Root, Inc.*, 845 F.3d 184, 206 (5th Cir. 2017) (distinguishing the TVPRA from Iraqi law because "the TVPRA authorizes punitive damages").

Federal district courts around the country likewise agree. *See, e.g.*, *Moore v. Rubin*, --- F. Supp. 3d ----, 2024 WL 1191135, at *8 (E.D.N.Y. Mar. 20, 2024) ("[Howard] Rubin's final argument is that the TVPA does not provide for punitive damages. Every Court of Appeals to address this issue (as well as a district court within this district) has held otherwise."); *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 26 (D.D.C. 2013) ("Where federal statutes sounding in tort are silent on the availability of punitive damage, courts look to common law principles to determine the scope of remedies. . . . Punitive damages are therefore available under the TVPA.").

Here, Red Roof concedes that § 1595 permits the jury to impose punitive damages despite the statute's silence on the availability of punitive damages. *See* Doc. 161 at 11 (saying that one issue to be tried is "[w]hether Plaintiff is entitled to an award of punitive damages").

13

### ii.     Vicarious liability.

The TVPRA says nothing about vicarious liability or agency law. To answer whether the TVPRA permits vicarious liability and under what terms, courts around the country have applied the federal common law of agency. *See, e.g.*, *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Indeed, '[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.'" (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064–65 (D. Colo. 2021))); *T.E. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3185, 2023 WL 5531441, * 7 (S.D. Ohio Aug. 28, 2023) ("The TVPRA . . . does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps.").[12] This Court reached that very conclusion in denying Red Roof's motion for summary judgment. *See* Doc. 158 at 22–23.

*     *     *

---

[12] *See also J.C. v. Choice Hotels Int'l*, No. 20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020) ("[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." (citing *Meyer v. Holley*, 537 U.S. 280, 287-91 (2003)); *see also Ramsbottom v. Ashton*, 3:21-cv-272, 2022 WL 106733, at *18 (M.D. Tenn. Jan. 11, 2022) ("Federal common law applies when a court assesses alter-ego liability under a federal statutory scheme.").

Federal courts use the general common law to fill the gaps in the TVPRA's civil-remedy statute for questions about the availability of punitive damages or vicarious liability. The answers to those questions provide substantive rules of decision that affect defendants' TVPRA civil liability. Given that, it would be "surprising" (to use Judge Thrash's word) if the same legal source—the general common law—did not provide the rule of decision about whether liability is joint and several.

Yet Red Roof says that the Court should ignore joint-and-several liability and allow apportionment to nonparties under Georgia law even though no Georgia claims exist in this case. Red Roof is wrong. The Court should say so.

## CONCLUSION

H.B. asks the Court to apply the general common law of torts and hold that Red Roof's civil liability under the TVPRA is joint and several.

Respectfully submitted on October 21, 2024.

          ANDERSEN, TATE & CARR, P.C.

          */s/ Rory A. Weeks*
          Patrick J. McDonough
          Georgia Bar No. 489855
          pmcdonough@atclawfirm.com
          Jonathan S. Tonge
          Georgia Bar No. 303999
          jtonge@atclawfirm.com
          Rory A. Weeks
          Georgia Bar No. 113491
          rweeks@atclawfirm.com
          Jennifer M. Webster

                                              Georgia Bar No. 760381
                                              jwebster@atclawfirm.com
                                              *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on October 21, 2024.

                                  ANDERSEN, TATE & CARR, P.C.

                                  */s/ Rory A. Weeks*
                                  Patrick J. McDonough
                                  Georgia Bar No. 489855
                                  pmcdonough@atclawfirm.com
                                  Jonathan S. Tonge
                                  Georgia Bar No. 303999
                                  jtonge@atclawfirm.com
                                  Rory A. Weeks
                                  Georgia Bar No. 113491
                                  rweeks@atclawfirm.com
                                  Jennifer M. Webster
                                  Georgia Bar No. 760381
                                  jwebster@atclawfirm.com
                                  *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Respectfully submitted on October 21, 2024.

                         ANDERSEN, TATE & CARR, P.C.

                         */s/ Rory A. Weeks*
                         Patrick J. McDonough
                         Georgia Bar No. 489855
                         pmcdonough@atclawfirm.com
                         Jonathan S. Tonge
                         Georgia Bar No. 303999
                         jtonge@atclawfirm.com
                         Rory A. Weeks
                         Georgia Bar No. 113491
                         rweeks@atclawfirm.com
                         Jennifer M. Webster
                         Georgia Bar No. 760381
                         jwebster@atclawfirm.com
                         *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile