UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.B., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-01181-JPB |
| | ) |
| | ) |
| Red Roof Inns, Inc., et al., | ) |
| | ) |
|     Defendants. | ) |

**DEFENDANTS RED ROOF INNS, INC., RRI WEST MANAGEMENT, LLC, AND FMW RRI I, LLC'S OPPOSITION TO PLAINTIFF'S CONSOLIDATED MOTIONS IN LIMINE**

**I.   Portions of Defendants' experts' opinions should be excluded as irrelevant, misleading, and prejudicial.**

Plaintiff has waived the expert challenges raised in her Consolidated Motions in Limine. This Court has adopted the Northern District of Georgia rules about the timing of *Daubert* motions, specifically noting: "In accordance with Local Rule 26.2C, NDGa, *Daubert* motions must be filed no later than the date the proposed Pretrial Order is submitted." Civil Standing Order at 35. Local Rule 26.2 states, in no uncertain terms, "Any party objecting to an expert's testimony based upon *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) shall file a motion no later than the date that the proposed pretrial order is submitted. ***Otherwise, such objections will be waived***, unless expressly authorized by Court

1

order based upon a showing that the failure to comply was justified." L.R. 26.2C (emphasis added).

Moreover, the parties have already fully briefed their *Daubert* motions. In fact, Plaintiff raised some of the same arguments in her Consolidated Motions in Limine as she did in her filed *Daubert* motions. *Compare* ECF No. 90 at 7 (challenging Dr. Mehlman-Orozco's testimony concerning "ambulance-chasing shysters"), *with* ECF No. 178 at 7-8 (same). Allowing Plaintiff to advance additional expert challenges now would ostensibly offer Plaintiff two bites at the apple, do little more than waste the parties' and the Court's resources by addressing duplicative briefing, and unduly prejudice Defendants on the eve of trial.

Accordingly, Plaintiff's expert challenges in her Consolidated Motions in Limine are late-filed, procedurally improper, and have been waived. They should be denied for this reason alone.

### A. Plaintiff's Challenges to Greg Bristol's Testimony

Plaintiff challenges four discrete opinions offered by Defendants' expert, Greg Bristol, a retired FBI agent, who in addition to working on dozens of human trafficking cases over the course of his career, also trained law enforcement in Georgia on human trafficking in and around the time of Plaintiff's alleged trafficking. Even if Plaintiff had not waived her challenges to Mr. Bristol's testimony (she did), they still fail.

2

First, Plaintiff argues that Mr. Bristol should be precluded from rebutting the opinions of Plaintiff's expert, Fred Del Marva, because Plaintiff no longer intends to call him at trial. Pl.'s Mot. at 3. If Plaintiff does not call or introduce Mr. Del Marva's testimony in her case in chief, Defendants agree not to elicit testimony from Mr. Bristol specifically related to Mr. Del Marva's opinions. Yet should Plaintiff rely on or otherwise introduce any testimony or portion of Mr. Del Marva's report at trial, Defendants reserve the right to rebut that testimony.

Second, Plaintiff challenges Mr. Bristol's opinions related to human trafficking training for law enforcement received during the time of Plaintiff's alleged trafficking. *Id.* at 3-4. The state of (and frankly lack of) training available or provided to law enforcement about a crime that was not well understood at the time of the alleged trafficking puts into context the human trafficking training that was (or was not) available for hotel staff during that time. Mr. Bristol's report also makes clear that this testimony provides necessary background as to the state of knowledge with respect to human trafficking in Atlanta. ECF No. 182-1, Bristol Report at 18 (discussing trainings available in Atlanta after a former Metro Atlanta police officer specifically contacted him to provide trainings to their police departments). Moreover, in an earlier trial involving the same Plaintiff's counsel, counsel elicited testimony from a fact witness (Joe Fonseca) regarding the training law enforcement purportedly offered to hotel staff. Ex. A, 6/24/24 *W.K.* Trial Tr. Excerpt at 24:21-23.

Plaintiff has included Mr. Fonseca on her witness list for this case as well. It defies logic for Plaintiff to challenge Mr. Bristol's opinions on this topic when her counsel has placed it at issue in other trials involving similar allegations.

Third, Plaintiff takes issue with Mr. Bristol's opinion on whose responsibility it is to identify and combat human trafficking. Pl.'s Mot. at 4. As with Mr. Bristol's testimony on human trafficking training, this testimony also puts into context the state of knowledge regarding human trafficking at the time of Plaintiff's alleged trafficking. It confirms what law-abiding hotel staff (who were not participating in a human trafficking venture, but attempting to combat it) were advised to do by law enforcement—*i.e.*, call the police to report the crime. ECF No. 182-1, Bristol Report at 23 ("[L]aw enforcement often asks businesses and citizens to 'report human trafficking,' and not directly confront it."). Given that the allegations in this case turn on whether Defendants participated in a human trafficking venture, this testimony is relevant to the claims at issue.

Equally flawed is Plaintiff's final argument regarding the relevance of Mr. Bristol's testimony referencing cases involving Gwinnett County law enforcement committing sexual offenses. Pl.'s Mot. at 5. Mr. Bristol's report makes clear that law enforcement relied on hotel staff to report suspicions of human trafficking so that they could then investigate those crimes. ECF No. 182-1, Bristol Report at 23-25. Insight into why trafficking may have continued even after hotel staff reported it to

law enforcement would aid the jury in determining whether the hotel was participating in a sex trafficking venture or not. And this is precisely the testimony Mr. Bristol offers in his report. *Id.* at 24 (explaining that, based on his decades of experience in law enforcement (including working on a public corruption squad), law enforcement "engaged in sexual misconduct do not fully enforce crimes like pandering, rape, sexual abuse, or sexual exploitation").

Tellingly, Plaintiff cites no case law other than *Daubert* to challenge any of these opinions offered by Mr. Bristol, save for one case at the end of this portion of her brief: *Allison v. McGhan Medical Corp.*, 184 F.3d 1300 (11th Cir. 1999). Pl.'s Mot. at 5. That case primarily focuses on exclusion of expert testimony on reliability grounds (not relevance). The only specific mention of exclusion related to a relevance issue was with respect to a medical doctor's reliance on a study dealing with a completely different disease than the one plaintiff experienced in that case. *Allison*, 184 F.3d at 1315 (finding "the study irrelevant because it specifically scrutinized muscular rheumatism, not systemic disease"). The only way *Allison* supports Plaintiff's arguments against Mr. Bristol's testimony would be if he were opining on something other than human trafficking. He is not. Thus, Plaintiff cites no support to warrant the exclusion of these opinions. This portion of Plaintiff's Motion should be denied for this additional reason.

B. **Plaintiff's Challenge to Dr. Kimberly Mehlman-Orozco's "Legal Assertions"**

As to the opinions of Dr. Kimberly Mehlman-Orozco (who has been recognized as one of the nation's leading experts on sex trafficking by state and federal courts),[1] Plaintiff first challenges Dr. Mehlman-Orozco's testimony regarding "legal assertions" concerning the TVPRA. Pl.'s Mot. at 5-6. Defendants agree that it is not the role of an expert to determine the meaning of the law or to explain legal standards. Dr. Mehlman-Orozco, however, did not do that in her report and will not do that at trial. Dr. Mehlman-Orozco did not offer any legal assertion related to the TVPRA or her "interpretation of the TVPRA," but rather referenced the TVPRA in discussion of her research, experience, education, and training, as well as historical knowledge based on the TVPRA. For example, in her motion, Plaintiff erroneously states, "Without any explanation, she says that the TVPRA was 'intentionally left vague in order to achieve legislative consensus, but this has resulted in the indiscriminate conflation of legal concepts and misidentification of victims.'" Pl.'s Mot. at 5. This is patently false. Dr. Mehlman-Orozco bases this

---

[1] *See, e.g.*, *People v. Abdur-Razzaq*, N.Y.S.3d 842, 846 (N.Y. Sup. Ct. 2018) ("Dr. Mehlman-Orozco is a researcher who has studied and written extensively on human trafficking. . . . All three of the People's experts testified credibly."); *United States v. Woods*, 2020 WL 6508909, at *2, 5 (D.N.M. Nov. 5, 2020) ("Dr. Mehlman-Orozco considers herself a leading expert in cases on sex trafficking and the Court agrees with that self-description. . . . [T]he Court finds that Dr. Mehlman-Orozco meets all the pertinent Daubert qualifications as an expert.").

statement on a peer-reviewed journal article, as well as congressional documents that preceded the TVPA, and explains that the relevance and context is how it contributes to misidentification of victims, which is relevant. *See* ECF No. 182-2 at 31 & nn. 90-91. This is completely different from the limitation referenced by Plaintiff's counsel in the case of *United States v. Lacey*, which was related to the effect of the closure of an online platform on law enforcement's ability to catalyze investigations. Ultimately, Plaintiff cites no case law to support exclusion here, but asks for the exclusion on relevance grounds. The relevance is that the language of the TVPRA has contributed to a conflation of legal concepts and misidentification, which is at the nucleus of this case. For these reasons, this portion of Plaintiff's Motion should also be denied.

    **C.**    **Plaintiff's Challenge to Dr. Kimberly Mehlman-Orozco's Opinions on Misidentification of Trafficking at Airports**

Next, Plaintiff argues that Dr. Mehlman-Orozco's opinions about the misidentification of trafficking at airports are not relevant. Pl.'s Mot. at 6-7. Not true. They are relevant. To be sure, the Department of Homeland Security "red flags" that led to the misidentification at airports were developed at the same time, using indistinguishable methods, and without research in an identical manner as the purported "red flags" for hoteliers, which Plaintiff not only relies upon in her Complaint, but so do her experts.

7

Equally flawed is Plaintiff's contention that the time and circumstances of sex trafficking at an airport is different than hotels. This is not grounds for exclusion. It is an area for cross-examination. This is all the more true because both the aviation and hospitality industries are part of the larger travel industry.

In *W.K.*, Judge Calvert permitted Dr. Mehlman-Orozco to offer these opinions at trial. *See* Ex. B, *W.K.* Pretrial Conference Tr. Excerpt at 146:3-9 ("[Dr. Mehlman-Orozco] can talk about the misidentification as it goes to the hotels. I think there's some reference to trafficking at airports, and if you want to get into that just for the purpose of saying the red flags are the same, that's fine, but I just don't wat to hear a whole bunch about airport trafficking because I don't think that's an issue here."). This Court should do the same. Dr. Mehlman-Orozco uses her expertise and background to opine on these red flags, noting that they often lead to high rates of misidentification, regardless of location, due to improper indicia flouted by various anti-trafficking organizations. This opinion helps the jury evaluate the clandestine nature of the crime, which is not limited to hotels. To exclude such information would suggest that trafficking only occurs at hotels or that the indicia provided by anti-trafficking organizations is faultless. That is not the case. And the jury should be permitted to consider all the evidence.

For these reasons, this portion of Plaintiffs' Motion should also be denied.

### D. Plaintiff's Challenge Regarding Dr. Mehlman-Orozco's Report Including a Quote Referring to Plaintiff's Attorneys as "Ambulance-Chasing Shysters"

A plain reading of Dr. Mehlman-Orozco's report makes clear that she does not call Plaintiff's attorneys "ambulance-chasing shysters." Rather, Dr. Mehlman-Orozco quoted a prominent prostitution rights activist's publication. Plaintiff already filed a brief to exclude reference to the quote in Dr. Mehlman-Orozco's report. ECF No. 90. Defendants have already agreed to withdraw that portion of Dr. Mehlman-Orozco's report. ECF No. 100. Therefore, this portion of Plaintiff's Motion should be denied as moot.

## II. Portions of Dr. Mehlman-Orozco's opinions are inadmissible on grounds other than relevance.

As with Plaintiff's other expert challenges, these challenges are also waived under Local Rule 26.2C. *See supra* Part I.

### A. Plaintiff's Challenge to Dr. Mehlman-Orozco's "Credibility Determinations"

While Plaintiff dedicates two pages of her brief to challenging what she calls "witness credibility determinations," Plaintiff only points to two specific sentences from Dr. Mehlman-Orozco's report with which she takes issue: "Ultimately, the allegation that Skii Morris was a 'sex trafficker' does not appear to be based on any reliable information" and "while Plaintiff's interrogatories suggests that [there] was only one alleged employee who was paid to act as a lookout, during her deposition H.B. claims that an unknown number of 'towel ladies' were being paid as 'lookouts'

9

as well." Pl.'s Mot. at 9-10. But these sentences are not examples of witness credibility determinations. Rather, Dr. Mehlman-Orozco is analyzing the facts of the case. In fact, the language Plaintiff quotes shows that Dr. Mehlman-Orozco is basing her opinions on the facts in the record, analyzing when the facts conflict (from interrogatory responses to deposition testimony), and weighing their significance in formulating her opinions.

Thus, Plaintiff is challenging the conclusions Dr. Mehlman-Orozco reached based on her review of conflicting facts in the record (not "witness credibility determinations"). This is a basis for cross-examination, not exclusion. As one Northern District of Georgia Court has made clear:

> When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The critical inquiry at this stage of the analysis is whether [the expert's] testimony and opinions have a reasonable factual basis. In other words, the facts relied upon by an expert must find some support ... in the record and must be supported by more than subjective belief and unsupported speculation, but mere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility.

*In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1361 (N.D. Ga. 2017) (cleaned up), *aff'd sub nom. Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018).

In this portion of Plaintiff's brief, Plaintiff also includes a string cite from Dr. Mehlman-Orozco's report that she challenges. Pl.'s Mot. at 9 ("[Dr.] Mehlman-

Orozco analyzes the credibility of multiple individuals, including H.B., H.B.'s parents, Officer Jon Doherty, and Officer Erin Richardson." (citing Mehlman-Orozco Report at 41-50)). Even so, Plaintiff identifies with no specificity whatsoever what actual language or opinions from Dr. Mehlman-Orozco's report she seeks to exclude. It is not Defendants' (nor this Court's) duty to formulate Plaintiff's arguments for her, and as such, Defendants are under no obligation to oppose an argument that was not sufficiently (let alone timely) raised. *Moore v. Wal-Mart Stores East, L.P.*, No. 7:07-CV-193 (HL), 2009 WL 3109823, at *12 (M.D. Ga. Sept. 23, 2009) ("The Court notes that it believes that Moore could have raised arguments and highlighted evidence in the record showing Wal-Mart's explanation is pretextual. It is not, however, the responsibility of the Court to make her arguments. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the parties are responsible for formulating arguments.") (citing *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)).

Had Plaintiff intended to challenge these—or any other of Dr. Mehlman-Orozco's opinions—Plaintiff should have deposed her. Plaintiff did not. At deposition, Dr. Mehlman-Orozco would have explained that these are not credibility determinations, but rather her analysis and conclusions based on weighing the conflicting facts in the record.

For these reasons, this portion of Plaintiff's Motion should also be denied.

### B. Plaintiff's Challenge to Dr. Mehlman-Orozco "Serving as a Conduit for the Defense's Arguments"

Plaintiff also argues that Dr. Mehlman-Orozco should be precluded from testifying about whether available indicia (or red flags) of human trafficking could establish that a hotel "knew or should have known" Plaintiff was being trafficked because that testimony is not "beyond the understanding of an average person" and defense counsel can make that argument themselves. Pl.'s Mot. at 10-11. Not true. This case is about Defendants' alleged participation in a venture to traffic Plaintiff, as well as whether Defendants knew or should have known that venture was trafficking Plaintiff. Plaintiff has, and will continue to argue, that Defendants had the requisite constructive knowledge based, in part, on these "red flags" and knowledge of these red flags in the industry. Defendants must be able to refute these allegations. This includes using expert testimony to discuss the state of the knowledge relating to these red flags at the time of the alleged trafficking including knowledge of the crime of trafficking. This speaks directly to whether the Defendants "should have known" of Plaintiff's trafficking. Plaintiff's sex trafficking is not something within the common understanding of an average person. Dr. Mehlman-Orozco is one of the nation's top sex trafficking experts and has been recognized as such in state and federal courts. *See supra* n. 1. Her opinions are based on decades of education and research in the field of sex trafficking, much of which

has been devoted to identifying and understanding the evolution of the indicia of sex trafficking overtime. She is an expert. Her opinion is founded on her specialized knowledge. Dr. Mehlman-Orozco must be able to offer these opinions. Plaintiff's Motion should be denied.

### III. Evidence of post-trafficking police reports are admissible

At the outset, RRI Defendants confirm that they do not intend to introduce evidence related to Plaintiff's post-trafficking traffic convictions relating to driving while license suspended and improper U-Turn. RRI Defendants, however, disagree that Plaintiff's post-trafficking police reports related to incidents of aggravated battery and armed robbery are irrelevant or inadmissible.

The reason is simple: this evidence is not being used to show Plaintiff's poor character. At no point have RRI Defendants accused Plaintiff of "crying wolf" or insinuated that it would take such a position at trial. Rather, the police reports at issue involve Plaintiff's ex-boyfriend (LeAngelo). *See* Pl. Mot. at Exs. 5–6, Doc. 178-5–178:6. Plaintiff identified this relationship as being abusive and being a basis for her trauma and mental health issues—alongside her alleged trafficking at RRI Norcross. *See, e.g.*, Norman Am. Rep. at 11–12, Doc. 190-4 (citing Plaintiff H.B. 010341); Judge Rep. at 11, (citing the same records). As such, both experts for Plaintiff and Defendants reviewed this evidence when considering Plaintiff's trauma history and her potential diagnosis of PTSD. Norman Am. Rep. at 11–12, 30.

13

Moreover, Plaintiff testified about these incidents at her deposition, going so far as to identify LeAngelo as attempting to traffic her at a separate time. H.B. Dep. at 123–129, Doc. 95-4. The jury must be able to consider this evidence when determining Plaintiff's damages and causation.

And nothing in the Eleventh Circuit's decision in *United States v. Smith*, changes this outcome. Pl. Mot. at 12–13, Doc. 178 (citing *United States v. Smith*, 697 F. App'x 944, 950 (11th Cir. 2017)). Rather, in *Smith*, the Defendant sought to impeach a government witness using police reports that the witness filed. *Id.* at 950. Defendants admitted that the purpose of this evidence was to impeach the witness's character. Attempting to show the witness had a tendency to "cry wolf" or "play" victim. *Id.* at 950–951. The trial court excluded the police reports under Rule 404(a) and (b). *Id.* at 950. The Eleventh Circuit affirmed. In doing so, the Eleventh Circuit explained that the reports were not false, so they did little more than show the witness was a victim of a crime. Their purpose was to show poor character which was inadmissible. Thus, the trial court did not abuse its discretion in excluding them. *Id.* at 951.

This case is nothing like *Smith*. As stated, this evidence is not being used to show Plaintiff "play[ed]" a victim or "cr[ied] wolf." Rather, it shows Plaintiff was involved in an abusive relationship that she herself indicated was a cause of her

14

trauma and impacted her mental health. This evidence is directly related to disproving causation and damages. It is admissible. Rule 404 does not bar it.

Dated: October 28, 2024				Respectfully submitted,

/s/ *Marcella C. Ducca*
Marcella C. Ducca (Ga Bar No. 115079)
Brandon D. Cox (Ga Bar No. 832025)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  678.553.2100
duccam@gtlaw.com
coxb@gtlaw.com

Sandra J. Wunderlich (pro hac vice)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO 63102-1822
Telephone:  314.256.2550
Facsimile:   314.256.2549
sandra.wunderlich@tuckerellis.com

Chelsea Mikula (pro hac vice)
Joseph A. Manno (pro hac vice)
Elisabeth C. Arko (pro hac vice)
Emily R. Grace (pro hac vice)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009
chelsea.mikula@tuckerellis.com
joseph.manno@tuckerellis.com
elisabeth.arko@tuckerellis.com
emily.grace@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*

## **RULE 7.1D CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that the submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: October 28, 2024

                                           <u>*/s/ Marcella C. Ducca*</u>
                                           Marcella C. Ducca

                                           *Attorneys for Defendants Red Roof Inns,*
                                           *Inc., FMW RRI I, LLC, and RRI West*
                                           *Management, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2024, a copy of the forgoing was filed electronically. Service of this filing will be made pursuant to Civ. R. 5(b)(2)(e) through this Court's electronic filing system. Parties may access the filing through the Court's system.

Dated: October 28, 2024

/s/ Marcella C. Ducca
Marcella C. Ducca

*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*