**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| H.B., | ) CIVIL ACTION FILE |
|        Plaintiff, | ) |
| | ) NO. 1:22-cv-01181-JPB |
| v. | ) |
| | ) |
| RED ROOF INNS, INC., *et al.*, | ) |
| | ) |
|        Defendants. | ) |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO APPLY JOINT AND SEVERAL LIABILITY UNDER THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC (RRI Defendants) file this opposition to Plaintiff's motion to apply joint and several liability under Section 1595(a) of the Trafficking Victims Protection Reauthorization Act (TVPRA).

## I.    INTRODUCTION

Plaintiff is incorrect, joint and several liability does not apply under the TVPRA—state law does. But even if it did not, the applicable federal common-law rule calls for apportionment, not joint and several liability.[1] The TVPRA, and specifically Section 1595, is silent on the issue of joint and several liability. Given

---

[1] RRI Defendants note further that if this Court finds liability is joint and several, they will seek a settlement off-set, to the extent it is applicable. *U.S. v. Honeywell Int'l Inc.*, 47 F.4th 805, 813 (D.C. Cir. 2022) ("the principle, long reflected in the common law, that settlement with, or successful litigation against, one party reduces the damages owed by other parties who are jointly liable.").

this silence, state law, including O.C.G.A. 51-12-33— applies to fill in this gap under the Supreme Court's holding in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979) and under 42 U.S.C. 1988. Even if this Court did not apply state law, any federal common-law rule dictates that damages should be apportioned and are not subject to joint and several liability. Put simply, under either state or federal law, damages should be apportioned, and liability is not joint under the TVPRA.

And although Judge Calvert found otherwise, finding liability was joint and several, RRI Defendants respectfully disagree and contend Judge Calvert's decision in *W.K. v. Red Roof Inns, Inc.*, No. 1:20-CV-05263-VMC, 2024 WL 2892322 (N.D. Ga. June 10, 2024) does not bind this Court. To be sure, no other federal court has directly addressed whether liability is joint and several under the TVPRA.[2] Thus, for the reasons stated below, RRI Defendants ask this Court to find Georgia state law, or federal common law requiring apportionment applies under the TVPRA, not joint and several liability.

---

[2] Judge Thrash indirectly addressed the issue when considering a motion to strike notices of apportionment under O.C.G.A. 51-12-33. *K.M. v. Reva Properties, LLC*, No. 1:22-CV-3991-TWT, 2024 WL 1217420, at *1 (N.D. Ga. Mar. 21, 2024). That case is addressed below.

## II.     LAW & ARGUMENT

### A.     Section 1595(a) of the TVPRA is silent on joint and several liability and principles of statutory construction do not resolve the issue.

Section 1595(a) of the TVPRA created a cause of action for victims of sex trafficking against (1) the perpetrator and (2) defendants that participated in, and knowingly benefited from, a venture that they knew or should have known violated Section 1591. 18 U.S.C. 1595(a). But Section 1595(a) does not mention joint and several liability. At most it states that a claimant may recover "damages and reasonable attorney fees." 18 U.S.C. 1595(a). And not only is the text silent, but the legislative history is silent on this issue, shedding no light on the applicability of joint and several liability.

Despite this silence, Plaintiff argues that Congress intended for liability to be joint and several. Plaintiff supports this conclusion by relying on Section 1593's restitution provision principles coupled with "general principles of statutory interpretation." Pl. Mot., at 5–7, Doc. 185 (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)). Plaintiff argues that because the restitution provision references apportionment, that Congress knows how to apportion, and by not including apportionment in Section 1595, its clear intent was for liability to be joint and several. *Id.* This contention lacks merit.

First, Section 1593 does not reference apportionment in its text. Rather, Section 1593 says  restitution "shall" be ordered for any offense under the TVPRA, and restitution must be enforced "in accordance with section 3664[.]":

> **(a)** Notwithstanding section  3663 or 3663A, and in addition to any other civil or criminal penalties authorized by law, the court shall order restitution for any offense under this chapter.

> **(b)(1)** The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection.

> **(2)** An order of restitution under this section ***shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A***.

18 U.S.C. 1593(a)-(b).

Section 3664 is a "miscellaneous sentencing provision[.]" It is not specific to the TVPRA, let alone Section 1593. And under Section 3664 (not Section 1593), the court can ***either*** hold each defendant liable for the full amount (joint and several), or it can apportion:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. 3664(h).

Put simply, Section 1593 unremarkably states that when restitution is ordered, the general criminal code provision for restitution applies, which gives the court the

option to apportion or hold a perpetrator jointly and severally liable. Apportionment is not mandated. And this cross-reference to Section 3664(h) in Section 1593 does not require apportionment under Section 1595. Nor can Congress's intent be inferred from this cross-reference.

And Plaintiff's citation to and reliance on the United States Supreme Court's decision in *Barnhart*, does not change this fact. Pl. Mot. at 6–7, Doc. 185. In *Barnhart*, the Supreme Court considered  whether the term "related person" under Section 9701(c)(2)(A) of the Coal Act provided for successor liability. *Id.* at 451. In finding it did not, the Supreme Court found that the term was plain and unambiguous and did not require additional interpretation. The Court supported its conclusion by holding that "[w]here Congress wanted to provide for successor liability in the Coal Act, it did so explicitly." *Id.* at 452–53.

But *Barnhart*, unlike here, reached this conclusion in part because multiple provisions within the Coal Act itself expressly provided for successor liability. *Id.* at 453 (citing Sections 9706(b)(2) and 9711 which use the word "successor" in the statutory text itself). *Barnhart* did not, as would be required here, infer Congressional intent by relying on language in a separate statute that cross-references another statute. The language in Section 3664 giving the option of apportionment or joint and several liability does not resolve the issue.

But even if Section 1593's cross-reference to Section 3664(h) controlled the meaning of "damages" under Section 1595(a), the outcome is not joint and several liability. Quite the contrary. Plaintiff conveniently only focuses on Section 3664(h)'s reference to apportionment, but as noted, Section 3664(h) references both apportionment and joint and several liability. By Plaintiff's own logic, Congress' choice to reference joint and several liability in Section 3664(h), but omit it from Section 1595(a), means it had a clear "intent and purpose" to ensure liability was not joint and several. Pl. Mot. at 6, Doc. 185. Plaintiff's interpretation is logically inconsistent.

Plaintiff cannot have it both ways. She cannot choose to apply this analysis to "apportionment" because advances her position but ignore the same analysis that applies in the same way to joint and several liability. If it applies, it applies to both. And in applying to both, we arrive right back where we started: the statute is silent, and this Court must go outside principles of statutory interpretation to fill in the gap.

And Plaintiff cannot overcome this silence using Judge Thrash's decision in *K.M. v. Reva Properties, LLC*, No. 1:22-CV-3991-TWT, 2024 WL 1217420, at *1 (N.D. Ga. Mar. 21, 2024). Pls. Opp. at 4–5, Doc. 185. To start, *K.M.* does not control or bind this Court. But even if it did, *K.M.* does not address the issue. Rather, it involved a different procedural question. In *K.M.*, plaintiff asserted a claim against defendants under the TVPRA, the defendant filed notices to apportion fault under

O.C.G.A. 51-12-33, and the plaintiff moved to strike the notices arguing O.C.G.A. 51-12-33 did not apply to the TVPRA. Judge Thrash denied the motion, finding the notices were not subject to a motion to strike, and even if they were, Plaintiff had not carried her burden. *Id.* at *2.

Before denying, however, Judge Thrash expressed doubt that O.C.G.A. 51-12-33 applied to TVPRA-only claims. *Id.* (expressing skepticism that Georgia apportionment statute controls under the TVPRA when there are not "any state law claims alleged."). In doing so, he simply explained that he would be "surprised" that Congress would not have articulated apportionment if that were what it meant. *Id.* But, respectfully, Judge Thrash's non-binding doubts and "skepticism" do not control this analysis. Nor do they change the fact that Section 1595 is silent on joint and several liability. In fact, even Judge Thrash recognized that plaintiff "has not provided any case law or other authority that clearly states that apportionment is prohibited for TVPRA claims." *Id.* And given that, Judge Thrash deferred the issue for summary judgment or trial. *Id.* That is where we are now, and this issue is now properly before this Court. *K.M.* does not control.

**B.    State law applies under controlling statutes and Supreme Court precedent given Section 1595's silence on joint and several liability.**

At the outset, RRI Defendants recognize that Judge Calvert rejected their argument that state law, or apportionment, applies to a claim under the TVPRA. *W.K.*, 2024 WL 2892322, at *1. Namely, Judge Calvert found that "[j]oint and

several liability is the traditional rule for federal torts." *Id.* (collecting cases applying joint and several liability to a Section 1983 claim as well as the FTCA). Based on this, Judge Calvert  found that neither the statutory text, nor purpose of the TVPRA, was a basis to "abrogate" this traditional rule. *Id.* at *1–*2. Respectfully, however, RRI Defendants are not asking this Court to "abrogate" the traditional rule.

Rather, RRI Defendants ask this Court to consider the application of state law to fill in the gap and statutory silence under Section 1595. And RRI Defendants urge this Court to use state law, specifically O.C.G.A. 51-12-33, to fill  this gap under 42 U.S.C. 1988 and the Court's holding in *Kimbell Foods, Inc.*, 440 U.S. 715 (1979).

### 1.   State law applies under the United States Supreme Court precedent.

Article III courts have limited jurisdiction, and it is long established that "[t]here is no federal general common law" because federal courts cannot seize the power of the states or Congress to make substantive rules of law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Still, federal courts have the "competence" to create a federal common-law rule in limited circumstances. *U.S. v. Honeywell Int'l Inc.*, 47 F.4th 805, 815 (D.C. Cir. 2022) (citing R. Fallon, J. Manning, D. Meltzer & D. Shapiro, Hart, and Wechsler's the Federal Courts and the Federal System 661 (7th ed. 2015)). These circumstances exist only when a federal rule is necessary to protect "uniquely federal interest[s]," such as when "the application of state law

would frustrate specific objectives of federal legislation." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 507 (1988) (cleaned up).

Consequently, before federal law applies, there must be a "significant conflict between some federal…interest and the use of state law" which must be "specifically shown." *Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (cleaned up); (explaining that application of state law is the proper default position for federal courts). The ability to create a federal rule does not negate the "basic aspect of our federalism" that the federal government always acts "against a background of existing state law, and that federal law retains its incomplete and interstitial nature." *Honeywell Int'l Inc.*, 47 F.4th at 815 (citing Ernest A. Young, *Preemption & Federal Common Law*, 83 Notre Dame L. Rev. 1639, 1646 (2008) (cleaned up)).

Thus, even areas of unique federal interest "do not inevitably require resort to uniform federal rules." *Kimbell Foods*, 440 U.S. at 727–28. In exercising the discretion to create a federal rule, federal courts must consider (1) whether the federal statute is one that, by its nature is and must be uniform in character throughout the nation; (2) whether application of state law would frustrate specific objectives of the federal statute; and (3) how much application of a federal rule would disrupt commercial relationships based on state law. *See id.* at 728–29; *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1501 (11th Cir. 1996). Applying this framework, creation of a unique federal rule is unnecessary

because state law is sufficient and does not contravene or frustrate the TVPRA's purpose or objectives.

First, the TVPRA does not require a uniform body of law on joint and several liability for a civil cause of action. Section 1595 is one component of the TVPRA. The TVPRA results from congressional efforts to address human trafficking "throughout the world." *Roe v. Howard*, 917 F.3d 229, 242 (4th Cir. 2019) (citing Pub. L. 106-386 §§ 101-102, 114 Stat. 1464, 1466-69 (2000)). Thus, the TVPRA contains "numerous mutually reinforcing provisions" that have "helped transform the way governments and the private sector around the world respond to human trafficking." 149 Cong. Rec. H10284 (daily ed. Nov. 4, 2003); 151 Cong. Rec. H11574 (daily ed. Dec. 14, 2005 (statement of Rep. Smith); 154 Cong. Rec. H10902 (daily ed. Dec. 10, 2008) (statement of Rep. Smith). These congressional efforts use a multifaceted approach to combating human trafficking. These approaches include, but are not limited to, expanding, and shaping criminal penalties, providing reporting standards, and protecting and compensating victims.

One method for achieving this goal was to provide a civil cause of action. This came in 2008 when Congress amended Section 1595(a). Under this amendment, Congress provided a civil cause of action against financial beneficiaries who participated in a venture that they knew or should have known violated sex

trafficking laws.[3] A uniform federal rule on joint and several liability is not needed, and it does not further Congress's goals. Rather, Section 1595 "sounds in tort." Tort, *Black's Law Dictionary* (9th ed. 2014) (a tort is "[a] civil wrong, other than breach of contract, for which a remedy may be obtained."). Torts are governed by state law. And because of this, states have systems in place that ensure (1) injured parties are compensated and (2) wrong or liable behavior is deterred. *See* Roland Christensen, *Behind the Curtain of Tort Reform*, 2016 B.Y.U. L. Rev. 261, 262 (2016).

The TVPRA aims to do the same: that is deter and fight trafficking while allowing victims to be compensated for their injuries. The TVPRA does not, however, mandate joint and several liability. Rather, it just states that if the elements of Section of 1595(a) are met, a trafficking victim is entitled to "damages." Nothing about the application of state law stifles this plain language or intent. Quite the contrary, state law provides a consistent and predictable avenue to fill in the interstitial gaps Congress left open.

Second, although there is variation among states on the issue of joint and several liability, this variation will not frustrate the TVPRA's purpose of fighting human trafficking and protecting victims. *See* Restatement (Third) of Torts:

---

[3] Prior to 2008, this cause of action did not exist. Before that, the TVPRA included only criminal prohibitions along with "a civil right of action by victims of trafficking against their traffickers." *Id.*

Apportionment Liab. § 17 cmt. a, Reporters' Note, (2000) (noting "the clear trend" in the 1980s and 1990s has been to "move away from pure joint and several liability."). Rather, as discussed, the TVPRA is an extensive legislative initiative. Its purpose is to combat human trafficking. Providing a civil cause of action to victims is one means for achieving this end. Using state law to fill in any gap regarding joint and several liability to alleged victims does not frustrate this purpose. It does not dampen the statute's ability to deter. Rather, state laws provide legal remedies to ensure compensation.

In sum, the *Kimbell Foods* factors weigh against crafting a unique federal common-law rule. Rather, courts should apply the applicable state-law rule to determine joint and several liability. Here, that applicable rule is Georgia's O.C.G.A. 51-12-33. This statute should govern at trial.

### 2.    State law applies under Section 1988.

Section 1988(a) provides a separate avenue to dictate the application of state law. Section 1988(a) states that when a court has jurisdiction based on the provisions of "titles 13, 24, and 70 of the Revised Statutes" that federal courts must apply state common law, as modified by state statutes, to fill in any gaps:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted

to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State where the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the case, and if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. 1988(a).

Section 1988 applies here. The reason is simple. Section 1595 provides a civil cause of action for individuals who were victims of a violation of the TVPRA. The TVPRA is part of Chapter 77 of Section 18 of the United States Code. Chapter 77 includes crimes that result from "Peonage, Slavery, and Trafficking in Persons." Section 18 was formerly title 70 of the Revised Statutes. *See Kettner v. Compass Grp. USA, Inc.*, 570 F. Supp. 2d 1121, 1127 (D. Minn. 2008). Title 70 is specifically enumerated by and included in Section 1988.

The TVPRA also aims to combat trafficking and modern slavery. *See* 146 Cong. Rec. 22,044 (2000) (Sen. Brownback) (TVPA was Congress' first complete legislation to address the growing practice of international trafficking, "one of the largest manifestations of modern-day slavery."). This stems from principles protected by the Thirteenth Amendment. The Thirteenth Amendment is a

13

reconstruction era civil rights amendment, which is covered by Section 1988.[4] Thus, the TVPRA addresses "civil rights."

So based on its plain language, Section 1988 applies to civil actions brought under Section 1595. And under Section 1988, when federal law is lacking or deficient, state law applies if it "is not inconsistent with" federal law. *See Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1214 (11th Cir. 2001) (applying a three-step process to determine "the rules of decision applicable to civil rights claims" brought pursuant to the Reconstruction-era Civil Rights Acts."); *Kettner*, 570 F. Supp. 2d at 1127. As explained above, state law applies under this standard because:

- The TVPRA's plain language and legislative history do not address joint and several liability leaving state law to fill in the gaps.

---

[4] The Thirteenth Amendment, provides: "Neither slavery nor involuntary servitude, except as a punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Section 2, the Enabling Clause of the Amendment, states: "Congress shall have power to enforce this article by appropriate legislation." According to the Supreme Court, this "clause clothed 'Congress with power to pass *all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.'"* *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439 (1968) (quoting *Civil Rights Cases*, 109 U.S. 3, 20 (1883)) (emphasis in original). "Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *Griffin v. Breckenridge*, 403 U.S. 88, 105 (1971) (quoting *Jones*, 392 U.S. at 440); *U.S. v. Earnest*, 536 F. Supp. 3d 688, 715–16 (S.D. Cal. 2021).

- State law is not inconsistent with federal law or the objectives and purpose of the TVPRA.

Given this, under Section 1988, this Court should apply state law, including O.C.G.A. 51-12-33, to any claims for damages under the TVPRA.

### 3. Application of joint and several liability to other federal statutes does not control.

Contrary to Plaintiff's contention, the fact that joint and several liability has been applied to dissimilar federal statutes, like Section 1983, does not alter this outcome. For example, Section 1983 speaks to liability, not just damages:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, ***subjects, or causes to be subjected***, any citizen of the United States … ***shall be liable to the party injured*** in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added).

Put simply, Section 1983 speaks to when a party *is liable*. And it is against this backdrop that courts have applied joint and several liability. *Wright v. Watson*, No. 4:15-CV-34 (CDL), 2017 WL 4126981, at *3 (M.D. Ga. Sept. 18, 2017). Section 1595, however, is not Section 1983. Instead, Section 1595's statutory language, its purpose, and the legal backdrop against which it was enacted is patently different— confirming apportionment, not joint and several liability, applies.

First, Section 1595 does not speak in terms of liability or injury. Rather, Section 1595 provides a private cause of action to a "victim" of a violation of the

TVPRA stating that if the elements are met, a victim can recover "damages." 18 U.S.C. § 1595. That is all it says. If Congress meant for liability to be joint and several, it could have said so—or at least could have spoken to a potential defendants' liability or referenced recovery for a plaintiff's entire "injury." But it did not. Congress instead chose to only use the word "damages." Nothing else. This silence is not a *carte blanche* invitation to apply a blanket rule for joint and several liability when the statute gives no support to this application.

Second, Section 1595 is one component of a comprehensive statutory scheme aimed at combatting human trafficking. 149 Cong. Rec. H10284 (daily ed. Nov. 4, 2003). Providing victims with a private cause of action is one component of that statutory scheme. As discussed above, unlike Section 1983, compensation is not TVPRA's primary goal. Its goal is a legislative initiative aimed at combatting human trafficking, and providing a civil cause of action is one avenue of that wholistic approach. *See supra* Part II.B.2.

Finally, unlike Section 1983 (passed in 1979), Congress passed Section 1595 *in 2008*, after decades of tort reform. As part of this reform, there was a trend away from joint and several liability. Restatement (Third) of Torts § 17 cmt. a (2000) (noting that joint and several liability "has been substantially modified in most jurisdictions" through "tort reform during the 1980s and 1990s."). Given this trend,

the Third Restatement made clear that state law, like O.C.G.A. 51-12-33, governs

this issue:

> If the independent tortious conduct of two or more persons is a legal
> cause of an indivisible injury, the law of the applicable jurisdiction
> determines whether those persons are jointly and severally liable,
> severally liable, or liable under some hybrid of joint and several and
> several liability.

Restatement (Third) of Torts § 17 (2000). It is against this backdrop that Congress

legislated Section 1595. *Norfolk & W. Ry. Co.*, 538 U.S. at 164 ("[t]he state of affairs

when [the statute] was enacted, . . . is the more important inquiry" when determining

application of joint and several liability). Thus, in 2008, it cannot be said that joint

and several liability was the standard or traditional rule. Rather, both the Restatement

(Third) and trend among the states make clear that joint and several liability was

anything but the majority rule in 2008. *See infra*, Part II.C (discussing the

Restatement).[5]

    In sum, the relevant Restatement, Section 1988, and the Court's holding in

*Kimbell Foods* show that state law applies to fill Section 1595's statutory gap.

---

[5] Further, Plaintiff's citation to *Fed. Trade Comm'n v. WV Universal Mgmt., LLC*,
877 F.3d 1234 (11th Cir. 2017) is misplaced. Fed. Trade Comm'n involved the
Federal Trade Commission Act (FTCA) which considered the availability of joint
and several liability based on "substantial assistance" and "aiding and abetting,"
which has not been raised here. *Id.* at 1240–1241.

**C.   Federal common law supports apportionment and not joint and several liability.**

Even if this Court were to decline to apply state law, the application of federal common-law still does not demand joint and several liability under the TVPRA. "Federal common law refers to the development of legally binding federal rules articulated by a federal court which cannot be easily found on the face of a constitutional or statutory provision." *McGurl v. Trucking Emps. of N.J. Welfare Fund, Inc.*, 124 F.3d 471, 480 (3d Cir. 1997) (cleaned up). The need for common lawmaking "stems from the inability of legislators to anticipate every possible contingency and the impracticability of judges['] returning all unanswered questions to the legislature." *Id.* at 481. Within these limits, federal courts can apply "traditional common-law technique of decision and to draw upon all the sources of the common law." *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 472, (1942) (Jackson, J., concurring) (citing *Bd. of Comm'rs v. United States*, 308 U.S. 343, 350 (1939)).

Courts often look to the Restatement as guidance for determining common-law standards. *See Allen v. D.C.*, 969 F.3d 397, 402 (D.C. Cir. 2020) (explaining that courts assume statutes' continuity with "well established" common law principles unless the statute "speaks[s] directly to the question addressed by the common law") (cleaned up). As it relates to damages, there are two Restatements at play—the Second and the Third. The Third Restatement on damages was published in 2000.

That is eight years before Section 1595(a)'s beneficiary civil cause of action existed, and three years before a civil cause of action existed at all. The Third Restatement follows the approach dictated by Section 1988 and *Kimbell Foods*. That is, it states when the conduct of two or more independent tortfeasors legally cause an indivisible injury, state law controls to determine joint or several liability:

> If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, the law of the applicable jurisdiction determines whether those persons are jointly and severally liable, severally liable, or liable under some hybrid of joint and several and several liability.

Restatement (Third) of Torts § 17 (2000).

The Third Restatement turns to this approach because as of 2000 "there [was] currently no majority rule on this question," noting that joint and several liability "has been substantially modified in most jurisdictions" through "tort reform during the 1980s and 1990s." Restatement (Third) of Torts § 17 cmt. a (2000). Put differently, there was no majority rule, or clear standard, on the issue of joint and several liability when Congress passed the TVPRA. Instead, the Restatement made clear that state law governed these issues. Restatement (Third) of Torts § 10 (2000) (listing the reasons for "leaving this matter to the law of the applicable jurisdictions").

And it was against this backdrop on joint and several liability that Congress passed Section 1595(a). *See Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298,

2307 (2021) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress legislates against a background of common-law adjudicatory principles," and "expects those principles to apply except when a statutory purpose to the contrary is evident."); *U.S. v. Currituck Grain, Inc.*, 6 F.3d 200, 206 (4th Cir. 1993). Thus, even the Restatement makes clear that turning to state law on these issues was the overwhelming approach used.

Moreover, even without turning to state law, both the Second and Third Restatement state that the common-law rule is apportionment when "there is a reasonable basis for determining the contribution of each cause to a single harm." Restatement (Second) of Torts § 433A (1965); s*ee also, e.g.*, Restatement (Second) of Torts § 879 (1979) ("If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive."); Restatement (Third) of Torts § 26 (2000) ("Damages can be divided by causation when any person or group of persons to whom the factfinder assigns a percentage of responsibility (or any tortious act of such a person) was a legal cause of less than the entire damages.").

A reasonable basis for apportionment exists when there is evidence supporting allocation based not only on the divisibility of the harm but based on degree and timing of involvement. *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S.

599, 616 (2009) (district court properly apportioned damages in pollution cleanup case because it was a "'divisible in terms of degree' case, both as to the time period in which defendants' conduct occurred, and ownership existed, and as to the estimated maximum contribution of each party's activities that released hazardous substances that caused Site contamination.") (cleaned up); Restatement (Second) of Torts § 433A cmt. a–e (Am. Law Inst. 1965).

A reasonable basis for apportionment exists here. Plaintiff alleges that she was also trafficked at other hotels. Doc. 36, 65. (listing Plaintiff's alleged traffickers and other hotels and locations where Plaintiff was also allegedly sex trafficked). Many of these hotels are unrelated to RRI Defendants and specifically RRI Norcross. And not only does Plaintiff allege trafficking by other tortfeasors. Plaintiff does not delinate this harm, but instead is seeking all non-economic damages available under the TVPRA. ECF No. 166 at 19 ("Plaintiff will seek general non-economic damages under the TVPRA in an amount determined by the enlightened conscience of the jury in light of the evidence presented at trial.").

A jury is capable of assessing and apportioning fault. A jury can make this determination by considering factors such as the number of visits, degree of involvement, expert testimony on the effect of the abuse, alongside other available considerations. Restatement (Third) Of Torts § 8 (2000) (noting considerations for juries include (1) "the nature of the person's risk-creating conduct, including any

awareness or indifference with respect to the risks created by the conduct and any intent with respect to the harm created by the conduct," and (2) "the strength of the causal connection between the person's risk-creating conduct and the harm."). There is a reasonable basis for apportionment. Thus, joint and several liability under the common law should not apply.

And Plaintiff cannot overcome this straightforward application of the Restatement to the facts by pointing this Court to inapposite authority. To be sure, Plaintiff spends a great deal of time discussing cases applying vicarious liability and punitive damages under the TVPRA. Pl. Mot. at 12–15, Doc. 185. Neither one is at issue in this Motion. Still, these cases do not advance Plaintiff's position. The reason is simple. RRI Defendants assert that neither punitives nor vicarious liability are available under the TVPRA. RRI Defendants have been consistent on this issue.[6] This is true even though Plaintiff misstates RRI Defendants' position to this Court.[7]

---

[6] RRI Defendants argued on summary judgment that vicarious liability was not available under the TVPRA. *See* RRI Inc. Mot. S.J. at 17–18, Doc. 94-1; FMR RRI I Mot. S.J. at 13–14, Doc. 95-1; RRI West Management LLC, Mot. S.J. at 15–17, Doc. 96-1.

[7] Plaintiff states that "Red Roof concedes that § 1595 permits the jury to impose punitive damages despite the statute's silence on the availability of punitive damages" citing page 11 of the Pretrial Order (Doc. 166). Nonsense. RRI Defendants conceded no such thing. In fact, the same Pretrial Order explicitly states that "Defendants do not believe punitive damages are available under the TVPRA." Doc. 166 at 6. No concession has been made.

And while RRI Defendants recognize that certain courts have found otherwise,[8] these issues remain unsettled by the Eleventh Circuit and the United States Supreme Court. Thus, unless or until they are resolved, RRI Defendants maintain their position that neither is available This analysis does not control the whether joint and several liability is available under the TVPRA.

## III.   CONCLUSION

For all these reasons and those stated above, this Court should apply Georgia law, including O.C.G.A. 51-12-33, to damages under the TVPRA. Or if this Court does not apply state law, it should allow the jury to apportion fault under applicable federal common-law principles.

---

[8] *Ditullio v. Boehm*, 662 F.3d 1091, 1101 (9th Cir. 2011); *Francisco v. Susano*, 525 F. App'x 828, 835 (10th Cir. 2013). *But see Ditullio*, 662 F.3d at 1101 (J. Callahan Dissenting) (finding punitive damages are not available under the TVPRA).

Dated: October 28, 2024        Respectfully submitted,

*/s/ Marcella C. Ducca*
Marcella C. Ducca (Ga Bar No. 115079)
Brandon D. Cox (Ga Bar No. 832025)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  678.553.2100
duccam@gtlaw.com
coxb@gtlaw.com

Sandra J. Wunderlich (pro hac vice)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO 63102-1822
Telephone:  314.256.2550
Facsimile:   314.256.2549
sandra.wunderlich@tuckerellis.com

Chelsea Mikula (pro hac vice)
Joseph A. Manno (pro hac vice)
Elisabeth C. Arko (pro hac vice)
Emily R. Grace (pro hac vice)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113-7213
Telephone:  216.592.5000
Facsimile:   216.592.5009
chelsea.mikula@tuckerellis.com
joseph.manno@tuckerellis.com
elisabeth.arko@tuckerellis.com
emily.grace@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc.,*
*FMW RRI I, LLC, and RRI West*
*Management, LLC*

24

## <u>RULE 7.1D CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D) of the United States District Court of the Northern District of Georgia, the undersigned certifies that the submission to the Court was computer-processed, double-spaced between lines, and used Times New Roman font of 14-point size.

Dated: October 28, 2024

<div style="margin-left: 40%">

*/s/ Marcella C. Ducca*
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*

</div>

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on October 28, 2024, a copy of the above was filed with the United States District Court for the Northern District of Georgia and served on counsel of record through the Court's CM/ECF system.

Dated: October 28, 2024

*/s/ Marcella C. Ducca*
Marcella C. Ducca

*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*