UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| H.B., <br><br> Plaintiff, <br><br> v. <br><br> RED ROOF INNS, INC. et al., <br><br> Defendants. | CIVIL ACTION FILE <br><br> NO. 1:22-cv-1181-JPB |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EVIDENCE OF UNRELATED CRIMES AND INCIDENTS AT RRI NORCROSS AND DEFENDANTS' MOTION IN LIMINE TO EXCLUDE POST-JANUARY 2012 EVIDENCE**

There are three primary reasons why evidence of incidents at other Red Roof properties, including after January 2012 are relevant and admissible in this case: (1) because the parties explicitly agreed they were; (2) because the evidence establishes the *modus operandi* of the Defendants[1] and their regional vice president, Jay Moyer, who oversaw the Norcross Red Roof Inn and the other locations; and (3) because the evidence is relevant impeachment evidence based on Mr. Moyer's testimony.[2] The

---

[1] Red Roof Inns, Inc. ("RRI Inc."); RRI West Management, LLC ("RRI West"); and FMW RRI I, LLC ("FMW RRI").

[2] Plaintiff responds jointly herein to Defendants' motions in limine regarding other locations (Doc. 188-1) and post-January 2012 evidence (Doc. 189-1) because the arguments have significant overlap, i.e., the evidence of other times and other places is admissible for impeachment and establishing Defendants' *modus operandi*.

evidence is also relevant to punitive damages. Defendants' and Mr. Moyer's *modus operandi* included explicitly permitting not only prostitution at the Red Roof hotels he oversaw but also arranging to hide child sex trafficking victims in the back of a hotel so that those operations could continue. This evidence is relevant and admissible in a TVPRA case. *Treminio v. Crowley Mar. Corp.*, No. 3:22-cv-00174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024) (Kelly, J.), *reconsideration denied,* No. 3:22-cv-00174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024) (Kelly, J.).

The Court is familiar with the facts of this case, which include that the hotel was "known for having high crime, prostitution and sex trafficking," and that members of the community, police, even their own security guard, reported prostitution and drug activity to Defendants to no avail. Doc. 158 at 3–4. A hotel employee testified that "that the hotel had a 'heads in beds' policy that instructed employees to prioritize renting rooms in the face of illicit activities." *Id.* at 10 n.4.

The evidence Defendants seek to exclude shows that for these Defendants, this operation of the Norcross Red Roof was the rule, not the exception. This evidence shows that the manner in which Defendants operated its other corporately-owned Red Roof hotels in Atlanta—managed at times by the same general managers as Norcross and all overseen by the same man, Jay Moyer—was the established method of operation for hotels overseen by Mr. Moyer. In fact, another employee, Forrest Castille, testified in similar language that at the Smyrna Red Roof,

> it's about how many beds you can sell, how many heads you can lay in the bed. It's always about – it's about revenue and trying to keep the customers happy. That was the only training that we had. It was never about safety. It was never about what I should do if a dope dealer or drug dealer or prostitute, none of that. No kind of training about that at all.

Doc. 121 at 47:10–18. The Smyrna hotel was also corporately owned and operated and overseen by Mr. Moyer.

Michael Thomas worked at the corporately-owned Buckhead Red Roof under Mr. Moyer. He testified that Mr. Moyer told him to hide child sex trafficking in the back of the hotel so that guests would stop complaining about the obvious activity. The reason? Heads in beds.

> Jay knew what was going on. As far as with the young girls, prostitution, there's no way that he couldn't have. I think that it was a matter of the fact that they were paying guests and that he was making revenue and that maybe in his mind he thought putting them on the back side would kind of solve the situation where it would be a win-win for both and we would still hit our numbers and everything would be okay.

Doc. 120 at 45:14–23.

Jay Moyer oversaw all three of these Red Roof hotels. General manager Kim Rachal was GM of both Norcross and Buckhead. She was reported to Mr. Moyer as allowing prostitution at the Buckhead hotel. Doc. 117 at 257:5–258:25. Mr. Moyer didn't recall doing anything in response to this, and other, reports about Ms. Rachal, who, again, also managed the Norcross Red Roof. *Id.* at 260:12–261:1.

3

## I. The parties agreed to use the evidence of other times and locations in this case.

*First*, evidence from other times and locations should be admitted in this case because the parties agreed to do exactly that. *See* Ex. 1, Allushi Decl. In February 2023, the parties entered into a sharing agreement due to the lengthy discovery that had already been conducted in other cases involving plaintiffs represented by H.B.'s counsel and the Red Roof Defendants. Doc. 16.1. The parties "contemplated and agreed to admit evidence of other times and places to streamline the H.B." case. Ex. 1, Allushi Decl. ¶ 7. The parties' agreement on this point is sufficient to deny Defendants' motions in limine regarding time and place.

Most of the exhibits and evidence Defendants object to on these grounds come out of the depositions of Jay Moyer, regional vice president over the corporately-owned Red Roof hotels in the Atlanta area, including Norcross. After years of litigation and more than 40 depositions, both parties had an interest in avoiding re-deposing Red Roof employees and plaintiffs who would be witnesses in the later cases. The parties agreed that they would use the depositions from the prior cases and limit Mr. Moyer's deposition to *less than an hour*.[3]

The only way to obtain useful testimony in the limited time was to ask questions that referenced Mr. Moyer's prior deposition testimony. Thus, the following

---

[3] The H.B. deposition of Mr. Moyer was concluded in forty-six minutes.

4

questions and answers were elicited in Mr. Moyer's agreed-upon truncated deposition:

> Q. Were your duties and responsibilities at the Norcross Red Roof the same as the duties and responsibilities that you testified about in your earlier deposition regarding the Buckhead Red Roof and the Smyrna Red Roof when it was corporately owned?
>
> A. Yes.

Doc. 122 at 15:22–16:3.

> Q. Were your expectations of the general managers at the Norcross Red Roof the same as your expectations for every other hotel in your region such as you testified about regarding Buckhead and Smyrna in your earlier deposition?
>
> A. Yes.

*Id.* 16:4–9.

> Q. [D]id you visit the Norcross Red Roof Inn about the same amount of time – times as you visited other hotels in your region?
>
> A. Other hotels in Georgia.
>
> Q. Okay. And – and you mean – is that a "yes?" You did visit them about the same as you visited other hotels in Georgia?
>
> A. Yes.

*Id.* 16:4–17.

> Q. When you did visit the Norcross Red Roof Inn, um, did you do the same kind of oversight activities there as you did at the other hotels, such as Buckhead and Smyrna, as you testified in your earlier deposition?

>A. Yes, very consistent.

*Id.* 17:16–21.

>Q. [I]n your earlier deposition at Buckhead and Smyrna you talked some about, um, I don't believe specifically, but the type of things that you would do in response to reports of crime or illegal activity at hotels. And my question is: Would your response at the Norcross Red Roof Inn have been the same as your response at every other hotel in your region?
>
>A. I would think they would be similar. I don't know they'd be the same exact.

*Id.* 18:21–19:5.

Additionally, Mr. Moyer was questioned in the H.B. deposition as to whether any hotel he oversaw ever allowed commercial sex or sex trafficking and whether he had ever instructed anyone to allow commercial sex or sex trafficking at any hotel in his region. Doc. 122 at 41:12–42:9. Mr. Moyer denied that being the case. *Id.* However, there is substantial evidence that Mr. Moyer did just that. In his prior deposition, Mr. Moyer was questioned at length about his own communications indicating such policies as well as incidents reflecting rampant commercial sex at his hotels. Doc. 117. Additionally, there is witness testimony from another Atlanta-area Red Roof employee that Mr. Moyer explicitly instructed the employee to move minor girls being sold for sex at the hotel to the back of the hotel to attract less attention from other guests. Doc. 120 at 40:6–42:20.

6

Absent the sharing agreement, Plaintiff obviously would've questioned Mr. Moyer further on each of these points above. But because the testimony had been covered at length in the prior deposition, there was no need, nor any time under the agreement.

Instead, the parties agreed to use and admit the evidence of other locations and times to explain the limited testimony elicited in the H.B. deposition. Were that not the case, the sharing agreement would have been a sham and Plaintiff would have been duped into conducting a truncated deposition of a witness outside the Court's subpoena power range by referring to the witness's prior testimony, and then limiting the testimony to indecipherable references to evidence the jury would never hear. Because the parties "agreed to admit evidence of other times and places" in this case, Defendants may not now object to the admissibility of that evidence. Ex. 1, Allushi Decl. "In the Eleventh Circuit, it is well-established that parties are bound by their attorneys' stipulations." *In re Lightsey*, 374 B.R. 377, 381 (Bankr. S.D. Ga. 2007) (quoting *Laird v. Air Carrier Engine Serv., Inc.,* 263 F.2d 948, 953 (5th Cir. 1959)).

**II.    Other time and place evidence is relevant to prove Defendants *modus operandi*.**

The Norcross Red Roof Inn was a corporately-owned and operated hotel. It was overseen by regional vice president of operations Jay Moyer, who oversaw other corporately-owned hotels in the Atlanta area. Some of the evidence that Defendants

7

seek to exclude is evidence that at those Red Roof locations, Mr. Moyer allowed rampant prostitution and sex trafficking. In fact, there is evidence that an employee of another Atlanta Red Roof Inn called Mr. Moyer to ask him what to do about customer complaints regarding minors being sold for sex at the hotel. Doc. 120 at 43:1–44:20. Mr. Moyer instructed the employee to move the minor children being sold for sex to the back of the hotel so that guests would be less likely to see them and the complaints would decrease. Doc. 120 at 40:6–42:18.

At that Red Roof hotel and others, Mr. Moyer oversaw hotels with rampant prostitution and trafficking. He joked about funding an upgrade to a hotel based on the spending of the "pimps and hos" who stayed there. Doc. 117 at 211:11–213:14. He instructed others via email to "not use words like prostitution and drug dealers. Use terms like local cliental (sic) or challenging cliental (sic) instead." Doc. 117 at 204:13–209:6. When a guest complained that she caught an "underage prostitute" with her husband at one of Mr. Moyer's hotels, Mr. Moyer told the general manager to "tread carefully on something [like] this." Doc. 117 at 285:3–288:14.

Similar to the other hotels Mr. Moyer oversaw, the Red Roof Norcross also allowed prostitution and placed those selling illegal sex and drugs on the back side of the hotel. Doc. 114 at 21:14–24. The hotel accommodated and assisted H.B.'s traffickers in selling the minor for sex at the hotel. Doc. 113. This is how Mr.

Moyer's Red Roof hotels were run. This was, in other words, Mr. Moyer's and Defendants' *modus operandi.*

Federal Rule of Evidence 404(b) explicitly permits evidence of "any other crime, wrong, or act," to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." In federal courts, that list also includes proving *modus operandi*, or a party's "method of operation." Federal Rules of Evidence § 5256 Other Uses, 22B Fed. Prac. & Proc. Evid. § 5256 (2d ed.) ("There is a long line of cases that recognize the use of other act evidence to prove a defendant's 'modus operandi[.]'")[4]

Evidence of an illegal policy of permitting commercial sex—including sex trafficking—not only at other corporately-owned Red Roof hotels; but which were also overseen by some of the same general managers "floating" between properties, and which were all overseen by Jay Moyer specifically, is evidence that proves *modus operandi*, motive, opportunity, intent, preparation, plan, knowledge, identity,

---

[4] *See also Carrizosa v. Chiquita Brands International, Inc.*, 47 F.4th 1278, 1324 (11th Cir. 2022) (lawsuit by families of torture victims alleging the defendant had supported violence by paramilitary groups: "We conclude that the *modus operandi* evidence should not have been excluded under Rule 404(b). The defendants here are Chiquita and some of its executives. The AUC and its members, the subjects of the *modus operandi* evidence, are not defendants. The plaintiffs, therefore, are not submitting the evidence "to prove [the defendants'] character" in any way, let alone "to show that on a particular occasion [the defendants] acted in accordance with that character." The plaintiffs are instead offering the evidence to show that the perpetrators of the decedents' murders were members of or affiliated with the AUC.").

absence of mistake, *and* lack of accident—*all* of the uses permitted under Rule 404(b).

The Court has noted the evidence in this case regarding a "heads in beds" policy that "prioritize[d] renting rooms in the face of illicit activities." Doc. 158 at 10, n.4. The Court also noted the testimony in this case that Defendants' hotel employees specifically assisted as lookouts for H.B.'s traffickers. *Id.* at 6–8. As at summary judgment, Defendants will argue to the jury that, if true, this was an isolated incident by rogue employees acting outside the scope of their employment. *Id.* 6–10. Defendants' argument is literally that even if H.B.'s testimony was true, it was a mistake or accident that is not chargeable to Defendants. However, the evidence from other nearby Red Roof locations at other times, all actions of the same individuals and Defendants overseeing the Norcross Red Roof Inn, are relevant to showing this was not an isolated "accident." Instead, this was a longstanding method of operation by the individual employees and Defendants in this case. This goes directly to Defendants' knowledge and participation in the sex trafficking ventures at its corporately-owned properties operated by Jay Moyer, including the Norcross hotel. All of the permitted uses under Rule 404(b) are met by this evidence.

Other courts have allowed a showing of a defendant's *modus operandi* to be sufficient for establishing knowledge in TVPRA cases. *See Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's *modus*

*operandi* was a permitted method to demonstrate knowledge under the TVPRA); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an established *modus operandi* that will in the future cause a person to engage in prostitution"); *Boyce v. Weber*, No. 19-cv-3825, 2021 WL 2821154, at *4–6 (S.D.N.Y. July 7, 2021) (Furman, J.) (permitting *modus operandi* to establish knowledge under the TVPRA). Courts have also found that a defendant's actions **subsequent to the events charged in a suit** were permitted to show the defendant had a *modus operandi*. *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974) (articulating that a subsequent incident is permitted to show *modus operandi* if the subsequent act "bears such a high degree of similarity as to mark it as the handiwork of the accused"); *Turner v. United States*, 426 F.2d 480, 483–84 (6th Cir. 1970) (allowing evidence of stolen automobiles after the charged theft to prove defendant's modus operandi) (emphasis added).

The knowledge requirement of Plaintiff's TVPRA claim—what Defendants should have known—may be satisfied by showing "that the defendant had a *modus operandi*." *Doe #1 v. Crowley Mar. Corp.*, 3:23-CV-383-MMH-JBT, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024) (collecting cases); *Eckhart v. Fox News Network, LLC*, 20-cv-5593, 2021 WL 4124616, at *10 (S.D.N.Y. Sept. 9, 2021), *on reconsideration in part,* 20-cv-5593, 2022 WL 4579121 (Abrams, J.) (S.D.N.Y. Sept. 29, 2022) ("A modus operandi is but one of several ways a plaintiff can show

11

knowledge."). Thus, evidence of what the same corporate Defendants and employees like Mr. Moyer did at similar, nearby Red Roof hotels, even at other times, is relevant to the knowledge and participation elements of Plaintiff's claim. The fact that Defendants' *modus operandi* was to explicitly allow not only prostitution but child sex trafficking at its hotels is relevant to the identical crime of child sex trafficking allowed at a hotel operated by the same actors. *Treminio v. Crowley Mar. Corp.*, 3:22-cv-00174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024) (Kelly, J.), *reconsideration denied,* 3:22-cv-00174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024) (Kelly, J.) (collecting cases).

Courts around the country have relied upon the relevance of *modus operandi* evidence in TVPRA cases. *See, e.g., Han v. InterExchange, Inc.*, No. 1:23-cv-07786, 2024 WL 3990770, at *9 (S.D.N.Y. Aug. 28, 2024) (Rochon, J.); *Doe v. Best W. Int'l, Inc.*, No. 2:23-cv-3459, 2024 WL 3759761, at *5 (S.D. Ohio Aug. 12, 2024) (Marbley, J.); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-06038, 2024 WL 3276417, at *10 (W.D. Wash. July 2, 2024) (Cartwright, J.) ; *Roberts v. eXp Realty, LLC*, No. 2:23-cv-10492, 2024 WL 3005892, at *6 (C.D. Cal. May 23, 2024) (Birotte Jr., J.); *Jane Doe (C.J.) v. Albert Cotugno Jr. et al.*, No. 23-02973, 2024 WL 4500994, at *1 (D.N.J. May 16, 2024) (Arleo, J.); *Moore v. Rubin*, No. 17-cv-6404, 2024 WL 1191135, at *4 (E.D.N.Y. Mar. 20, 2024) (Cogan, J.); *Doe 1 v. JPMorgan Chase Bank, N.A.*, 22-cv-10019, 2023 WL 3945773, at *10 (S.D.N.Y. June 12,

2023) (Rakoff, J.); *J.M. v. Choice Hotels Int'l, Inc.*, 2:22-cv-00672, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (Mueller, J.); *Doe v. Fitzgerald*, No. CV 20-10713, 2022 WL 2784805, at *4 (C.D. Cal. May 13, 2022) (Fitzgerald, J.); *Jane Doe No. 1 et al v. Daniel S. Fitzgerald*, No. CV 20-10713, 2022 WL 425016, at *6 (C.D. Cal. Jan. 6, 2022) (Fitzgerald, J.).

Thus, for this independent reason, evidence of how the same actors and Defendants operated other locations at other times to allow prostitution and sex trafficking is relevant to proving the elements of knowledge and participation under the TVPRA.

**III.   Evidence at other locations and times is relevant to impeach witnesses.**

Evidence of Mr. Moyer and Defendants' actions related to commercial sex and allowing sex trafficking at other times and Red Roof locations is relevant impeachment evidence in this case.

"Impeachment evidence is evidence that is 'offered to discredit a witness ... to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her or her testimony.'" *F.T.C. v. Nat'l Urological Grp., Inc.*, 645 F. Supp. 2d 1167, 1180 (N.D. Ga. 2008), *aff'd,* 356 F. App'x 358 (11th Cir. 2009) (quoting *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993)). "Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. "Impeachment by

contradiction occurs when a party offers evidence to prove that a fact to which a witness testified is not true." 27 Charles Alan Wright & Victor Gold, *Federal Practice and Procedure* § 6096 (2d ed. 2007).

Mr. Moyer denied allowing commercial sex and sex trafficking at any hotel he oversaw for Red Roof. Doc. 122 at 41:12–42:9. There is substantial evidence, discussed *supra*, that this is not true. All of this evidence is relevant impeachment evidence as to Mr. Moyer and Defendants.

For example, Mr. Thomas testified that Mr. Moyer instructed him to move minor sex trafficking victims to the back of the hotel. This is classic "contradiction" evidence, which, "is essentially why we have trials, whether civil or criminal." 30 Charles Alan Wright & Victor Gold, *Federal Practice and Procedure* § 6457 (2d ed. 2007). Impeachment by contradiction by Mr. Thomas of Mr. Moyer is relevant, material evidence that shows that when Red Roof employees assisted H.B.'s traffickers in selling her for sex at the Norcross Red Roof Inn, that was not accident or mistake but was part of a plan made with knowledge and intent. Fed. R. Evid. 404(b). These are all permitted uses for impeachment evidence under Rule 404(b).

Similarly, statements by Mr. Moyer regarding his reliance on "pimps and hos" for revenue at hotels and instructions to not refer to prostitution during meetings is evidence from which a jury may infer that Mr. Moyer knew precisely what he was doing in allowing illegal commercial sex and sex trafficking at the hotels he oversaw,

14

including the Norcross Red Roof. Mr. Moyer testified that no hotel in his region ever allowed sex trafficking and that he never instructed anyone to allow commercial sex, prostitution, or sex trafficking at any hotel in his region. Doc. 122 at 41:17–42:9. This testimony—by the employee who was responsible for safety and security at the Red Roof Norcross—may be impeached by evidence showing that he did exactly what he denied, instructed employees at hotels to allow child sex trafficking as part of the hotel's operation.

Here, there is material impeachment evidence that Mr. Moyer not only witnessed and condoned prostitution at the hotels he oversaw, he actively instructed staff to take steps to conceal child sex trafficking at a hotel to allow it to continue and support the business. Thus, in light of Mr. Moyer's testimony that he "wasn't aware of any prostitution – or I don't recall," Mr. Moyer may be impeached with evidence that not only he was aware of prostitution, he had a policy of allowing it and facilitating sex trafficking at the hotels he oversaw. Doc. 117 at 151:16-20.

"[A] court should exclude evidence in limine only when it is clearly inadmissible on all potential grounds." *See United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). Thus, to exclude evidence in limine, a movant must show that the evidence is inadmissible for all purposes and in all circumstances. Evidence of Mr. Moyer's prior and subsequent history of permitting prostitution and sex

trafficking as part of his job with Defendants is relevant impeachment evidence and should be admitted in this case.

Thus, for this independent reason, Plaintiff's impeachment evidence is admissible against Mr. Moyer's testimony.

**IV.    The evidence is relevant as to punitive damages.**

Defendants make a misleading argument that evidence of other harm is not admissible to prove punitive damages. Doc. 188-1 at 5; Doc. 189-1 at 6. The opposite is true. This is seen in Defendants' citation to *State Farm Mut. Auto. Ins. Co. v. Campbell*, which states, as Defendants quote, "A defendant's **dissimilar acts**, independent from the acts upon which liability was premised, may not serve as a basis for punitive damages." 538 U.S. 408, 422–23 (2003). The evidence Defendant seeks to exclude is not "dissimilar" to the acts that injured Plaintiff. In fact, most of it is identical. As discussed above, the evidence at issue includes evidence that Defendants explicitly permitted sex trafficking at their locations as part of a plan with knowledge that was no mistake or accident. Rule 404(b).

In the case of similar acts, the rule is actually that "[e]vidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible[.]" *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007). While a court must be careful not to allow a jury to punish the defendant directly for the harm visited to

nonparties, that risk is cured by an instruction to the jury, not by excluding the evidence. *Id.* at 356 (discussing the jury instruction rejected by the lower court). Because evidence of harm to nonparties is relevant to a punitive damages analysis of reprehensibility, this evidence is admissible for that purpose as well as those above.

Respectfully submitted on 28th day October, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on 28th day October, 2024.

             ANDERSEN, TATE & CARR, P.C.

             */s/ Jonathan S. Tonge*
             PATRICK J. MCDONOUGH
             Georgia Bar No. 489855
             pmcdonough@atclawfirm.com
             JONATHAN S. TONGE
             Georgia Bar No. 303999
             jtonge@atclawfirm.com
             RORY A. WEEKS
             Georgia Bar No. 113491
             rweeks@atclawfirm.com
             JENNIFER M. WEBSTER
             Georgia Bar No. 760381
             jwebster@atclawfirm.com
             *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record.

Respectfully submitted on 28th day October, 2024.

                                              ANDERSEN, TATE & CARR, P.C.

                                              */s/ Jonathan S. Tonge*
                                              PATRICK J. MCDONOUGH
                                              Georgia Bar No. 489855
                                              pmcdonough@atclawfirm.com
                                              JONATHAN S. TONGE
                                              Georgia Bar No. 303999
                                              jtonge@atclawfirm.com
                                              RORY A. WEEKS
                                              Georgia Bar No. 113491
                                              rweeks@atclawfirm.com
                                              JENNIFER M. WEBSTER
                                              Georgia Bar No. 760381
                                              jwebster@atclawfirm.com
                                              *Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile