UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

H.B.,

     Plaintiff,

v.

RED ROOF INNS, INC. et al.,

     Defendants.

CIVIL ACTION FILE

NO. 1:22-cv-1181-JPB

**PLAINTIFF'S MOTION FOR SANCTIONS**

During discovery, Plaintiff asked Defendants for something basic: documents and information, including last-known addresses and phone numbers, about the hotel's employees from 2007 to 2012. Defendants responded to Plaintiff's document requests by saying they had no responsive documents. Defendants responded to Plaintiff's interrogatories by saying they had no responsive information. Months later, Plaintiff learned that neither response was true or correct. Defendants had documents and information about the hotel's employees.

After learning that Defendants' discovery responses were false, Plaintiff pressed Defendants to produce all documents and information about the hotel's employees from 2007 to 2012. Eventually, Defendants produced a single-page document with the names of some employees during that period along with some other information about their employment. Notably absent was any information about

these former employees' addresses or phone numbers. At that time, Defendants told Plaintiff that this was all the documents and information about the hotel's employees from 2007 to 2012. But like Defendants' initial discovery responses, Plaintiff later learned that this statement was false.

On October 3, 2024, forty days before trial, Defendants produced ***more*** documents and information about the hotel's employees—documents and information that Defendants initially said did not exist. But unlike the single-page document Defendants produced during discovery, the late-produced documents contain ***much more*** information about the hotel's employees—including their addresses and phone numbers. Over a year and a half after discovery closed and after Defendants' moved for summary judgment, Defendants have at last produced documents and information concerning the hotel's employees that were in their possession all along.

Defendants admit that the documents and information should have been produced in discovery but were not. These late-produced documents and information have enabled Plaintiff to discover witnesses with relevant testimony for trial. This is because effective background-check searches typically require additional corroborating data points (most commonly address and phone numbers). Defendants' late production requires Plaintiff to conduct last-minute depositions and amend her witness list, but this cannot recover the lost time, effort, and expense before trial.

But Defendants' discovery misconduct goes far beyond withholding highly

relevant documents and information about the hotel's employees. The late-produced documents and information show that important information in the single-page document Defendants produced in discovery was manipulated. The effect of this manipulation was to conceal evidence from Plaintiff that contradicted one of Defendants' supposed bases for summary judgment.[1]

The parties have conferred at length on this issue, both in conference calls and via email. Currently, Defendants' position is that they are "willing to consider" paying costs related to searching for some, but not all, of the witnesses whose contact information was disclosed on October 3. Defendants have agreed to pay the cost of the last-minute trial depositions Plaintiff must take between now and the beginning of trial, excluding attorneys' fees.

Plaintiff seeks sanctions against Defendants because it is the right thing to do. Sanctions in this situation are required by the Federal Rules. A primary purpose of sanctions is to deter similar future behavior by the party. At present, Defendants face dozens of lawsuits brought by hundreds of sex trafficking survivors for conduct at 115 different Red Roof hotels in 39 states.[2] If Defendants could quietly pay some

---

[1] *See infra* pp. 6–11.

[2] Richard Hall, *The Shocking Scale of Sex Trafficking Allegations at Red Roof Inn Hotels Across the United States*, The Independent, July 12, 2024, https://www.the-independent.com/news/world/americas/hotel-sex-trafficking-victims-allegations-b2578905.html (last visited Oct. 25, 2024).

amount of costs, unknown to the courts and other litigants, and avoid a mandatory sanctions order, the deterrent effect and purpose of sanctions would not only be defeated but defeated to the detriment of hundreds of sex trafficking victims around the country. *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 149 (2d Cir. 2010) (Discovery sanctions "are intended to serve a general deterrent effect on the case at hand **and on other litigation**, provided that the party against whom they are imposed was in some sense at fault." (emphasis added)).

To be clear, the remedy Plaintiff seeks for Defendants' discovery misconduct is not to delay her long-awaited trial. The remedy Plaintiff seeks are the sanctions required by the Federal Rules of Civil Procedure.

## FACTUAL BACKGROUND

I.   **Timeline of Defendants' discovery failures.**

Plaintiff H.B. was repeatedly sold for sex at Defendants' hotel in Norcross, Georgia. In March 2022, H.B. sued Defendants under the Federal Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595(a).

Plaintiff served requests for production and interrogatories. These are the relevant discovery requests:

> RPD 20: All documents evidencing the name and contact information (address, phone number, email) for all employees who worked at the Hotel at any point from 2007 through 2012, including the complete personnel file of same.
>
> ROG 12: Please identify each and every person who was employed at

4

or worked at the Hotel, including subcontractors and independent con-
tractors, from 2007 through 2012, and for each such person please state
their job title, prove all last known contact information (phone number,
email, mailing address, etc.) and state whether each such person is still
employed by the Hotel currently.

After boilerplate objections to both requests, Red Roof Inns, Inc. responded:

RPD No. 20: Defendant has no documents responsive to this Request
because it is beyond the relevant document retention policy, which has
been produced to Plaintiff.[3]

ROG No. 12: [W]hile RRI did employ the local staff at the RRI Nor-
cross, it is not in possession or control of any employee records and
cannot identify the employees that were involved at the Norcross RRI
because it is beyond the relevant document retention policy, which has
been produced to Plaintiff.[4]

Neither response was true.

On February 15, 2023, Plaintiff deposed a former Red Roof employee,

Heather Gilmore. Plaintiff identified her by combing through police reports. Defend-

ants did not disclose or identify her. During that deposition, it became apparent that

Defendants had employee information about her, and a discussion about Defendants'

---

[3] Ex. 1, RRI Resp. to RPD No. 20 (Aug. 19, 2022). FMW RRI I, LLC was no more
forthcoming, though the reason given for not having any documents was different.
According to FMW RRI, "this Defendant did not employee [sic] any individual who
worked at the Premises and therefore has no documents responsive to this Request."
Ex. 2, FMW RRI Resp to RPD No. 20 (Aug. 19, 2022).

[4] Ex. 3, RRI Resp. to ROG No. 12 (Aug. 19, 2022). FMW RRI I also had no respon-
sive information but for a different reason: "FMW did not operate or manage the
Norcross Red Roof and has no knowledge responsive to this Interrogatory." Ex. 4,
FMW Resp to ROG No. 12 (Aug. 19, 2022).

lack of production ensued.[5] On February 22, after several follow-up calls, Defendants produced a single-page PDF containing the "employee list" for the hotel between 2007 and 2012. Defendants represented to Plaintiff that this single-page PDF contained all information Defendants possessed about its former employees.[6] That single-page PDF was Bates stamped HB_FMW_000546.[7]

Plaintiff engaged a private investigator to try to locate these people. But armed with only their names, the investigator's search was largely unsuccessful. This is because meaningful background checks generally require more than a person's name. Usually, additional data such as a phone number and address is needed.

In September 2023, Defendants moved (separately) for summary judgment, making arguments and statements such as:

- "There is no evidence that any RRI Inc. employee knew what happened to [H.B.]."[8]

- "However, no Norcross employee, or security guard, suspected sex trafficking."[9]

- "[T]here is no evidence that any Norcross employee or RRI West, observed signs of sex trafficking, let alone observed signs

---

[5] Doc. 114, Gilmore Dep. 41:14–43:25.

[6] Ex. 5, 2/22/23 Email from Allushi to Tonge ("employee list").

[7] Ex. 6, HB_FMW_000546.

[8] Doc. 94-1 at 3; Doc. 96-1 at 3.

[9] Doc. 94-1 at 7; Doc. 95-1 at 7; Doc. 96-1 at 7.

relating to Plaintiff."[10]

- "RRI West never asked or gave its employees permission to engage in criminal conduct on its behalf."[11]

- "Norcross had security in place and trained its employees to report criminal activity, including prostitution."[12]

These are categorical statements about what the hotel's staff did *not* say. But these statements were possible because Plaintiff did not locate former hotel staff members to ask what they would say. And Plaintiff could not do that because Defendants did not produce employee contact information that they always had. The employee Plaintiff did manage to find, Heather Gilmore, refuted the statements above. Thankfully, Ms. Gilmore's testimony (and other record evidence) enabled Plaintiff to stave off summary judgment. But that doesn't change the fact that Defendants moved for summary judgment despite not producing documents and information that Plaintiff needed to uncover admissible trial evidence. Even so, this case is set for trial on November 12, 2024.

On **October 3, 2024**, Defendants "supplemented" their discovery responses and provided a new "list of employees."[13] This "list of employees" is Bates stamped

---

[10] Doc. 94-1 at 12; Doc. 96-1 at 12.

[11] Doc. 96-1 at 21–22; *see also* Doc. 94-1 at 22 ("RRI Inc. never asked or gave its employees permission to engage in criminal conduct on its behalf.").

[12] Doc. 94-1 at 6; Doc. 95-1 at 6; Doc. 96-1 at 6.

[13] Ex. 9, 10/3/24 Email from Wunderlich to Tonge ("list of employees").

HB_NDGA_Red_Roof_00001691–1696.[14] Yet unlike the February 2023 list, *this* list of employees included **much more** information about these former employees, including their phone numbers and addresses.[15] *Forty days before trial*, Defendants provided this information for the first time.

Plaintiff again engaged a private investigator. This time, with corroborating information like phone numbers and addresses, background searches provided the current identities and locations of most employees on the list, including those who had moved out of state. A series of phone calls revealed that many employees had highly relevant evidence. The parties conferred on conference calls on October 8 and October 22, and Defendants agreed to Plaintiff conducting trial depositions of four out-of-state witnesses who were located since October 3.

Plaintiff's witness list must now be amended. Time, which is in short supply the weeks before trial, must be spent taking trial depositions of witnesses whose information should have been revealed years ago. These witnesses' testimony is important. For example, they corroborate that prostitution was rampant at the hotel and known and permitted by the hotel staff. Had summary judgment been granted, neither Plaintiff nor the Court would have learned of these other employee witnesses who support Plaintiff's case.

---

[14] Ex. 7, HB_NDGA_Red_Roof_00001691

[15] *Compare* Ex. 6, *with* Ex. 7.

Initially, both the February 2023 and October 2024 "employee lists" were produced as PDFs, and the employee information was in tables. On October 21, 2024, after Plaintiff spent two weeks trying to understand why these documents and information were not produced during discovery, Defendants produced the Excel spreadsheets containing the employee information in the PDFs produced (both February 2023 and October 2024). But both Excel spreadsheets showed that they were created in 2024. Notably, the Excel spreadsheet from which late-produced documents—those produced October 3 with the employee contact information—shows it was created in August 2024. This means that Defendants had this version of the document two months before producing it to Plaintiff in October. In any event, the October 2024 production proves that Defendants had employee contact information all along but did not produce it.

The October 2024 production also proves something far worse about the February 2023 production. Comparing the employee information from both production reveals that the February 2023 document Defendants produced was manipulated in a way that assisted their arguments at summary judgment. At summary judgment, Defendants took the position that Defendant RRI West Management employed the hotel staff. Defendants argued specifically that Red Roof Inns, Inc. did *not* employ the hotel staff. As the Court noted in its summary judgment order, there was a dispute of fact as to whether Red Roof Inns, Inc. or RRI West Management employed the

staff at the hotel. Doc. 158 at 21, 25.

Consider the first column of both the February 2023 and October 2024 documents Defendants produced. While partially cut off, the first column in the February 2023 PDF version appears to say "█████████ Under that column, every entry (one for each terminated employee listed) says "████"[16] This is confirmed by the corresponding Excel spreadsheet that Defendants produced in October 2024 for this PDF.



But in the October 2024 PDF Defendants produced, the first column is titled "█████████" says █████████████████[17]



This is not an innocuous difference. Defendants Red Roof Inns, Inc. and RRI West Management moved for summary judgment, in part, based on their own

---

[16] Ex. 6, HB_FMW_000546.

[17] Ex. 7, HB_NDGA_Red_Roof_00001691.

testimony that RRI West Management, *not* Red Roof Inns, Inc., employed the staff at the hotel, and Red Roof Inns, Inc. merely "paid Norcross's hourly employees' wages." Doc. 94-1 at 5.

While not dispositive, an "employee list" identifying "Red Roof Inns, Inc." as the employees' "Company" is evidence that Plaintiff could have used to oppose Defendants' motions for summary judgment. The manipulated entry—the initials "RRI"—has little probative value with so many Red Roof entities in the case. Defendants cannot justify manipulating the document like this, particularly when it essentially destroyed evidence helpful to Plaintiff's opposition to summary judgment.

Defendants possessed this employee information all along. The manipulated February 2023 employee list without contact information came from the same database as the October 2024 employee list with contact information. Regardless of why it happened, it is undisputed that Defendants did not produce the employee contact information that Plaintiff requested in discovery despite having it.

Defendants' late production not only conflicts with their discovery responses but also conflicts with Defendants' representations to Plaintiff in February 2023 that the information produced was all the information Defendants possessed regarding their employees.

## II.   As a result of the discovery abuse, more evidence seems certain to have not been produced as well.

The uncertainty surrounding Defendants discovery responses continues to

spread. For example, on October 22, 2024, Plaintiff's counsel learned that Nicole Carter, the general manager of the hotel during the relevant period, was *still* employed by Defendants. Plaintiff was aware of this witness's existence but had not located her. She was included, though, on Defendants' witness list and notated as being represented by Red Roof's counsel. However, this told Plaintiff little. For two former Red Roof employees were also stated to be represented by Red Roof's counsel. Plaintiff did not learn that this was false until she served Defendants' counsel with a trial subpoena for one of them.

Nicole Carter worked at the hotel between 2007 and 2012. Yet Defendants never disclosed her as a witness. And in response to Plaintiff's document request about hotel employees, which included their personnel files, Red Roof Inns, Inc. denied having any "documents responsive to this Request because it is beyond the relevant document retention policy, which has been produced to Plaintiff."[18] However, given that Red Roof employs Nicole Carter *to this day*, Defendants *do* possess her personnel file. Yet even now, Defendants have not produced it, nor have they supplemented their discovery responses.

Additionally, neither list of employees Defendants provided identifies all hotel employees from 2007 to 2012—what Plaintiff requested in discovery. The

---

[18] Ex. 1, RRI Resp. to RPD No. 20.

document Defendants produced contains the hiring and termination dates of the employees (if accurate). Defendants stated on October 24, 2024, that "they do not have information dating back to 2007" and that the document lists all employees they can list.[19] Yet the document produced shows employees who were hired in 1998, 2002, and 2003, among other more recent years. So there is information prior to 2007.

If this were a complete list, then from 2007 to 2011, the hotel had only *fifteen* employees despite being open 24-hours a day, seven days a week.[20] That is unbelievable given that in 2012–2013, *twenty-nine* employees worked at the hotel.

The point is that Plaintiff cannot trust that Defendants' discovery responses and document production are complete. "Rules exist emphasizing the importance of truth in the discovery process and ***the need for a litigant to be able to rely upon the opposing party's discovery responses.***" *Green Leaf Nursery v. E.I. DuPont Nemours & Co.,* 341 F.3d 1292, 1305 (11th Cir. 2003) (emphasis added). The only possible solution would be for Defendants to engage in an entirely new production and review process in response to Plaintiff's propounded discovery requests.

## ARGUMENT AND CITATION OF AUTHORITY

Sanctions in such a situation are mandatory under two different Rules. Under Rule 26(g)(3), sanctions are required because Defendants' discovery responses,

---

[19] Ex. 8, 2024-10-24 2:58 p.m. Email from Wunderlich to Tonge.

[20] Ex. 6, HB_FMW_000546.

including their February 2023 representations to Plaintiff when producing the first employee list, were not "complete and correct." Fed. R. Civ. P. 26(g)(1)(a). Sanctions are also mandatory under Rule 37(c), due to Defendants' failure to supplement its prior responses and "provide information . . . as required by Rule 26(a) or (e)."

Sanctions are also appropriate under this Court's discretionary power because of the scope and import of Defendants' discovery abuse, Defendants' delay in correcting it, and the prejudice Defendants' neglect caused and will cause Plaintiff. Defendants' late, pivotal production meant Plaintiff wasted and misdirected resources during discovery and must now spend valuable time before trial working and revising trial strategy *a year and a half after* discovery closed and mere weeks before trial. For these reasons, sanctions must *and* should be imposed.

## I.   Sanctions are required under Rule 37.

Sanctions are required under Rule 37(c)(1) because Defendants did not supplement its responses in a "timely manner" and provide the relevant document until the eve of trial. This failure violates Rule 26(e)(1)(a), which means the failure triggers mandatory sanctions under Rule 37(c)(1). The Rule provides:

> **(1) *Failure to Disclose or Supplement.*** If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), ***the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial,*** unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > **(A)** may order payment of the reasonable expenses, including

14

attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37 (emphasis added).

"Under Rule 37, the sanction for failure to disclose is ***automatic and mandatory*** unless the sanctioned party can show its violation was either justified or harmless." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 603 (7th Cir. 2024) (emphasis added). "Rule 37(c) does not require the moving party to show that the non-producing party acted in bad faith." *Neville v. Lanier Parking Sols. VI, LLC*, No. 1:19-cv-2151, 2019 WL 12876073, at *2 (N.D. Ga. Oct. 18, 2019), *R&R adopted*, 2020 WL 10619150 (N.D. Ga. Jan. 17, 2020) (alterations adopted and citation omitted). But "[t]he burden rests upon the non-producing party to show that its actions were substantially justified or harmless." *Stallworth v. E-Z Serve Convenience Stores*, 199 F.R.D. 366, 368 (M.D. Ala. 2001).

The presumptive sanction under Rule 37 is that Defendants should not be allowed to use the information on the documents—the witnesses—at trial. That is the default sanction for Defendants' discovery abuse. The Court may add additional sanctions. *Id.* The Court also *may* impose alternative sanctions. *Id.* But the Court *may not* avoid sanctioning Defendants entirely unless the "failure was substantially justified or is harmless." *Id.*

15

Here, there is no justification for Defendants' failure to produce the contact information for hotel employees that Plaintiff specifically requested. Defendants stated they possessed no responsive documents or information, even though they possessed responsive documents and information. Then Defendants used that information to prepare for a deposition but still did not provide the documents to Plaintiff. When Plaintiff requested the information Defendants clearly relied upon at the deposition, Defendants provided names, chose not to provide the contact information, and represented to Plaintiff this was all the information available. This was untrue. There is no justification for that sequence of events.

And the failure to provide this identifying information was certainly not harmless. Plaintiff has been inordinately prejudiced by Defendants' late disclosure. A party is considered prejudiced when the "late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Paul v. Aramark Healthcare Support Servs., LLC*, No. 1:15-cv-189, 2016 WL 7888045, at *4 (N.D. Ga. June 2, 2016) (Cohen, J.). Plaintiff did not have the opportunity to perform discovery or depositions because she could not locate witnesses for whom Defendants had contact information. Then Defendants moved for summary judgment in part based on a lack of evidence about what hotel employees might say. Plaintiff never knew she was defending summary judgment with an arm tied behind her back.

Now trial is only fourteen days away. These are days in which Plaintiff must and should be preparing for trial with evidence that she can rely upon. Instead, Plaintiff is investigating witnesses that only now could be contacted, interviewing them, and scheduling trial depositions. All that takes time. Defendants' discovery abuse has thus robbed Plaintiff of time, a scarce commodity weeks before trial.

Moreover, Plaintiff cannot rely on the completeness of Defendants' discovery responses and document production. "Rules exist emphasizing the importance of truth in the discovery process and the need for a litigant to be able to rely upon the opposing party's discovery responses." *Green Leaf Nursery,* 341 F.3d at 1305. Here, Plaintiff received critical documents and information late, inconsistent discovery responses, and documents with information that Defendants told Plaintiff did not exist. These circumstances undermine Plaintiff's "need . . . to be able to rely upon" Defendants' discovery. And the late production raises myriad questions: Did Defendants put in effect a litigation hold? Did Defendants preserve potentially relevant information in their possession, custody, or control during discovery? Did Defendants properly search for responsive information?

Again, Plaintiff still does not know whether the list of names Defendants provided comprises all employees who worked at the hotel from 2007 to 2012. Nor does Plaintiff know who worked at the hotel during this period before and during Plaintiff's trafficking. "The days of trial by ambush have passed." *Wammock v. Celotex*

*Corp.,* 793 F.2d 1518, 1527 (11th Cir. 1986); *see also King v. City of Waycross, Georgia,* 2015 WL 5468646, at *3 (S.D. Ga. Sept. 17, 2015) ("For years Courts throughout the land have been charged with eliminating 'trial by ambush.' A major purpose of discovery is eliminating surprise." (quotation and citation omitted)). Plaintiff will be prejudiced at trial if Defendants are permitted to utilize witnesses they have known about throughout this case but waited to disclose to Plaintiff until the eve of trial.

Because the failure to provide this evidence is neither substantially justified nor harmless, sanctions are required under Rule 37(c)(1).

## II. Sanctions are required under Rule 26.

The Court "must" impose sanctions under Rule 26(g)(3) because Defendants did not make a "reasonable inquiry" of its records before responding to Plaintiff's original discovery requests. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1542 (11th Cir. 1993) (Rule 26(g)(3) was "designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); *Green Leaf Nursery*, 341 F.3d at 1305 (same). A year and a half after discovery closed and forty days before trial, Defendants finally produced what Plaintiff asked for at the outset, basic employee contact information. The late production conflicts not only with Defendants' discovery responses but also with Defendants' representation to Plaintiff that there was no further documents or information to be had.

Under Rule 26(g)(1), a discovery response must be signed by an attorney or party, and "[b]y signing," the attorney or party "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response or disclosure is "complete and correct as of the time it is made" and that the response is consistent with the rules, not interposed for the purpose of causing delay, and not unreasonable. Fed. R. Civ. P. 26(g)(1)(A). Rule 26(g) "imposes an affirmative duty to engage in pretrial discovery in a responsible manner." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1350 (N.D. Ga. 2012) (quoting Fed. R. Civ. P. 26(g) advisory comm. note). "This broad duty is satisfied when an attorney makes 'a reasonable inquiry into the factual basis of his response, request, or objection.'" *Id.*

If a discovery certification violates Rule 26(g)(1) "without substantial justification," the court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). In the absence of substantial justification, "Rule 26(g) sanctions are not discretionary." *Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations, LLC v. Stantec, Inc.*, No. CV 20-2603 (BAH), 2021 WL 75766, at *9 (D.D.C. Jan. 8, 2021). "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3).

Failure to conduct a "reasonable inquiry" before responding to discovery

triggers **mandatory** sanctions: "If a certification violates this rule without substantial justification, the court, on motion or on its own, **must** impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3) (emphasis added). Rule 26(g)(3) leaves it to the Court to decide the appropriate sanction for a violation; although "Rule 26(g) '[is] cast in mandatory terms,' . . . the mandate of the provision[] extends only to whether a court must impose sanctions, not to which sanction it must impose." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 51 (1991); Fed. R. Civ. P. 26(g)(3).

Here, Defendants did not conduct a "reasonable inquiry" of their records because in response to discovery requests Defendants denied having any discoverable evidence. But as soon as a deposition with a former employee was scheduled, Defendants "found" discoverable material for their own use at the deposition. Then, when pressed on that inconsistency, Defendants chose to produce a document that was manipulated to remove existing contact information that Plaintiff specifically requested in discovery. Then Defendants represented to Plaintiff that the provided information was all that existed.

Further, the failure to supplement with this evidence—when Defendants had the evidence in hand; the only way they could have provided the incomplete document—violates Rule 26(e), which requires a timely supplementation "if the party learns that in some material respect the disclosure or response is incomplete or

incorrect." Here, Defendants *knew* the responses and the production of the incomplete document was incorrect because Defendants had to have the complete document in order to create the incomplete version. Defendants chose what to include and what to leave out of the document, and specifically chose to leave out the information that would enable Plaintiff to find Defendants' former employees. This failure is indefensible. *See, e.g., Venator v. Interstate Resources, Inc.,* 2016 WL 1574090, at *10 (S.D. Ga. Apr. 15, 2016) (Rule 26(g) sanctions imposed for not searching additional systems for responsive documents); *see also* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2052 (3d ed. 2010) (collecting cases where parties asserted opponent neglected to produce all ESI and sanctions appropriate under Rule 26(g)).

Moreover, Plaintiff and Defendants discussed this exact issue, noted that there had to be some discoverable information or documents Defendants had failed to produce, and then Defendants produced only part of the document, editing out arguably the most important information needed to locate a witness from a list of names.

## III. In addition to mandated sanctions, discretionary sanctions are warranted because of the importance of the information, Defendants' delay in correcting it, and prejudice to Plaintiff.

Setting aside the required sanctions above, the Court should exercise its discretion under Rule 37(c)(1) and its inherent powers to impose sanctions because of the magnitude of Defendants' discovery negligence, Defendants' delay in correcting

it, and the prejudice to Plaintiff. *See Malautea,* 987 F.2d at 1542; *see also Chambers,* 501 U.S. at 49 ("[The] inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct . . . .") Plaintiff relied on Defendants' incomplete production to investigate her case, search for documents, find witnesses, depose witnesses, prepare and serve discovery requests and subpoenas, and generally conduct pretrial discovery and investigation. Plaintiff relied on this incomplete production through Defendants' attempted dispositive motions. And now Plaintiff must interview and depose witnesses whose testimony should have been provided during discovery, a year and a half ago.

Defendants failed to produce requested information and documents it had in its possession until forty days before trial because of (at best) negligence. When Defendants prepared to take the deposition of the only employee in the case, they immediately turned to this information to prepare and to question that witness. When pressed, Defendants produced names but no other information that would make those names useful in a background investigation. Defendants again accessed these documents—presumably in preparing to contact potential witnesses for trial—in August 2024.[21] But Defendants did not provide the information they were using to contact highly relevant witnesses to Plaintiff until October 2024. Defendants' delay in

---

[21] Ex. 10, PDF showing Info for HB_NDGA_Red_Roof_00001691 (Excel spreadsheet).

providing accurate and complete discovery responses until more than a year after discovery had closed violated Rule 26(e)'s "timely" supplementation requirement. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 960 (N.D. Ill. 2021) ("[S]upplements made after the close of fact discovery are by definition 'untimely.'").

Defendants may argue that discretionary sanctions are unwarranted because Plaintiff suffered no prejudice. That argument is flawed. To start, sanctions are mandatory under Rule 26(g)(3) for failure to make a "reasonable inquiry" without "substantial justification." Period. Prejudice is not part of a Rule 26(g)(3) analysis. Further, Rule 37 does not require a showing of prejudice to trigger sanctions either:

> Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations … ***Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants: Disciplinary sanctions under Rule 37 are intended to serve three purposes. First,*** they ensure that a party will not benefit from its own failure to comply. ***Second,*** they are specific deterrents and seek to obtain compliance with the particular order issued. ***Third,*** they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault.

*S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 149 (2d Cir. 2010) (emphasis added); *see also Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (Rule 37 sanctions are to penalize and to deter).

Plaintiff has been and continues to be prejudiced by Defendants late

production. *See supra* 16–18. Thus, permissive sanctions are also warranted.

**IV.    Plaintiff requests targeted sanctions due to Defendants' discovery abuse.**

Plaintiff requests the Court consider the following sanctions for Defendants' discovery negligence and abuse under Rules 26, 37, and the Court's inherent powers.

*First*, Plaintiff requests Defendants conduct a new review and production of documents in response to Plaintiff's original discovery requests to identify any missing documents and to verify their discovery responses are true and complete.

*Second*, Plaintiff requests that Defendants not be allowed to use the information and witnesses listed on the late-produced document. This is the default sanction under Rule 37(c)(1), providing that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, ***or at a trial***, unless the failure was substantially justified or is harmless" (emphasis added). Defendants' withholding of witness contact information for more than a year from Plaintiffs was neither justified nor harmless. Thus, Defendants should not be permitted to call any witness listed in the late-produced document at trial.

*Third,* should Defendant possess unproduced documents regarding Nicole Carter, Defendants should be barred from calling Ms. Carter as a witness in this case.

*Fourth,* Defendants should not be allowed to argue that any hotel staff took any steps regarding safety, security, or that it trained staff for those actions, because

Defendants have produced inconsistent information about who worked at the hotel, hid the contact information for that staff, and admitted that it cannot tell Plaintiff who worked at the hotel, despite having information dating back to 1998. Thus, Plaintiff cannot challenge Defendants' blanket assertions that hotel staff did anything because Plaintiff still does not really know who Defendants' employees were and only recently has been able to try to contact them. *See, e.g.*, *Nance v. Ricoh Electronics, Inc.,* 2008 WL 926662, at *3 (N.D. Ga. April 4, 2008) (imposing Rule 37(c)(1) sanction for Rule 26(a) violations), *aff'd*, 38 F. App'x 99 (11th Cir. 2010).

*Fifth*, Plaintiff requests a jury instruction that Defendants possessed the contact information for its former employees but did not provide that information as required during the discovery period. For that reason, the jury may infer that the testimony of any witnesses on that list but not called at trial would have been unfavorable to Defendants.

*Sixth*, Plaintiff requests reasonable expenses and attorneys' fees reflecting the time and effort Plaintiff's counsel expended to obtain basic discoverable information, including the expenses of a private investigator.

*Finally*, Plaintiff requests permission to amend her witness list and to call any witnesses on the lists at trial.

## CONCLUSION

Plaintiff respectfully requests that the Court impose the requested sanctions

for the reasons set forth herein.

Respectfully submitted on October 29, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

Respectfully submitted on October 29, 2024.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiff*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile