**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| H.B., | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | |
| | ) | NO. 1:22-cv-01181-JPB |
| v. | ) | |
| RED ROOF INNS, INC., *et al*., | ) | **RED ROOF INNS, INC., FMW RRI** |
| | ) | **I, LLC, AND RRI WEST** |
| Defendants. | ) | **MANAGEMENT, LLC'S** |
| | ) | **OPPOSITION TO PLAINTIFF'S** |
| | ) | **MOTION FOR SANCTIONS** |

## I.    INTRODUCTION

Plaintiff brought a dispute to this Court that should have been resolved through counsel without Court involvement. The reason is because Defendants acknowledged there were inadvertent mistakes made in discovery that they have been feverishly working to correct since the moment their current counsel learned of the issue. After providing the supplemental information to Plaintiff on October 3, 2024, Plaintiff identified additional witnesses and scheduled depositions, and Defendants agreed to cooperate in that process. Defendants offered to pay reasonable costs, after Plaintiff provided additional information, but Plaintiff has not provided that information in full. Now, less than two weeks before trial, instead of continuing conversations with Defendants' counsel to address any remaining concerns, or providing the requested information, Plaintiff asks this Court for additional sanctions beyond what has already been offered (additional discovery and monetary

sanctions). For the reasons that follow, the requested sanctions are not supported by the facts or the law.

## II.     FACTS

This dispute centers around potential witnesses for the upcoming November 12, 2024 trial. Plaintiff alleges that new witnesses were identified that have "relevant testimony for trial." (Doc. 210, pg. 2). Plaintiff is deposing those witnesses and Defendants are cooperating in that process. (*See e.g.* Notices of Deposition, Doc. 217 and 218.) While this testimony appears to be cumulative, based on Plaintiff's own description of the anticipated testimony, any alleged harm will be remedied prior to trial.

Yet Plaintiff seeks punitive sanctions against the Defendants. A consideration of the complete factual record (versus the mischaracterizations advanced by Plaintiff) demonstrates that the only warranted sanctions, if any, are those already offered by Defendants.

### A.     Defendants sought to remedy the issue as soon as it was discovered.

Trial is scheduled for November 12, 2024. In the course of preparing for trial of this matter, in mid-September 2024, current counsel for the Defendants, realized that certain RRI Defendants had responded to written discovery before Tucker Ellis became counsel of record, and that these responses were not transferred to Tucker Ellis when the file was transferred from prior counsel, and the responses were not

available on the Court docket, except for the Certificate of Service. (Ex. 1, S. Wunderlich Declaration, ¶¶ 2–3.) Tucker Ellis substituted as counsel for prior counsel, Lewis Brisbois, in May 2023. (Doc. 66.) As a result, counsel for RRI Defendants reached out to Plaintiff's counsel to request a copy of the written responses given by RRI Defendants. (Ex. 1, S. Wunderlich Declaration, ¶ 3.), Plaintiff's counsel provided a copy of the written discovery responses on September 17, 2024. (Ex. 1, S. Wunderlich Declaration, ¶ 4.)

In the days that followed, upon review of the written responses, counsel for RRI Defendants realized that Plaintiff might not have complete information related to employees who worked at the subject property, the Norcross Red Roof Inn. (Ex. 1, S. Wunderlich Declaration, ¶ 5.) Specifically, Request for Production No. 20 and Interrogatory No. 12 served on Defendants Red Roof Inns, Inc. and RRI West Managements, LLC, sought the names, contact information, and personnel files of employees who worked at the Norcross RRI from 2007 to 2012. The prior discovery responses stated that Defendants did not possess the information due to the passage of time and document retention policies.

While technically correct, that Red Roof Inns, Inc. and FMW RRI I, LLC do not possess the responsive documents (the only Defendants in the case when discovery was served), RRI West Management (a Defendant added after discovery

was served) could access a legacy database to obtain a list of employees with contact information[1].

Counsel for RRI Defendants conducted a search of the records transferred from the prior law firm representing RRI Defendants to determine whether these written discovery responses had been supplemented at any point after submission of the written responses to Plaintiff, but was unable to determine whether the information had been supplied to Plaintiff. (Ex. 1, S. Wunderlich Declaration, ¶¶ 5–6.)

In an abundance of caution, to the extent the original responses "were not formally supplemented before," and to ensure complete information was provided, on October 3, 2024, Defendants served supplemental discovery responses attaching the list of employees. (Ex. 1, S. Wunderlich Declaration, ¶ 7.) Defendants served the list and supplemented their discovery responses even though RRI West Management – the entity that maintained the list – was never served with discovery.

On October 4, 2024, Plaintiff's counsel responded in an egregious fashion with numerous unfounded accusations stating that "for the first time" Red Roof produced "the *names*, phone numbers, and last-known addresses of Red Roof employees at the Norcross Red Roof during the relevant period." (Ex. 1, S.

---

[1] Red Roof Inns, Inc. employs the employees at the Red Roof Norcross and RRI West Management manages the employees and as a result maintains documents relating to employment.

Wunderlich Affidavit, Ex. C, emphasis added.) Communications between the parties continued for several days (Ex. 1, S.Wunderlich Affidavit ¶¶ 7-8) and Defendants confirmed they did not intend to introduce witnesses at trial that were not previously disclosed and sought to explain the recent events including how the list of employees was generated. (Ex. 1, S.Wunderlich Affidavit ¶¶ 7-8.)

During an October 8, 2024 meet and confer with Plaintiff's counsel, Defendants' counsel learned for the first time that prior counsel for RRI Defendants had produced additional documents, including a list of 39 employees who worked at the Norcross hotel, to Plaintiff on February 22, 2023. (Ex. 1, S.Wunderlich Affidavit, ¶ 9.) Of note, Plaintiff supplemented her initial disclosures five days after receiving this list in February 2023 to include the two witnesses that Plaintiff now seeks to preclude Defendants from calling at trial. In any event, the only information Plaintiff's counsel was not previously provided was addresses and phone numbers that were over a decade old.

**B.      Defendants offered to rectify any potential prejudice.**

It was not until the evening of October 22, 2024, that Plaintiff's counsel identified the sanctions they intended to seek against RRI Defendants. (Ex. 1, S.Wunderlich Affidavit, ¶8, Ex. C.) Defendants' counsel responded on October 24, 2024 to each requested remedy, in detail, explaining the remedies they would agree to and why they believed some of the requested sanctions were not warranted. (Ex.

1, S.Wunderlich Affidavit, ¶8, Ex. C.) In essence, Defendants stated they were willing to (1) pay costs of searching for these witnesses (once those costs were identified and Plaintiff identified which witnesses she could not locate without addresses and phone numbers), (2) allow additional depositions in advance of trial, (3) not object to Plaintiff amending her witness list, and (4) pay out of pocket expenses for depositions, excluding attorneys fees. (Ex. 1, S.Wunderlich Affidavit, ¶8, Ex. C.) Defendants would *not* agree to an adverse inference or an exclusion of introducing certain evidence at trial, and provided detailed explanations as to why. Rather than provide a substantive response to that email, Plaintiff's counsel filed this Motion.

### C. Plaintiff previously identified some of the witnesses on this list.

As the Court considers this issue, it is important to correct some of the inaccuracies in Plaintiff's submission regarding specific witnesses. An accurate statement of the facts demonstrates that there is no prejudice with respect to certain witnesses, and for those where there might be prejudice, that can and will be remedied.

Start with Heather Gilmore. Plaintiff implies that the lack of contact information for Heather Gilmore caused her to "identif[y Ms. Gilmore] by combing through police reports" because "Defendants did not disclose or identify her." (Doc. 210, p. 5.) This is simply not true and is a bold misrepresentation of the facts to this

Court. Plaintiff identified and obtained an affidavit from Gilmore dated October 5, 2021, six months *before* she filed her lawsuit on March 25, 2022 – long before Defendants had any opportunity, let alone obligation, to disclose or identify her. As such, Plaintiff experienced no prejudice with respect to Heather Gilmore.

Next consider Kim Rachal and Jay Moyer. Both Rachal and Moyer were listed (along with Heather Gilmore and Nicole Carter) on Plaintiff's Supplemental Responses to Defendant Red Roof Inns, Inc.'s First Interrogatories served on February 28, 2023. Plaintiff even included a recent telephone number for Ms. Rachal, which is more accurate than what was on the list produced by Defendants in October 2024. Plaintiff has never denied that her private investigator previously talked to Rachal. And Plaintiff deposed Moyer twice – once in this case and once in the *W.K.* case. No prejudice can be claimed with respect to Jay Moyer or Kim Rachal, who Plaintiff knew of and was aware of since this suit was filed.

Then there is Nicole Carter, who Plaintiffs incorrectly stated was never disclosed as a witness. (Doc. 210, p. 12). Her Manager-in-Training records were produced at HB_NDGA_Red_Roof_00001619, and she is identified as a supervisor in the February 2023 employee list.[2] There are no further documents regarding Ms.

---

[2]   In addition, Ms. Gilmore provided the names Kim Rachal and Nicole (Gilmore could not recall her last name) as the names of her supervisor in her deposition taken on February 15, 2023. Plaintiff knew Ms. Carter's last name because Plaintiff identified Ms. Carter as witness with knowledge in their Supplemental Interrogatory Answers in February 2023.

Carter, as she left the employ of Red Roof and was rehired in 2018, so her records from the relevant time period do not exist. (Tamara Ross Decl. ¶ 14.) It is also an interesting argument for Plaintiff to make given that Plaintiff herself disclosed Nicole Carter as a witness with knowledge in her Supplemental Answers to Interrogatories served in February 2023.

Finally, for the three or four witnesses that Plaintiff recently located and intends to depose (Keon Edge, Cerita Stewart, Tiffany Petteway-Blount, and Javon Gray), Plaintiff's described the "relevance" of these witnesses is that "they corroborate that prostitution was rampant at the hotel and known and permitted by the hotel staff." (Doc. 210, p. 8, emphasis added.) Plaintiff concedes this evidence is only corroboration, in other words, they already have witnesses on their witness list that they claim will offer the same testimony. For this reason alone, there is no prejudice. But even more, Defendants agreed (1) to allow these depositions to go forward without objection, (2) to pay the out-of-pocket costs of those depositions, exclusive of attorneys' fees, and (3) for Plaintiff to amend her witness list to include them. No prejudice can be claimed here.

### D.    The Employee List Has Not Been Manipulated

Another incorrect and particularly egregious allegation made by Plaintiff is that either Red Roof or its prior counsel manipulated the list of employees prior to the production of the list in February 2023. This is patently false. The evidence

shows that the employee list provided in February 2023 was not manipulated in any way. Tamara Ross, Manager of People and Culture for RRI West Management, exported an employee list in February 2023 by logging into a human resources database maintained by RRI West Management called UKG. (Ex. 2, Tamara Ross Declaration, ¶¶6-7.) UKG is a database maintained by RRI West Management but houses employee records for employees of Red Roof Inns, Inc. (Ex. 2 at ¶9.)

In 2023, Red Roof's prior counsel asked her to export hire and termination dates for Norcross employees from 2011 to 2013. (Ex. 2 at ¶5.) She did just that. She was not asked for any contact information, or else she would have readily provided it. (Ex. 2 at ¶12.)

The data she was able to access could only go back to 2011. (Ex. 2 at ¶10.) The reason is because RRI West Management began using UKG on December 28, 2015. (Ex. 2 at ¶9) From 2012 to December 28, 2015, RRI West Management, LLC used a database called CPI. (Ex. 2 at ¶9.) Prior to CPI, RRI West Management, LLC used ADP. (Ex. 2 at ¶9.) None of the information from ADP was transferred to UKG and only some data was transferred from CPI to UKG. (Ex. 2 at ¶9.) As a result, the data pre-December 28, 2015 is limited and there is no information prior to 2012. Information prior to 2011 is available if the employee was still employed in 2011, including their date of hire. (Ex. 2 at ¶8.)

In August 2024, Red Roof's current counsel, Tucker Ellis, asked RRI West Management to provide names as well as available contact information for former employees, and she did just that. (Ex. 2 at ¶11) There has been absolutely no manipulation by counsel or Red Roof or its counsel. (*Compare* Ex. B. at ¶7 (the spreadsheet Ross sent to Defendants' prior counsel) with Doc. 211-2 (the February 2023 employee list).) Defendants did not manipulate the spreadsheet to hide or change its content so this is an unfounded basis upon which Plaintiff's Motion for Sanctions is premised.

### E.   Defendants' arguments at summary judgment are accurate.

Finally, Plaintiff misrepresents the summary judgment record and arguments in her Motion. At the outset, the Court denied Defendants' Motion for Summary Judgment, so any claimed prejudice by Plaintiff on statements made in summary judgment is unwarranted. But even so, the claimed prejudice simply is not true and misleading.

First, Defendants did not argue and would not argue that RRI West Management, LLC employed the individuals on the Norcross RRI employee list, as Plaintiff suggests. (*See* Doc. 210, pp. 9-10.) That is because at corporate properties like Norcross RRI, Red Roof Inns, Inc. employs all staff at and below the general manager level and RRI West Management, LLC manages those employees.

Plaintiff's counsel is well aware of this fact, as it was a stipulation between the parties in a recent trial in this very Court.

```
        Defendant RRI west was a management company that
operated the Buckhead hotel and employed the regional staff
like regional manager and vice president.

        Defendant are readies incorporated employed * like
front desk employers and housekeepers.
```

But even more than the Stipulation, Defendants responded to Plaintiff's additional statements of undisputed facts on this exact issue. (Doc. 105 and 144.) Defendants specifically stated there it was "undisputed that RRI Inc, employed the staff at Norcross." (Doc. 144) Defendants' position was not confusing – Defendants simply never took the position Plaintiff claims it did throughout its entire Motion for Sanctions.

Second, the identification of new witnesses, who possess information (according to Plaintiff) about "rampant prostitution" further does not impact summary judgment or frankly whether there is liability under the singular cause of action advanced by Plaintiff under the TVPRA. Indeed, Plaintiff presented this Court with evidence in opposition to Defendants' motion for summary judgment with regard to her claim that there was "rampant prostitution" at the hotel so none of the "new" evidence is actually new. For these reasons, there never was any prejudice with respect to summary judgment.

### III.   LAW & ARGUMENT

#### A.   Sanctions should be proportionate to the offense.

When "fashioning sanctions, courts should ensure that the sanctions are just and proportionate to the offense." *Wallace v. Superclubs Properties, Ltd.*, No. 08-61437-CIV, 2009 WL 2461775, at *5 (S.D. Fla. Aug. 10, 2009). Sanctions under Rule 26(g) are "designed to curb discovery abuse" by "provid[ing] a deterrent to both excessive discovery and evasion." Fed. R. Civ. P. 26(g) (1983 committee notes). Further, "[w[hether the opposing party suffered prejudice underlies the harmlessness determination." *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 692 (S.D. Ga. 2019).

Rule 26(g) requires attorneys and parties to certify that they have made a "reasonable inquiry" that their discovery responses are accurate. The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn from it are reasonable under the circumstances. Fed. R. Civ. P. 26(g) (1983 committee notes). If a court finds that a discovery response does not meet the obligation, the Court may award a sanction that "may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). The facts of this case discredit the harm that Plaintiff alleges she sustained and the sanctions to which she claims she is entitled.

#### B.   Reasonable remedies have already been offered.

12

Defendants have never disputed that the 39 Norcross RRI's employees' contact information should have been produced much earlier. But to correct that, Defendants have already agreed to (1) pay costs of searching for these witnesses (once those costs were identified and Plaintiff identified which witnesses she could not locate), (2) allow additional depositions in advance of trial, (3) not object to Plaintiff amending her witness list, and (4) pay out of pocket expenses for depositions, excluding attorneys' fees. To the extent the information on costs is fully provided by Plaintiff's counsel, this resolves Plaintiff's sixth and seventh requested sanctions, but for attorneys' fees. The seventh request for sanctions was for "permission to amend [plaintiff's] witness list and to call any witnesses on the lists at trial." This has been fully resolved. The sixth request was for "reasonable expenses and attorneys' fees reflecting the time and effort Plaintiff's counsel expended to obtain basic discoverable information, including the expenses of a private investigator." Defendants have agreed to pay the fees for the private investigator, once they are provided and documented. Defendants have not agreed to pay attorneys' fees but asked Plaintiff's counsel to identify the fees and explain why they believe they are warranted. Such documentation and explanation has never been provided. Given Plaintiff's counsel knew these witnesses names, was able to identify some, and has

never identified the witnesses that she tried to find, but could not without their

decade old contact information, an award of attorneys' fees is not warranted.[3]

### C.   The further requested sanctions are unjust and disproportionate.

Any further sanctions are not justified under the law or the facts of this case,

each of which is addressed in turn.

> Plaintiff's first proposed sanction: Plaintiff requests
> Defendants conduct a new review and production of
> documents in response to Plaintiff's original discovery
> requests to identify any missing documents and to verify
> their discovery responses are true and complete. (Pl.'s
> Mot. 24.)

This requested sanction has no support in the law and is based on sheer

speculation. Defendants' current counsel has already reviewed and responded to

Plaintiff's discovery requests. That is the process that yielded the October 3, 2024

supplemental production at issue. Plaintiff does not offer any support to justify

challenging the completeness and accuracy of the entirety of Defendants' discovery

responses. Instead, she relies solely on rhetorical questions—"Did Defendants put in

effect a litigation hold? Did Defendants preserve potentially relevant information in

their possession, custody, or control during discovery? Did Defendants properly

search for responsive information?"—all of which bear no probative value.

Moreover, Defendants have produced over 70,000 pages of documents to Plaintiff's

---

[3]  Plaintiff vaguely admits that she was able to find some of the witnesses, but she
has never identified the witnesses that she was not able to locate, which should
be the starting point for any remedy.

counsel. Not to mention, this would be an impossible task in the 13 days between

when Plaintiff filed her Motion for Sanctions and trial. Notably, Defendants did offer

to agree to continue trial and re-open discovery to prevent Plaintiff from being, as

she claims, "robbed [] of time, a scarce commodity weeks before trial." (Pl.'s Mot.

17.) But Plaintiff has chosen to stick with the current trial date and attempt to shift

the consequences of her choice to Defendants. This sanction is not warranted.

> Plaintiff's second proposed sanction: Plaintiff requests that
> Defendants not be allowed to use the information and
> witnesses listed on the late-produced document. This is the
> default sanction under Rule 37(c)(1), providing that "[i]f a
> party fails to provide information or identify a witness as
> required by Rule 26(a) or (e), the party is not allowed to use
> that information or witness to supply evidence on a
> motion, at a hearing, ***or at a trial,*** unless the failure was
> substantially justified or is harmless" (emphasis added).
> Defendants' withholding of witness contact information
> for more than a year from Plaintiffs was neither justified
> nor harmless. Thus, Defendants should not be permitted to
> call any witness listed in the late-produced document at
> trial. (Pl.'s Mot. 24.)

Defendants have already agreed to only call two of the 39 individuals on the

Norcross RRI employee list in their case in chief.[4] The first of those witnesses is Kim

Rachal, who was listed in Plaintiff's June 21, 2022 initial disclosures, Plaintiff's

February 28, 2023 interrogatory answers (including her phone number), and in both

Plaintiff's and Defendants' August 2, 2024 trial witness lists. The second is Nicole

---

[4]  Plaintiff suggests there were only 15 employees on the list and Defendants are
unclear as to how Plaintiff arrived at this number.

Carter, who was listed in Plaintiff's February 28, 2023 interrogatory answers, was listed in both Plaintiff's and Defendants' August 2, 2024 trial witness lists, and is a current Red Roof Inns, Inc. employee.

Plaintiff did not object when Ms. Rachal and Ms. Carter appeared in Defendants' trial witness list. Nor could she, because she has known about them and had Ms. Rachal's phone number for years. Additionally, Plaintiff has never sought to depose either individual, either before or after the October 3, 2024 supplemental disclosure. "Whether the opposing party suffered prejudice underlies the harmlessness determination," and Plaintiff cannot claim prejudice if Defendants are permitted to call witnesses that Plaintiff chose not to pursue herself. *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 692 (S.D. Ga. 2019). Plaintiff's lack of harm shuts the door to Rule 37(c) sanctions because sanctions are permitted only if "the failure was substantially justified or is harmless." Additionally, even if this Court were to find that Defendants' omission was not harmless, the circumstances do not justify exclusion. Exclusion is a "harsh sanction" under Rule 37(c)(1) and one that courts do not invoke when a party is "not wholly unaware of" the witness or information. *Vaughn v. United States*, 542 F. Supp. 2d 1331, 1338 (S.D. Ga. 2008) (declining to exclude an expert disclosed after discovery closed and instead awarding the movant fees and an opportunity to depose the expert).

> <u>Plaintiff's third proposed sanction</u>: should Defendant possess unproduced documents regarding Nicole Carter, Defendants should be barred from calling Ms. Carter as a witness in this case.

There are no unproduced documents regarding Nicole Carter from the relevant time period. (Tamara Declaration, ¶__.) As a result, there is no basis to exclude her as a witness in this case.

> <u>Plaintiff's fourth proposed sanction</u>: Defendants should not be allowed to argue that any hotel staff took any steps regarding safety, security, or that it trained staff for those actions, because Defendants have produced inconsistent information about who worked at the hotel, hid the contact information for that staff, and admitted that it cannot tell Plaintiff who worked at the hotel, despite having information dating back to 1998. Thus, Plaintiff cannot challenge Defendants' blanket assertions that hotel staff did anything because Plaintiff still does not really know who Defendants' employees were and only recently has been able to try to contact them. *See, e.g., Nance v. Ricoh Electronics, Inc.*, 2008 WL 926662, at *3 (N.D. Ga. April 4, 2008) (imposing Rule 37(c)(1) sanction for Rule 26(a) violations), *aff'd*, 38 F. App'x 99 (11th Cir. 2010). (Pl.'s Mot. 24–25.)

As a threshold issue, Plaintiff's authority does not support her proposition. In *Nance* (the only authority relied on by Plaintiff), the court found a party's failure to disclose witnesses under Rule 26(a)(1)(A) prevented that party from submitting summary judgment declarations by those witnesses. 2008 WL 926662, at *3. There has been no failure to disclose witnesses as the names were provided in February 2023.

The factual basis of Plaintiff's assertion also lacks substantiation. First, Defendants have not "produced inconsistent information about who worked at the hotel." Defendants have produced the same set of 39 employees—one with contact information, and one without. Second, they also have not "hid the contact information for that staff." Plaintiff's statement draws solely from her own speculation. Third, as attested to by Tamara Ross, the UKG database has information regarding employees from 1998 if those employees were still with Red Roof Inns, Inc. in 2011. (Tamara Ross Decl., ¶_.) Therefore, UKG includes information predating 2011 so long as the employee was still employed with the company in 2011 and some, but not all, employment information is available from 2011 forward. (*Id.*) Finally, Plaintiff's statement that she "still does not really know who Defendants' employees were and only recently has been able to try to contact them" rings hollow. Plaintiff has had the Norcross RRI employee list since February 22, 2023.

> Plaintiff's fifth proposed sanction: Plaintiff requests a jury instruction that Defendants possessed the contact information for its former employees but did not provide that information as required during the discovery period. For that reason, the jury may infer that the testimony of any witnesses on that list but not called at trial would have been unfavorable to Defendants. (Pl.'s Mot. 25.)

In the 11th Circuit, a court must first find bad faith before it can give an adverse inference jury instruction. *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011) ("Because

Plaintiffs have not established that bad faith is the cause of the allegedly deleted emails and electronically stored information (ESI), the Court cannot order an adverse inference jury instruction at trial."). Plaintiff has not and cannot carry her burden to establish bad faith when (1) the responsive information was possessed by RRI West, an entity on which Plaintiff did not serve discovery; and (2) Defendants' untimely supplementation was an effort to correct an inadvertent omission.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully ask this Court to deny Plaintiff's Motion for Sanctions.

Dated: October 31, 2024.

Respectfully submitted,

*/s/ Sandra Wunderlich*
Marcella C. Ducca (Ga Bar No. 115079)
Brandon D. Cox (Ga Bar No. 832025)
GREENBERG TRAURIG LLP
Terminus 200
3333 Piedmont Road NE, Suite 2500
Atlanta, GA  30305
Telephone:  678.553.2100
duccam@gtlaw.com
coxb@gtlaw.com

Chelsea Mikula (*pro hac vice*)
Joseph A. Manno (*pro hac vice*)
Elisabeth C. Arko (*pro hac vice*)
Emily R. Grace (*pro hac vice*)
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH  44113-7213
Telephone:  216.592-5000
Facsimile:   216.592-5009
chelsea.mikula@tuckerellis.com
joseph.manno@tuckerellis.com
elisabeth.arko@tuckerellis.com
emily.grace@tuckerellis.com

Sandra J. Wunderlich (*pro hac vice*)
TUCKER ELLIS LLP
100 South Fourth Street, Suite 600
St. Louis, MO  63102-1822
Telephone:  314.256.2550
Facsimile:   314.256.2549
sandra.wunderlich@tuckerellis.com
drew.kemp@tuckerellis.com

*Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC*

20

## **<u>LOCAL RULE 7.1(D) CERTIFICATION</u>**

Counsel certifies that this motion has been prepared with Times New Roman

size 14 pt font, which is one of the font and point selections approved by the Court

in Local Rule 5.1. This brief does not contain more than 10 characters per inch of

type.

Dated: October 31, 2024                         */s/ Sandra Wunderlich*
                                              Sandra Wunderlich
                                              *One of the Attorneys for Defendants*
                                              *Red Roof Inns, Inc., FMW RRI I, LLC,*
                                              *and RRI West Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2024, a copy of the foregoing was filed electronically. Service of this filing will be made under Fed. R. Civ. P. 5(b)(2)(E) through this Court's electronic filing system. Parties may access the filing through the Court's system.

<u>*/s/ Sandra Wunderlich*</u>
Sandra Wunderlich
*One of the Attorneys for Defendants Red Roof Inns, Inc., FMW RRI I, LLC, and RRI West Management, LLC,*

6669331.4